# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **KAREN MEYERS, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | **Case No.: 1:17-cv-521** |
| | ) | |
| | ) | **Judge Timothy S. Black** |
| **vs.** | ) | |
| | ) | **Defendants' Motion to Dismiss** |
| **CINCINNATI BOARD OF EDUCATION,** | ) | **Plaintiffs' Complaint (Doc. 1)** |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Defendants Cincinnati Board of Education, Mary Ronan, Ruthenia Jackson, and Jeffery McKenzie ("Defendants") move this Court to dismiss with prejudice Plaintiffs' Complaint (Doc. 1) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The Complaint is filled with speculative allegations and legal conclusions disguised as factual allegations that need not be taken as true. The facts alleged in the Complaint confirm that Defendants were attentive and responsive to Gabriel Taye, and neither violated his constitutional rights nor tortiously caused his death. Taye's death is a tragedy, but Defendants are not liable for it. As such, the Complaint fails to state any cognizable claims and should be dismissed. A memorandum in support of the motion follows.

Respectfully submitted,

R. Gary Winters (0018680)
Ian R. Smith (0068195)
McCaslin Imbus & McCaslin
Cincinnati, Ohio 45202
Phone: (513) 421-4646
Fax: (513) 421-7929
Email: rgwinters@mimlaw.com
Email: irsmith@mimlaw.com

/s/Aaron M. Herzig
Aaron M. Herzig (0079371)
Taft Stettinius & Hollister LLP
Cincinnati, Ohio 45202
Phone: (513) 357-8768
Fax: (513) 381-0205
E-mail: aherzig@taftlaw.com
*Attorneys for Defendants*

OF COUNSEL:

Daniel J. Hoying (0079689)
Ashley Addo (0091245)
Cincinnati Public Schools
Cincinnati, Ohio 45219
Phone: (513) 363-0114
Fax: (513) 363-0115
Email: hoyingd@cpsboe.k12.oh.us
Email: addoash@cpsboe.k12.oh.us

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**KAREN MEYERS, et al.,**          )
                                   )
                    **Plaintiffs** )     **Case No.: 1:17-cv-521**
                                   )
                                   )     **Judge Timothy S. Black**
**vs.**                            )
                                   )     **Memorandum in Support of**
**CINCINNATI BOARD OF EDUCATION,** )     **Defendants' Motion to Dismiss**
**et al.,**                        )     **Plaintiffs' Complaint**
                                   )
                    **Defendants.** )

## COMBINED TABLE OF CONTENTS AND SUMMARY
## PURSUANT TO S.D. OHIO CIV. R. 7.2(A)(3)

<u>Page</u>

**TABLE OF AUTHORITIES** ................................................................................ vi

**INTRODUCTION** ............................................................................................... 1

**FACTS ALLEGED IN THE COMPLAINT** ....................................................... 3

**ARGUMENT** ...................................................................................................... 5

**I.     Defendants did not violate Taye's constitutional rights. Plaintiffs' 42 U.S.C. § 1983 claims therefore fail as a matter of law.** ....................................................... 6

    **A.     Defendants did not create or increase a risk of danger to Taye. Plaintiffs' state-created danger claim therefore fails. (Count One.)** ............................. 6

In order to prevail on a state-created danger claim—imposing liability on the government for private acts of violence—Plaintiffs must show that Defendants engaged in affirmative acts that increased the risk of danger to Taye, that the danger was unique to Taye and not shared by the public at large, and that Defendants acted with the requisite degree of culpability (here, deliberate indifference). *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006).

        **1.     Plaintiffs do not plead that Defendants committed any affirmative acts that increased the risk of danger to Taye.** ............................ 7

Plaintiffs do not allege any affirmative acts on the part of defendants. The claim therefore fails as a matter of law. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 855 (6th Cir. 2016). Even if Plaintiffs allege an affirmative act, they must still show that Taye was safer before the Defendants' actions than he was after them. *Stiles*, 819 F.3d at 854. Plaintiffs do not identify anything that Defendants did to make Taye less safe.

        **2.     Plaintiffs do not plead that Taye was in any special danger, as distinguished from the public at large.** ................................... 10

Plaintiffs do not identify any risk that was unique to Taye, as distinguished from a risk shared by the public at large. *McQueen*, 433 F.3d at 468. In fact, Plaintiffs allege precisely the opposite: that all students at Carson, not just Taye, face a risk of bullying. Compl. ¶¶ 24-26, 60.

        **3.     Plaintiffs do not plead facts showing that school officials were deliberately indifferent to any special danger to Taye that they created.** ................................................................ 10

Plaintiffs do not plead any facts showing that the Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also [drew] the inference," as is required to show deliberate indifference. *McQueen*, 433 F.3d at 469.

i

**B.**     **Defendants did not have a special relationship with Taye giving rise to a heightened duty of care under the Due Process Clause. (Count Two.) ....... 11**

The special relationship doctrine has been limited to incarceration, institutionalization, and foster care—restraints on liberty that deprive an individual (or his guardian) of the ability to care for himself. *DeShaney*, 489 U.S. at 199-200. This court and the Sixth Circuit have repeatedly held that schools do not have a special relationship with their students. *Stiles*, 819 F.3d at 854; *Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*, 2012 WL 5268946, at *3 (S.D. Ohio Oct. 23, 2012).

**C.**     **Defendants' alleged acts and omissions do not shock the conscience such as to violate Due Process. (Count Three.) …………………………………………. 14**

To prevail on a shocks-the-conscience claim, Plaintiffs must show that government officials abused or arbitrarily exercised their power in a manner that "violates the decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). The Complaint reveals that Defendants routinely intervened on Taye's behalf, attended to Taye when he was injured, and contacted his mother to pick him up. As a matter of law, Defendants' conduct falls short of the high bar for conscience-shocking.

**D.**     **Plaintiffs do not state a claim for violation of the Equal Protection Clause. (Count Four.) ………………………………………………………….. 16**

    **1.**     **Plaintiffs do not plead any instances of disparate treatment as between different students or different groups of students. As such, Plaintiffs' disparate treatment claim does not rise above speculation. …………………………………………………………………... 17**

Plaintiffs' equal protection claim rests solely on the allegation that Taye himself was treated differently in two different situations. The claim does not involve a protected class, or even two classes of individuals, and therefore fails as a matter of law.

    **2.**     **Plaintiffs do not plead that Taye suffered from discriminatory bullying. As such, Plaintiffs' deliberate indifference claim fails. ….. 18**

Plaintiffs do not show that Taye "was subjected to discriminatory peer harassment," which is an essential element of an Equal Protection claim for deliberate indifference to bullying. *Stiles*, 819 F.3d at 852.

**E.**     **Plaintiffs do not have a valid § 1983 claim against the individual defendants, and therefore do not have a municipal liability claim against the School Board. Even if they did have a valid § 1983 claim, Plaintiffs cannot show that any School Board policy was the moving force behind the constitutional violation. (Count Five.) ………………………………………………….. 18**

**1. Plaintiffs fail to establish an underlying constitutional violation. …. 19**

Plaintiffs do not have any valid constitutional claims against any school administrators. As such, they cannot assert a municipal liability claim against the School Board or Superintendent Ronan. *Stiles*, 819 F.3d at 856.

**2. The School Board's anti-bullying policy is constitutionally adequate. …………………………………………………………………... 19**

The Board has adopted an anti-bullying policy that exceeds Ohio's minimum statutory requirements. O.R.C. § 3313.666. Plaintiffs allege that the policy is inadequate, but do not plead any facts proving that, or that Taye's injuries resulted from the execution of the anti-bullying policy.

**3. Plaintiffs do not plead a prior pattern of unconstitutional conduct demonstrating that the School Board ignored a history of abuse. That omission is fatal to Plaintiffs' failure-to-train claim. ……………….. 21**

Plaintiffs have not identified prior instances of unconstitutional conduct that would have put the Board on notice that existing training was inadequate. As such, their failure-to-train claim fails as a matter of law. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

**4. Plaintiffs' failure-to-supervise claim demands that the School Board investigate school administrators' handling of each individual instance of bullying. As such, the claim amounts to a *respondeat superior* theory of liability, which the Supreme Court and Sixth Circuit expressly forbid. ………………………………………………… 22**

Plaintiffs do not plead any facts showing that the Board's failed to supervise Jackson or McKenzie, or that any such failure was the "moving force" behind any constitutional violations, or that the Board ignored an obvious risk that a violation would occur. The claim therefore fails as a matter of law. *Pecsi v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017).

**II. Neither Jackson nor McKenzie is responsible for Taye's death. Accordingly, Plaintiffs' state law claims fail as a matter of law. ………………………………….. 23**

**A. Plaintiffs do not plead any facts from which a jury could find the requisite mental state to overcome political subdivision immunity. …………………… 23**

In order to overcome state immunity, Plaintiffs must show that Jackson and McKenzie acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6). Plaintiffs do not plead any facts showing any of the required mental states. *Rural Bldg. of Cincinnati, LLC v. Mercer*, 2017-Ohio-7226, ¶ 21 (1st Dist. App.); *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).

**B.**     **Plaintiffs fail to state a claim for wrongful death. (Count Six.)** ................ 26

    **1.**     **Jackson and McKenzie did not breach any duty to Taye.** ............. 27

Under Ohio law, school officials owe students the common law duty to "exercise that care necessary to avoid reasonably foreseeable injuries to their students." *Estate of Smith v. W. Brown Local Sch. Dist.*, 26 N.E.3d 890, 899 (12th Dist. App. 2015). Plaintiffs do not plead any facts showing that Taye's injuries were the reasonably foreseeable result of any of Defendants' actions.

    **2.**     **Taye's suicide is an intervening act that breaks any casual connection between any alleged wrongful act of the Jackson or McKenzie and his death, and his death was not reasonably foreseeable.** .................. 28

Taye's suicide is an intervening act that breaks the causal chain between wrongful act and death. Jackson and McKenzie can be held liable only if his suicide was reasonably foreseeable. *Fischer v. Morales*, 526 N.E.2d 1098, 1101 (Ohio App. 10th Dist. 1987). Plaintiffs do not allege that Taye ever expressed any suicidal ideation to anyone or gave any indication that he would kill himself after he went home from school on January 26. Plaintiffs plead no facts showing that Taye's death was reasonably foreseeable to anyone, much less to school administrators.

    **3.**     **Plaintiffs cannot demonstrate causation.** ...................................... 28

**C.**     **Plaintiffs fail to state a claim for an intentional infliction of emotional distress. (Count Seven.)** ......................................................................... 28

    **1.**     **Neither Jackson nor McKenzie intended to cause or knew that their conduct would cause severe emotion distress to Plaintiffs.** ............ 29

Plaintiffs plead no facts showing that Jackson or McKenzie *intended* to cause emotional distress of any kind to Taye or his parents. Nor do Plaintiffs plead any facts demonstrating that Jackson or McKenzie knew or should have known that their actions would cause severe emotional distress to Taye or his parents. Plaintiffs' Complaint instead reveals that school administrators took steps to take care of Taye.

    **2.**     **Jackson and McKenzie's conduct was not "extreme and outrageous."** ......................................................................... 30

Plaintiffs do not identify any of Jackson's or McKenzie's conduct that was "extreme," "outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community."

    **3.**     **Jackson and McKenzie's conduct was not the proximate cause of Plaintiffs' injuries.** ................................................................ 32

Plaintiffs do not plead any facts that demonstrate that Jackson or McKenzie caused Taye's emotional distress. Plaintiffs contend that Taye was bullied, and imply that bullying caused his

suicide. Thus, Plaintiffs plead, at most, that Jackson and McKenzie failed to prevent Taye's distress, not that they caused it.

**D.** **Plaintiffs fail to state a claim for a negligent infliction of emotional distress. (Count Eight.)** ………………………………………………………………………**. 33**

**1.** **Defendants are not liable for Taye's death, and therefore cannot be liable for NIED in connection with his death.** ………………………… **33**

Ms. Reynolds' NIED claim based on Taye's suicide is derivative of her wrongful death claim. Defendants are not liable for NIED because they are not responsible for the underlying wrongful death tort. *Miranda v. Meijer Stores Ltd. Partnership*, 2009-Ohio-6695, ¶ 14 (2d Dist. App.).

**2.** **Plaintiffs were not bystanders to the January 24, 2017, bathroom incident, and therefore cannot hold Jackson or McKenzie liable for NIED in connection with viewing the video.** ………………………… **34**

Plaintiffs allege that they suffered emotional distress to being bystanders to watching video of the January 24 bathroom incident. Ohio does not recognize a claim for NIED premised on "the plaintiff's fear of a non-existent physical threat," such as only watching a video. *Dalton v. Fort Hamilton-Hughes Memorial Hosp.*, 1998 WL 191418 at *2 (Ohio 12th Dist. App. 1998).

**E.** **Plaintiffs' loss of consortium claim fails, as it is derivative of Plaintiffs' other tort claims. (Count Nine.)** …………………………………………………………**. 35**

A parent's claim for loss of consortium of a minor child is derivative of the defendant causing a legally cognizable injury to the child. *Bock v. Hamilton Cty. Bd. of Park Comm'rs.*, 726 N.E.2d 509, 510 (Ohio App. 1st Dist. 1999). Plaintiffs have no cognizable claims against Jackson or McKenzie with respect to Taye, and therefore cannot prevail on a loss of consortium claim.

**F.** **Plaintiffs fail to state a claim for failure to report child abuse. Ohio's child abuse reporting statute has never been applied to peer-to-peer harassment, and should not be in this case. (Count Ten.)** ………………………………... **35**

**G.** **Plaintiffs fail to state a claim for spoliation. (Count Eleven.)** ……………… **36**

Plaintiffs' spoliation claim is derivative of their other tort claims. *See Bae v. Dragoo & Assoc., Inc.*, 156 Ohio App. 3d 103, 113 (10th Dist. App. 2004). Defendants did not commit any torts against Plaintiffs. Plaintiffs therefore cannot show any damages resulting from the alleged spoliation.

**CONCLUSION** …………………………………………………………………………**. 37**

**CERTIFICATE OF SERVICE** ………………………………………………………… **38**

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Massillon,*
983 N.E.2d 266, 273 (Ohio 2012) ........................................................................................ 24, 25

*Bae v. Dragoo & Assoc., Inc,.*
156 Ohio App. 3d 103, 113 (10th Dist. App. 2004) ................................................................ 36

*Bd. of Cty. Comm'rs v. Brown,*
520 U.S. 397, 407 (1997) ........................................................................................................ 22

*Bickerstaff v. Lucarelli*,
830 F.3d 388, 396 (6th Cir. 2016) ............................................................................................ 6

*Bock v. Hamilton Cty. Bd. of Park Comm'rs.*,
726 N.E.2d 509, 510 (Ohio App. 1st Dist. 1999) ................................................................... 35

*Braden v. Mountain Home Sch. Dist.*,
903 F. Supp. 2d 729, 739 (W.D. Ark. 2012) .......................................................................... 32

*Braley v. City of Pontiac*,
906 F.2d 220, 227 (6th Cir. 1990) .......................................................................................... 14

*Breithaupt v. Abram*,
352 U.S. 432, 435 (1957) ........................................................................................................ 15

*Burgess v. Fischer*,
735 F.3d 462, 478 (6th Cir. 2013) .......................................................................................... 22

*Carlton v. Davisson*,
104 Ohio App. 3d 636, 653 (6th Dist. App. 1995) ................................................................. 33

*CBC Engineers & Assocs. Ltd. v. Miller Aviation, LLC*,
880 F. Supp. 2d 883, 888 (S.D. Ohio 2012) .......................................................................... 26

*Collins v. City of Harker Heights, Tex.*,
503 U.S. 115, 126 (1992) ........................................................................................................ 14

*Commerce & Industry Ins. Co. v. Toledo*,
45 Ohio St.3d 96, 98 (1989) ................................................................................................... 27

*Cty. of Sacramento v. Lewis*,
523 U.S. 833, 845 (1998) ........................................................................................................ 14

*Dalton v. Fort Hamilton-Hughes Mem'l Hosp.*,
1998 WL 191418 at *2 (Ohio 12th Dist. App. 1998) .................................................. 34

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
489 U.S. 189, 197 (1989) ........................................................................................ passim

*Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*,
675 F.3d 849, 856 (5th Cir. 2012) (en banc) ............................................................ 12

*Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*,
103 F.3d 495, 510 (6th Cir. 1996) .................................................................. 11, 12, 19

*Draw v. City of Lincoln Park*,
491 F.3d 550 (6th Cir. 2007) ................................................................................. 15, 16

*Elzein v. Fed. Nat'l Mortg. Ass'n*,
652 F. App'x 440, 441 (6th Cir. 2016) ......................................................................... 4

*Estate of Smith v. Burrows*,
36 N.E.3d 189 (Ohio 2015) ........................................................................................ 26

*Estate of Smith v. W. Brown Local Sch. Dist.*,
26 N.E.3d 890, 899 (12th Dist. App. 2015) ...................................................... 26, 27, 28

*Farago v. Panini's Int'l, Inc.*,
1998 WL 723174, at *6 (Ohio Ct. App. Oct. 15, 1998) ............................................ 33

*Fischer v. Morales*,
526 N.E.2d 1098, 1101 (Ohio App. 10th Dist. 1987) ................................................ 28

*Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*,
No. 1:11-CV-850, 2012 WL 5268946, at *3 (S.D. Ohio Oct. 23, 2012) ................ 12, 26

*Heimberger v. Zeal Hotel Group, Ltd.*,
42 N.E.3d 323, 334 (Ohio App. 10th Dist.) .............................................................. 37

*Heiner v. Moretuzzo*,
73 Ohio St.3d 80 (1995) ............................................................................................. 34

*Hughes v. City of Cedar Rapids, Iowa*,
840 F.3d 987, 996 (8th Cir. 2016) ............................................................................. 14

*K.B. v. Waddle*,
764 F.3d 821, 824 (8th Cir. 2014) ......................................................................... 8, 12

*Kallstrom v. City of Columbus*,
136 F.3d 1055, 1066 (6th Cir. 1998) ........................................................ 10

*Lillard v. Shelby Cty. Bd. of Educ.*,
76 F.3d 716, 726 (6th Cir. 1996) ...................................................... 14, 15, 16

*M.P.T.C. v. Nelson Cty. Sch. Dist.*,
192 F. Supp. 3d 798, 805 (W.D. Ky. 2016) .............................................. 17

*Maldonado v. Josey*,
975 F.2d 727, 733 (10th Cir. 1992) ......................................................... 12

*McQueen v. Beecher Cmty. Sch.*,
433 F.3d 460, 463 (6th Cir. 2006) .................................................... 6, 7, 10

*Miranda v. Meijer Stores Ltd. Partnership*,
2009-Ohio-6695, ¶ 14 (2d Dist. App.) .................................................... 33

*Mize v. Tedford*,
375 F. App'x 497, 500 (6th Cir. 2010) .................................................... 22

*Mohat v. Horvath*,
2013-Ohio-4290 at *1-3 ........................................................................ 26

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658, 694 (1978) ....................................................................... 22

*Moore v. Lusks*,
667 F. App'x 592, 594 (8th Cir. 2016) .................................................... 15

*Morgan v. Town of Lexington*,
138 F. Supp. 3d 82, 94 (D. Mass. 2015) ................................................. 32

*Morrow v. Balaski*,
719 F.3d 160, 167-77 (3d Cir. 2013) (en banc) ................................... 12, 13

*Odom v. Davis*,
2003-Ohio-3316, ¶ 30 (4th Dist. App. 2003) .......................................... 33

*Ondo v. City of Cleveland*,
795 F.3d 597, 611-12 (6th Cir. 2015) ..................................................... 29

*Patel v. Kent Sch. Dist.*,
648 F.3d 965, 973 (9th Cir. 2011) .......................................................... 12

*Pecsi v. City of Niles*,
674 F. App'x 544, 547 (6th Cir. 2017) ....................................................... 22

*Radvansky v. City of Olmsted Falls*,
395 F.3d 291, 312 (6th Cir. 2005) .......................................................... 16

*Rochin v. California*,
342 U.S. 165, 172-73 (1952) .................................................................. 15

*Rondigo, L.L.C. v. Twp. of Richmond*,
641 F.3d 673, 680-81 (6th Cir. 2011) ....................................................... 20

*Rural Bldg. of Cincinnati, LLC v. Mercer*,
2017-Ohio-7226, ¶ 21 (1st Dist. App.) .................................................... 24

*S.S. v. E. Kentucky Univ.*,
532 F.3d 445, 456 (6th Cir. 2008) ............................................................ 7

*Sargi v. Kent City Bd. of Educ.*,
70 F.3d 907, 912 (6th Cir. 1995) ............................................................. 8

*Seiwert v. Spencer-Owen Cmty. Sch. Corp.*,
497 F. Supp. 2d 942, 957 (S.D. Ind. 2007) ............................................... 32

*Shively v. Green Local Sch. Dist. Bd. of Educ.*,
579 F. App'x 348, 356 (6th Cir. 2014) ................................................. 16, 18

*Smith v. Howard Johnson Co.*,
615 N.E.2d 1037, 1038 (Ohio 1993) ...................................................... 36

*Soper v. Hoben*,
195 F.3d 845, 852 (6th Cir. 1999) ...................................................... 12, 17

*Stiles ex rel. D.S. v. Grainger Cty., Tenn.*,
819 F.3d 834, 855 (6th Cir. 2016) .................................................... passim

*Terrell v. Larson*,
396 F.3d 975, 981 (8th Cir. 2005) (en banc) ............................................ 14

*Vernonia Sch. Dist. 47J v. Acton*,
515 U.S. 646, 655 (1995) ...................................................................... 12

*Vidovic v. Hoynes*,
29 N.E.3d 338, 349 (11th Dist. App. 2015)........................................................ 25, 26

*Walker v. Firelands Cmty. Hosp.*,
170 Ohio App. 3d 785, 798 (6th Dist. App. 2007) ....................................... 33

*Zivich v. Mentor Soccer Club, Inc.*,
82 Ohio St. 3d 367, 376 (1998)............................................................................. 25

**Statutes**

28 U.S.C. § 2403(b) ............................................................................................... 21

42 U.S.C. § 1983.................................................................................................. 6, 18

O.R.C. § 2151.031 .................................................................................................. 30

O.R.C. § 2151.421 .................................................................................................. 35

O.R.C. § 2151.421(A) ............................................................................................. 36

O.R.C. § 2151.421(G)(1) ........................................................................................ 36

O.R.C. § 2744.03(A)(6) .......................................................................................... 24

O.R.C. § 3313.666(A)(2) ........................................................................................ 20

O.R.C. § 3313.666(B) ............................................................................................. 19

O.R.C. 2744.03(A)(6)(b) ........................................................................................ 25

# INTRODUCTION

Gabriel Taye ("Taye"), a student at Carson Elementary School ("Carson"), died at home on January 26, 2017. The coroner ruled his death a suicide. The Defendants are deeply saddened by Taye's death. It is heartbreaking for the school to lose a student. And the Board, Ronan, Jackson, and McKenzie are fully aware that the pain felt by Taye's parents far outstrips their own. The Defendants again extend their deepest sympathies and condolences to Ms. Reynolds and Mr. Taye.

The administrator of Taye's estate and his parents Cornelia Reynolds and Benyam Taye ("Plaintiffs") filed this suit alleging that the Cincinnati Board of Education ("Board"), former Superintendent Mary Ronan, Principal Ruthie Jackson, and Assistant Principal Jeff McKenzie ("Defendants") are responsible for Taye's death.

There is no question that Taye's death is tragic. But the question raised by this suit is whether the Board and school administrators are responsible for it. A careful review of the Complaint and the law shows that Defendants did not violate Taye's rights and did not cause his death or the corresponding suffering of his parents. As such, this action should be dismissed.

Plaintiffs allege that Taye committed suicide at home as a result of bullying at school. According to Plaintiffs, Defendants are responsible because they did not intervene, which amounted to state law torts and violations of Taye's constitutional rights. But this case is unlike any other "bullycide" case. There are two common components to school bullying cases where school administrators have been found liable: a student who suffers a pervasive pattern of targeted taunting, threats, or violence, and school administrators who either consciously ignore or actively encourage the bullying. Neither is present here.

Plaintiffs do not allege that Taye suffered from a pattern of bullying. Plaintiffs identify six alleged incidents of conflict between Taye and other students during Taye's third-grade year.[1] The incidents do not share any pattern or even show repeated run-ins with the same student. Indeed, it is not even clear that the allegations in the Complaint meet the definition of "bullying" under Ohio law, which requires intentional acts "that a student has exhibited toward another particular student more than once." The Complaint also reveals that Defendants were attentive and responsive to Taye. Whether he was injured in an accident or in a conflict with another student, Defendants promptly responded to the incident, contacting Taye's mother and even disciplining other students. At bottom, Plaintiffs can neither plead facts showing that Taye was bullied, nor show that, if he was bullied, Defendants were indifferent.

Plaintiffs' case is built around their belief that Defendants actively and intentionally engaged in conduct that caused Taye harm. But that belief is wholly unsupported by the Complaint. Plaintiffs plead no facts that would allow a jury to find the requisite conduct. And Plaintiffs plead no facts that would show that Defendants sought to harm Taye, much less why they would do so. Instead, the Complaint reveals that school administrators were attentive and responsive to Taye, intervening to punish students who were—in Plaintiffs' words—aggressive toward Taye.

Plaintiffs recognize these weaknesses and the atypical nature of this case, and therefore pursue a novel and untenable theory of liability: that Defendants lacked control over Carson Elementary as a whole, engaged in a vast cover-up of the conditions at Carson, and intentionally

_____

[1] Plaintiffs assert that there were two other incidents: Once, Taye punched another student; Taye's parents now speculate that he may have been defending himself. Compl. ¶ 67. On another occasion, Plaintiffs allege only that Taye bumped his head on the playground. They do not allege another student was involved. Compl. ¶ 70.

fostered a "dangerous environment" at Carson that contributed to Taye's death. Along the way, Plaintiffs make allegations about incidents and conflicts involving students other than Taye and urge the Court to expand bullying beyond its statutory bounds to encompass what they term "aggressive behavior."

Allowing Plaintiffs' claims to proceed would require this Court to adopt a theory of liability that has no support in the law. It would require the Court to find that the U.S. Constitution contains a definition of bullying and that Ohio's statutory definition falls short. Plaintiffs ask the Court to adopt a definition manufactured purely for purposes of this litigation, and to impose requirements on schools that have never been tried and would be patently unworkable. Among other things, Plaintiffs' theory would require school teachers to call child services or the police after any student-on-student altercation, require schools to hire additional staff to monitor every inch of school property at all times, force schools to reveal disciplinary information about individual students to other parents and the general public, and impose on school boards the responsibility for day-to-day management of each individual school in their districts. The Court should decline the invitation to impose onerous, untested, unnecessary new requirements on the public school system.

## FACTS ALLEGED IN THE COMPLAINT

Taye was a third-grade student at Carson, one of the elementary schools in the Cincinnati Public School District ("CPS"). During the time period covered by the Complaint, Mary Ronan was the superintendent of CPS, Ruthenia Jackson was the principal of Carson, and Jeff McKenzie was the assistant principal of Carson.

Taye was involved in a number of incidents with other students during his third-grade year at Carson.[2] In September 2016, Taye shoved and punched another student and was reprimanded.[3] Compl. ¶ 67. There were two incidents in October 2016: On October 3, Taye was involved in an altercation with another student; a CPS employee called Ms. Reynolds and left a voicemail about the incident. *Id.* ¶ 68. On October 7, a student punched Taye; Taye punched back. *Id.* ¶ 69. The instigator was reprimanded, and a school employee once again called Ms. Reynolds and left a voicemail about the incident. *Id.* None of these incidents involved the same student, and Plaintiffs allege no further incidents until January 2017.

On January 9, according to Plaintiffs, Taye was involved in an altercation with two students (students C.J. and P.B., who were not involved in any of the September or October incidents) over a can of pop. Compl. ¶ 71. Taye was punched in the mouth and had a bloody lip. *Id.* The school nurse treated Taye and called Ms. Reynolds. *Id.* Ms. Reynolds in turn reported the incident to McKenzie, who promptly conducted an investigation and took action consistent with CPS policies. *Id.* ¶ 72. He removed C.J. and P.B. from school for two days. *Id.* After the students served their suspension, McKenzie met with the students, the parents of one of them, Taye, and Ms. Reynolds. *Id.* ¶ 73. McKenzie warned the students that if such behavior occurred again, they would face further discipline. *Id.*

On January 18, another student (Student J., last name unknown) kicked at Taye, knocking his lunch tray to the floor. Compl. ¶ 74. Plaintiffs allege that Ms. Reynolds was not informed of

---

[2] Plaintiffs assert that Taye was the victim of "aggressive behavior," which is a term they do not define, but that is broader than Ohio's statutory definition of "bullying."

[3] Ms. Reynolds "now wonders if Gabe was defending himself from bullying by a student." That is pure speculation, which the Court should not accept as true for purposes of the motion to dismiss. *Elzein v. Fed. Nat'l Mortg. Ass'n*, 652 F. App'x 440, 441 (6th Cir. 2016).

this incident, but there is nothing in the Complaint to suggest that school officials knew anything about this incident or that Taye was harmed.

Two weeks later, Taye entered a school bathroom where, Plaintiffs allege, he was yanked to the ground and lost consciousness.[4] Compl. ¶ 76. Several minutes later, McKenzie entered the bathroom, followed later by Jackson. *Id.* ¶ 78. McKenzie checked on Taye and summoned the school nurse. *Id.* ¶ 79. Nurse McLaughlin evaluated Taye and subsequently called Ms. Reynolds. *Id.* ¶ 80-81.

Ms. Reynolds picked Taye up from school. Taye told Ms. Reynolds that he fell and hurt his stomach. Compl. ¶ 83. Several hours later, Ms. Reynolds took him to the hospital for further evaluation, where Taye was diagnosed with "likely viral gastro with LLQ [lower left quadrant] pain" and discharged. *Id.* ¶¶ 83-84. Ms. Reynolds kept Taye home from school on January 25. *Id.* ¶ 86.

Ms. Reynolds sent Taye back to school on January 26. Compl. ¶ 87. That day, two students took Taye's water bottle and attempted to flush it down the toilet. *Id.* ¶ 88. Taye reported the incident to a teacher. *Id.* Taye went home from school that day around 5:30 p.m.; soon thereafter, Ms. Reynolds found him hanging from the bunkbed by one of his ties. *Id.* ¶¶ 89-90. Ms. Reynolds called 911 and performed CPR, but tragically Taye was pronounced dead at the hospital an hour later. *Id.* ¶¶ 91-93.

## ARGUMENT

To defeat a motion to dismiss, Plaintiffs must allege facts that, if accepted as true, state a plausible claim for relief and assert a right to relief that is more than merely possible or

---

[4] This is Plaintiffs' interpretation of the video footage of the incident. Defendants dispute that characterization.

speculative. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). The Court must accept all plausible factual allegations in the Complaint as true and construe them in the light most favorable to Plaintiffs. *Id.* But the Court "need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Id.*

I. **Defendants did not violate Taye's constitutional rights. Plaintiffs' 42 U.S.C. § 1983 claims therefore fail as a matter of law.**

To defeat a motion to dismiss their § 1983 claims, Plaintiffs must plead facts that, taken as true, show the deprivation of a constitutional right caused by someone acting under color of state law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

Plaintiffs allege that Defendants violated Taye's Due Process rights by creating a special danger to Taye (a "state-created danger" claim); by failing to protect Taye after depriving him and his parents of the ability to do so (a "special relationship" claim); and by engaging in acts or omissions that shock the conscience (a "shocks the conscience" claim). Plaintiffs also allege that Defendants violated Taye's Equal Protection rights by discriminating against students who are injured by bullying, and by showing deliberate indifference to the bullying from which he suffered. Finally, Plaintiffs allege that the Board and Superintendent Ronan are liable for the constitutional violations because the violations resulted from a Board policy or custom. As explained below, all of Plaintiffs' § 1983 claims should be dismissed.

A. **Defendants did not create or increase a risk of danger to Taye. Plaintiffs' state-created danger claim therefore fails. (Count One.)**

Plaintiffs' first cause of action is a state-created danger claim. Plaintiffs allege that Defendants "deprived Gabriel Taye and plaintiffs of . . . the right to be free from affirmative actions directly increasing Gabriel Taye's vulnerability or otherwise placing him in danger[.]" Compl. ¶ 174. But Plaintiffs misstate the nature of a state-created danger claim. Neither the Due Process Clause nor the state-created danger doctrine creates a free-standing right to be free from

actions of private actors that place the plaintiff in danger. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

Plaintiffs presumably mean that Taye was deprived of his constitutional right to life or to bodily integrity (specifically in this case, freedom from bullying by his peers). But private actors (his fellow students), not government actors, deprived him of those rights. In order to shift liability to Defendants, Plaintiffs must plead facts showing (1) that Defendants committed an affirmative act that created or increased the risk of danger to Taye, (2) a special danger to Taye as distinguished from the public at large, and (3) "the requisite degree of state culpability." *McQueen*, 433 F.3d at 464. Plaintiffs' claim fails at each element.

### 1. Plaintiffs do not plead that Defendants committed any affirmative acts that increased the risk of danger to Taye.

Plaintiffs must plead affirmative acts on the part of Defendants. Omissions and failures to act do not suffice. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 855 (6th Cir. 2016). Not just any affirmative act will do. The act must be one that increases the risk of harm to the plaintiff. "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." *Id.* at 854. The Sixth Circuit has expressly held that failing to protect a student from peer harassment is not an affirmative act that increases the risk of harm to the student. *Stiles*, 819 F.3d at 855; *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 456 (6th Cir. 2008).

*Stiles* decides this claim. Plaintiffs summarily allege that Defendants "took affirmative action to cover up the attack on Gabe," Compl. ¶ 137, but like the plaintiffs in *Stiles*, Plaintiffs here do not identify a single affirmative action. *Stiles*, 819 F.3d at 854 ("None of the acts identified by Plaintiffs qualifies as an affirmative act that created or increased [the student's] risk

of danger."). Rather than plead affirmative acts, Plaintiffs allege that Defendants "withheld" information from Taye's mother and "have not," "did not," or "fail[ed] to" do something that, in Plaintiffs' view, Defendants should have done. Compl. ¶¶ 138-145. Those allegations are plainly omissions, not affirmative acts, and therefore they cannot support a state-created danger claim. *Stiles*, 819 F.3d at 854-55 (In a bullying case, "[f]ailing to punish students, failing to enforce the law, failing to enforce school policy, and failing to refer assaults to [the school resource officer] are plainly omissions rather than affirmative acts."). Moreover, Plaintiffs cannot establish a state-created danger claim simply by asserting that government actors should have done more than they did. *DeShaney*, 489 U.S. at 203.

Plaintiffs specifically allege that Defendants withheld from Ms. Reynolds "that Gabe was attacked, other boys were attacked, the bathroom was unsupervised, and Gabe lay unconscious on the bathroom floor for over seven minutes." Compl. ¶ 138. But *not* communicating is plainly an omission, not an affirmative act. *See K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014) (holding that failure to warn a student's parent of a specific threat against the student is not an affirmative act that increased danger to the student). Even the failure to communicate a student's health condition before sending him home is an omission rather than an affirmative act. *Stiles*, 819 F.3d at 855; *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912 (6th Cir. 1995).

Plaintiffs further allege that Defendants have not investigated the bullying Taye suffered at Carson, did not document the bathroom attack, did not report the bathroom attack to Taye's parents, did not protect Taye from further bullying, and failed to respond to the pattern of

"aggressive behavior" towards Taye.[5] Compl. ¶¶ 141-45. But even assuming Plaintiffs'
allegations to be true, failure to protect a student from peer harassment is not an affirmative act
that increases the risk of danger. *Stiles*, 819 F.3d at 854-55. And "ignoring a dangerous situation
is usually not an affirmative act and, furthermore, usually cannot increase a preexisting danger."
*Id.* at 855. Plaintiffs further allege that Defendants' failures to act violated CPS policy. But the
Sixth Circuit has also expressly held that "failing to enforce school policy" is an omission, not an
affirmative act. *Id.*

      The closest Plaintiffs come to alleging an affirmative act is their assertion that the
installation of security cameras at Carson "lured students like Gabe into a sense of false security"
and "encouraged aggressive behavior because the perpetrators knew that their actions were either
going unnoticed or would be disregarded." Compl. ¶ 113. That is both conclusory and
speculative. It is hardly clear that making Taye *feel* safer actually placed him in more danger.
And a reasonable jury would be hard pressed to find that students felt freer to bully their peers in
the presence of a surveillance camera than they would if their actions could not be recorded at
all. Moreover, Plaintiffs assertions are contradictory: Plaintiffs assert both that the surveillance
cameras made Carson students feel safer specifically because "there was a surveillance camera
watching and recording everything," *id.* ¶ 2, *and* that the cameras "encouraged aggressive
behavior" specifically because students knew that they were *not* being watched. *Id.* ¶ 113.

---

[5] Defendants contend that they did not ignore any danger to Taye. However, the Complaint
demonstrates that Defendants routinely intervened in incidents involving Taye, and have
previously suspended students for allegedly harming him. Compl. ¶¶ 67-73.

### 2. Plaintiffs do not plead that Taye was in any special danger, as distinguished from the public at large.

Even if Plaintiffs plead facts showing an affirmative act that increased the risk of danger to Taye, they must then plead facts showing that the danger was specific to Taye, as distinguished from a risk shared by the public at large. *McQueen*, 433 F.3d at 468 (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). Plaintiffs have failed to do so. Indeed, Plaintiffs' theory is the opposite. Plaintiffs go out of their way to assert that Carson is plagued by a culture of bullying—a risk shared by all students, not a danger unique to Taye.[6] Compl. ¶¶ 24-26, 60.

Plaintiffs must show that Defendants affirmatively created a specific danger to Taye. They pled that Defendants passively allowed the creation of a danger that is not unique to Taye at all. That forecloses their claim.

### 3. Plaintiffs do not plead facts showing that school officials were deliberately indifferent to any special danger to Taye that they created.

Plaintiffs must also show that Defendants acted with the "requisite degree of culpability." *McQueen*, 433 F.3d at 469. For "settings [that] provide the opportunity for reflection and unhurried judgments," the requisite degree of culpability is deliberate indifference. *Id.* Plaintiffs plead deliberate indifference here. Compl. ¶ 175. Deliberate indifference requires that school officials "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *McQueen*, 433 F.3d at 469.

Plaintiffs assert that Defendants acted with deliberate indifference, but do not plead any facts that would prove it. As explained above, the installation of surveillance cameras is the only

---

[6] Many of Plaintiffs' allegations regarding Carson, including allegations concerning academic performance at Carson, are gratuitous and unrelated to any of the legal issues raised by this case.

"affirmative act" that Plaintiffs pled. Even assuming that surveillance cameras actually made Carson students less safe (by making them feel safer), Plaintiffs do not plead that Defendants knew or should have known it.[7]

Plaintiffs' state-created danger claim fails at every element. Count One should be dismissed.

**B.**   **Defendants did not have a special relationship with Taye giving rise to a heightened duty of care under the Due Process Clause. (Count Two.)**

Plaintiffs' second cause of action is a special relationship claim. Plaintiffs allege that Defendants "deprived Gabriel Taye and plaintiffs of . . . the right to be kept safe when a special relationship has been created and by taking away from his parents their ability to protect him." Compl. ¶ 176. Like the state-created danger doctrine, the special relationship doctrine is a method for imposing liability on the government when a private actor deprives the plaintiff of his constitutional rights. *See Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 510 (6th Cir. 1996).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. The application of the special relationship doctrine has been limited to "incarceration, institutionalization, or other similar restraint of personal liberty," and foster care, where the state restrains the plaintiff's ability to provide for his basic needs. *Id.* at 200, 201 n.9; *see*, *e.g.*, *K.B. v. Waddle*, 764 F.3d 821, 824 (8th

---

[7] Plaintiffs' view puts schools in an impossible situation. Plaintiffs argue that a school violates its students' constitutional rights if it utilizes security cameras and "aggressive behavior" occurs. But Plaintiffs also allege that CPS did not adequately supervise the bathrooms. Compl. ¶¶ 135, 138. To satisfy Plaintiffs, schools must both forgo security cameras *and* station staff in every unwatched corner of the school—bathrooms included. The law does not impose that burden.

Cir. 2014); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012) (en banc); *Maldonado v. Josey*, 975 F.2d 727, 733 (10th Cir. 1992).

The school-student relationship is not a special relationship. This Court explained that "[t]he Substantive Due Process Clause protects individuals from abuses of government power and does not impose a constitutional duty on the school to protect students from harm inflicted by private actors, such as their classmates." *Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*, No. 1:11-CV-850, 2012 WL 5268946, at *3 (S.D. Ohio Oct. 23, 2012) (citing *DeShaney*, 489 U.S. at 195). The Sixth Circuit has done the same. *Stiles*, 819 F.3d at 854; *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999) (compulsory attendance laws do not create a special relationship); *Claiborne Cty.*, 103 F.3d at 509 (state *in loco parentis* law does not create a special relationship). Indeed, after *DeShaney*, every single court of appeals to address the question has refused to find a special relationship between students and school administrators. *See, e.g.*, *K.B.*, 764 F.3d at 824; *Morrow v. Balaski*, 719 F.3d 160, 167-77 (3d Cir. 2013), *as amended* (June 14, 2013) (en banc); *Covington Cty. Sch. Dist.*, 675 F.3d at 857-63 (5th Cir. 2012) (en banc); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 973 (9th Cir. 2011).[8]

In an effort to get around the undisputed precedent, Plaintiffs allege that CPS created the requisite special relationship "by withholding information relevant to [Taye's] safety and the

---

[8] That is not to say that public schools owe no duties to students. As the Sixth Circuit explained, "a school system has an unmistakable duty to create and maintain a safe environment for its students as a matter of common law." *Claiborne Cty.*, 103 F.3d at 510. But the school environment does not restrain the liberty of children or their parents such that the common law duty becomes a *constitutional* one. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995) ("While we do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect,' we have acknowledged that for many purposes school authorities act in loco parentis, with the power and indeed the duty to inculcate the habits and manners of civility.") (internal citations and quotations omitted).

dangerous climate at the school from his parents." Compl. ¶ 146. Namely, CPS failed to apprise Taye's parents of all of the circumstances of the alleged bullying incidents recited in paragraphs 66-74 of the Complaint,[9] and did not inform Taye's parents about the nature of his injuries (i.e., loss of consciousness and head trauma) during the bathroom incident on January 24, 2017. Compl. ¶¶ 158, 168.

Withholding information, however, is not a restraint on Taye's or his parents' liberty—much less one that deprived Taye's parents of the ability to act on his behalf. Nothing about withholding information remotely approximates the "incarceration, institutionalization, or other similar restraint of personal liberty" that *DeShaney* requires to find a special relationship. 489 U.S. at 200. Defendants did not interfere with Ms. Reynolds' ability to care for her son; indeed, Nurse McLaughlin called Ms. Reynolds after the bathroom incident involving Taye. Compl. at ¶ 81. Ms. Reynolds took Taye to the hospital and kept him home from school the following day. Compl. ¶¶ 83, 86. Defendants did not interfere with Ms. Reynolds' ability to ask Taye what happened at school (or with Taye's ability to tell her). At all times, Ms. Reynolds remained the primary care-giver for Taye, *Morrow*, 719 F.3d at 168, and Defendants did not at any time interfere with that relationship.

The relationship between the school and Taye never approached the kind of custodial relationship required for a special relationship claim. Plaintiffs advance the theory that delivering anything less than complete information constitutes a restraint on liberty giving rise to a special relationship. Plaintiffs invite the Court to create a Due Process claim out of virtually every parent-teacher interaction, and stretch the special relationship doctrine far beyond the boundaries

---

[9] Not all were incidents of bullying, as Plaintiffs acknowledge.

set in *DeShaney* and uniformly applied by courts since then. The Court should decline the invitation and instead dismiss Count Two.

**C.   Defendants' alleged acts and omissions do not shock the conscience such as to violate Due Process. (Count Three.)**

The Due Process Clause protects individuals against the arbitrary exercise of government power. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). When substantive due process is at issue, "the cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* at 846. Whether conduct shocks the conscience is a question of law. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992) ("arbitrary government action that must 'shock the conscience' of federal judges"); *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc).

According to Plaintiffs, the conscience-shocking actions here were covering up the January 24 bathroom incident and Taye's bullying, and withholding from Taye's parents information about his injuries after the bathroom incident. Compl. ¶¶ 148, 158. The alleged conduct does not rise to the level of a Due Process violation. Defendants' alleged conduct is "far short of 'brutal' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

To prevail, Plaintiffs must show that government officials abused or arbitrarily exercised their power. *See Lillard*, 76 F.3d at 726 (granting a motion to dismiss a shocks-the-conscience claim because the government's conduct did not "amount to a brutal and inhumane abuse of . . . official power, literally shocking to the conscience"); *see also Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016) (same). It is a high bar, reserved for only the most despicable conduct. The Supreme Court has defined it variously as conduct that "violates the

decencies of civilized conduct," *Rochin v. California*, 342 U.S. 165, 172-73 (1952), or that is "so brutal and offensive that it did not comport with traditional ideas of fair play and decency," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (internal quotations omitted).

Courts have offered some guideposts for what is not conscience-shocking. The Sixth Circuit has turned away shocks-the-conscience claims as a matter of law where government officials engaged in affirmative conduct that directly injured the plaintiffs. In *Draw v. City of Lincoln Park*, police officers encouraged an illegal drag race; during the race, one of the drivers lost control and veered into a crowd, killing a bystander. 491 F.3d 550 (6th Cir. 2007). The Sixth Circuit held that the officers' conduct did not shock the conscience, though they "stupidly encouraged third parties to engage in tortious conduct" and "showed incredibly poor judgment." *Draw*, 491 F.3d at 556. And in *Lillard*, a teacher slapped a student for no legitimate reason. The court held that such conduct was "careless and unwise," but not conscience-shocking. 76 F.3d at 726. The Eighth Circuit granted a motion to dismiss a shocks-the-conscience claim where a school employee directly bullied a student, including by telling the student to kill herself, on a weekly basis for nearly a year. *Moore v. Lusks*, 667 F. App'x 592, 594 (8th Cir. 2016).

As a matter of law, Defendants' alleged conduct falls far short of an abuse of power, much less one that shocks the conscience. Plaintiffs accuse Defendants of "covering up" the bathroom incident and Taye's injuries, but that is nothing more than speculation and conclusory labeling. The Complaint tell a different story: Plaintiffs concede that school administrators intervened on Taye's behalf before, and routinely contacted his mother when he was injured or involved in an altercation of which school administrators were aware. Compl. ¶¶ 67-73. After Taye was involved in the bathroom incident, McKenzie and Jackson responded to the scene. Nurse McLaughlin examined Taye and contacted his mother to pick him up from school. *Id.*

¶¶ 80-81. Nonetheless, Plaintiffs inexplicably describe Defendants' conduct as a "cover up." And in their speculative and conclusory assertions, Plaintiffs never offer any reason why Defendants would have tried to cover up Taye's condition in the first place.

At most, Plaintiffs allege that Defendants failed to share some information with Ms. Reynolds (after treating Taye and calling her). But Plaintiffs plead no facts—or even a mental state—to make the jump from "omitted information" to "arbitrarily exercised or abused government power."

Even if Defendants' conduct constituted an abuse or arbitrary exercise of power, it falls far short, as a matter of law, of unconstitutionally conscience-shocking. Here, at most the Defendants inadequately responded to Taye's injuries after he had already been hurt. But unlike the defendants in *Draw* and *Lillard*, Defendants here are not directly responsible for any of Taye's injuries, much less his death. Nor is there any allegation that Defendants encouraged students or anyone else to injure Taye.

The Complaint alleges, at most, inattention or a misjudgment of the severity of Taye's condition. But the allegations fall far short of brutal, inhuman, or "inspired by malice." As such, they do not support a shocks-the-conscience claim, and Count Three should be dismissed.

**D.      Plaintiffs do not state a claim for violation of the Equal Protection Clause. (Count Four.)**

The Equal Protection Clause bars states from making distinctions that, as relevant here, "intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014). "The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about

16

bullying as compared to other classes of students . . . , and (2) deliberate indifference to discriminatory peer harassment." *Stiles*, 819 F.3d at 851-52. Plaintiffs assert claims under both theories.

### 1. Plaintiffs do not plead any instances of disparate treatment as between different students or different groups of students. As such, Plaintiffs' disparate treatment claim does not rise above speculation.

To prevail on a disparate treatment theory, Plaintiffs must show that CPS treated students who complained of or suffered from bullying differently from similarly situated students. *Stiles*, 819 F.3d at 852. In the usual case, "similarly situated" means "students who were bullied or complained of bullying," and school officials discriminate among bullied students based on race, gender, sexual orientation, or other protected classifications. In those cases, school officials treat black students who are bullied differently from white students, or treat sexual harassment differently from other types of bullying. *See, e.g.*, *Stiles*, 819 F.3d at 852 (gender discrimination); *Soper*, 195 F.3d at 852 (gender discrimination); *M.P.T.C. v. Nelson Cty. Sch. Dist.*, 192 F. Supp. 3d 798, 805 (W.D. Ky. 2016) (disability discrimination).

Plaintiffs' claim is novel. It does not involve a protected class or any other recognized grouping of students for a discriminatory purpose. Rather, Plaintiffs allege that Defendants treated students who were injured by bullying differently from students who were injured in accidents. Counsel has not found a case that makes such classifications. The Court should decline to be the first.

Plaintiffs allege that Taye himself was once backboarded and taken to the hospital after an accident on the playground, followed by the conclusory statement that "other students injured by an accident are appropriately treated and their parents are notified." Compl. ¶¶ 115-117. In contrast, Plaintiffs allege, when Taye was injured by bullying in the bathroom, he was not referred to a doctor and his parents were not "told what happened." *Id.* ¶ 118. Plaintiffs do not

allege any incidents involving students other than Taye. So Plaintiffs do not identify any discrimination as between two different *classes* of students. Plaintiffs allege only that Defendants treated Taye himself differently in two different situations.

Rather than proving discrimination, the allegations in the Complaint confirm that Defendants were attentive and responsive to Taye's injuries, and told his mother, regardless of the cause.

### 2. Plaintiffs do not plead that Taye suffered from discriminatory bullying. As such, Plaintiffs' deliberate indifference claim fails.

To prevail on a deliberate indifference theory, Plaintiffs must show first that Taye was "was subjected to discriminatory peer harassment." *Stiles*, 819 F.3d at 852. *Stiles* and the cases it cites suggest that Plaintiffs must prove that Taye was bullied due to his membership in a particular class (race, actual or perceived sexual orientation, gender, or the like). Plaintiffs must then show that school officials responded with deliberate indifference—"in a manner clearly unreasonable in light of known circumstances." *Id.*; *Shively*, 579 F. App'x at 357.

While Plaintiffs allege that CPS was indifferent to the bullying Taye faced at Carson, Compl. ¶ 183, they do not allege that Taye suffered from *discriminatory* bullying. That is, Plaintiffs allege that Taye was bullied, but do not allege that he was bullied due to his membership in a particular class. That failure bars their deliberate indifference claim; therefore, Count Four should be dismissed.

**E.  Plaintiffs do not have a valid § 1983 claim against the individual defendants, and therefore do not have a municipal liability claim against the School Board. Even if they did have a valid § 1983 claim, Plaintiffs cannot show that any School Board policy was the moving force behind the constitutional violation. (Count Five.)**

Plaintiffs assert a municipal liability claim under § 1983 against the Board and Superintendent Ronan in her official capacity, alleging that the Board and Ronan maintained policies and customs that caused the constitutional violations alleged above. To prevail, Plaintiffs

must first establish that Jackson or McKenzie is liable for a constitutional violation under one of the theories addressed above. *Stiles*, 819 F.3d at 856 ("In other words, the Board of Education may be held liable only if there is a showing of liability on the part of one of its officials."). Plaintiffs must then show that the constitutional violation resulted from "an officially executed policy, or the toleration of a custom within the school district." *Claiborne Cty.*, 103 F.3d at 507. A "custom" must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.*

Plaintiffs allege that the Board and Ronan adopted an inadequate anti-bullying policy, failed to train and supervise Jackson and McKenzie, and failed to conduct a meaningful investigation of Jackson's and McKenzie's actions. And those policies and failures, Plaintiffs assert, were the motivating force behind the constitutional violations alleged in the Complaint.

**1. Plaintiffs fail to establish an underlying constitutional violation.**

Plaintiffs do not have any valid constitutional claims against any school administrators. As such, they cannot assert a municipal liability claim against the Board or Ronan. *Stiles*, 819 F.3d at 856. The Court's analysis can end here if it grants this motion on the first four claims.

**2. The School Board's anti-bullying policy is constitutionally adequate.**

Ohio requires all public schools to "establish a policy prohibiting harassment, intimidation, or bullying." O.R.C. § 3313.666(B). The statute defines "harassment, intimidation, or bullying" as:

> (a) Any intentional written, verbal, electronic, or physical act that a student has exhibited toward another particular student more than once and the behavior both:
>
> (i) Causes mental or physical harm to the other student;
>
> (ii) Is sufficiently severe, persistent, or pervasive that it creates an intimidating, threatening, or abusive educational environment for the other student.

(b) Violence within a dating relationship.

O.R.C. § 3313.666(A)(2).

CPS, acting through the Board and Ronan, maintains an anti-bullying policy that meets—indeed, exceeds—the statutory requirement.[10] For example, CPS's definition of bullying includes bullying by or against groups of students. The statutory definition is limited to bullying by or against individual students. And CPS's policy covers "graphic" acts of bullying or harassment; the statute does not. Unlike the statute, CPS's policy also states expressly that:

> Bullying, harassment, or intimidation includes, but is not limited to, conduct that is based on a student's actual or perceived race, color, national origin, sex, disability, sexual orientation, gender identity or expression, religion or any other distinguishing characteristics that may be defined by the district or state educational agency. This also includes association with a person or group with one or more of the above mentioned characteristics, whether actual or perceived.

Moreover, CPS's policy directs students and parents to report incidents of bullying to any teacher or administrator, and provides that complaints may be reported anonymously. The policy also directs any school personnel receiving a complaint to "promptly document the prohibited incident or conduct in writing, including all information provided, and report it to the school principal or other designated administrator," who must then investigate and verify the reported incident.[11]

---

[10] A copy of the policy is attached as Exhibit A. Plaintiffs repeatedly refer to the policy in the Complaint because it is central to Count Five. The Court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein[.]" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

[11] CPS's anti-bullying policy includes all of the components required by Ohio's anti-bullying statute, and in fact exceeds them. Thus if, as Plaintiffs allege, CPS's policy is constitutionally inadequate, then so too is Ohio's anti-bullying statute. In any action to which the State is not a

Plaintiffs' only specific objection to CPS's policy is that, according to Plaintiffs, it defines bullying too narrowly. Compl. ¶¶ 106-07. Instead, Plaintiffs assert, Defendants should be liable for "aggressive behavior" exhibited between students. *Id.* ¶ 4. But Plaintiffs do not define "aggressive behavior" or give any indication of what kinds of conduct it covers. Whatever its definition, "aggressive behavior" is a category manufactured for this litigation—one Plaintiffs want to elevate (amorphous as it is) to a matter of constitutional significance. Plaintiffs summarily allege that CPS's anti-bullying policy is inadequate, but do not allege any facts to demonstrate its inadequacy.

Moreover, Plaintiffs do not plead any facts that draw a causal connection between the CPS policy and any violation of Taye's rights. That is, Plaintiffs do not plead any facts showing that the execution of the Board's anti-bullying policy resulted in the alleged violations of Taye's constitutional rights.

### 3. Plaintiffs do not plead a prior pattern of unconstitutional conduct demonstrating that the School Board ignored a history of abuse. That omission is fatal to Plaintiff's failure-to-train claim.

Plaintiffs allege that the Board and Ronan "failed to adequately train and supervise defendants, school officials, and teachers on how to respond to incidents like those experienced by students like Gabriel Taye." Compl. ¶ 185. Plaintiffs elsewhere allege that the Board and Ronan did not train staff or students at Carson "on how to identify, report, or investigate bullying, violence, aggression, intimidation, or harassment." *Id.* ¶ 111.

"A failure-to-train claim, however, requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and

---

party, but the constitutionality of "any statute of that State affecting the public interest is drawn into question," then the Court must certify that fact to the state attorney general and must permit the State of Ohio to intervene to defend the statute. 28 U.S.C. § 2403(b).

was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citations, quotations, and alterations omitted). Plaintiffs do not identify the requisite pattern of unconstitutional conduct.

To be sure, Plaintiffs list a number of incidents of what Plaintiffs label "aggressive behavior" at Carson, Compl. ¶¶ 28-60, but Plaintiffs nowhere identify a constitutional violation. Indeed, the facts alleged in the Complaint fail even to show that Defendants ignored the incidents (though Plaintiffs believe that administrators' responses to some of them were inadequate).

Plaintiffs do not plead any facts showing that Carson administrators committed affirmative acts increasing the danger to any particular Carson student, had a special relationship with students giving rise to a Due Process duty of protection, discriminated against any students at Carson, or "arbitrarily exercised or abused government power" in unconstitutionally conscience-shocking fashion. And so Plaintiffs do not plead a prior pattern of constitutional violations demonstrating that the Board or Ronan knew that training at Carson was inadequate.

### 4. Plaintiffs' failure-to-supervise claim demands that the School Board investigate school administrators' handling of each individual instance of bullying. As such, the claim amounts to a *respondeat superior* theory of liability, which the Supreme Court and Sixth Circuit expressly forbid.

Failure-to-supervise liability is exceedingly rare. The Sixth Circuit suggests that such a claim exists more in theory than in practice. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). To prevail, Plaintiffs must prove that the failure to supervise was the moving force behind the constitutional violations, and that the Board was deliberately indifferent to the "known or obvious risk" that a constitutional violation would occur. *Pecsi v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) and *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiffs allege that the Board and Ronan did not adequately supervise Jackson or McKenzie. Compl. ¶ 185. But Plaintiffs do not plead any facts to support that claim. The Complaint presents only the ipse dixit that because Taye was bullied, Jackson and McKenzie were not adequately supervised. At most, Plaintiffs allege that the Board and Ronan did not themselves investigate every incident of bullying at Carson. *Id.* ¶ 109. Plaintiffs offer no reason—certainly not one of constitutional import—why a school board is responsible for personally investigating every incident of student misbehavior when those duties have been delegated to school principals. At any rate, none of the constitutional violations alleged in the Complaint are "known or obvious risks" of failing to constantly look over a principal's shoulder.

## II. Neither Jackson nor McKenzie is responsible for Taye's death. Accordingly, Plaintiffs' state law claims fail as a matter of law.

Plaintiffs assert several state-law tort claims against Jackson and McKenzie in their individual capacities: wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, loss of consortium, failure to report child abuse, and spoliation. Jackson and McKenzie are immune from suit as to some of Plaintiffs' claims. In any event, neither Jackson nor McKenzie is responsible for Taye's death as a matter of law. Plaintiffs' tort claims therefore should be dismissed.

## A. Plaintiffs do not plead any facts from which a jury could find the requisite mental state to overcome political subdivision immunity.

The Ohio Political Subdivision Immunity Act grants immunity from suit to any government employee sued in his individual capacity unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a
section of the Revised Code.

O.R.C. § 2744.03(A)(6).

"Malicious purpose" is "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Rural Bldg. of Cincinnati, LLC v. Mercer*, 2017-Ohio-7226, ¶ 21 (1st Dist. App.). Plaintiffs do not plead any facts showing that Jackson or McKenzie *intended* for Taye to come to harm. Indeed, school officials treated Taye and called Ms. Reynolds to pick Taye up from school.

"Bad faith" is a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.* Plaintiffs again plead no facts showing that Jackson or McKenzie breached a known duty to Taye with ulterior motive or ill will—certainly not in any way that led to his death.

"Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012). Plaintiffs do not plead that suicide is greatly probable—as opposed to merely possible—after bullying or loss of consciousness. Moreover, Plaintiffs do not plead that Jackson or McKenzie failed to exercise *any* care. Plaintiffs acknowledge that Jackson and McKenzie at least attempted to make contact with Ms. Reynolds when school administrators were aware that Taye was injured at school, regardless of the cause, and either left her a voicemail or spoke to her. Compl. ¶¶ 67-74. Plaintiffs also acknowledge that after the January 9, 2017, bullying incident, McKenzie intervened and suspended the students who allegedly punched Taye and caused his bloody lip. *Id.* ¶¶ 71-73. Moreover, after the January 24 bathroom incident, McKenzie checked on Taye once he was alerted that Taye was lying on

the floor in the bathroom, and then alerted the school nurse. *Id.* ¶¶ 78-79. The nurse evaluated Taye and called Ms. Reynolds. *Id.* ¶¶ 80-81. Plaintiffs may disagree with the decisions that Jackson, McKenzie, or Nurse McLaughlin made, and may believe that Defendants' care was inadequate, but that does not amount to no care at all, and therefore cannot amount to "wanton misconduct." *Vidovic v. Hoynes*, 29 N.E.3d 338, 349 (11th Dist. App. 2015), *appeal not allowed*, 144 Ohio St. 3d 1428 (2015) ("Courts have not required schools to take perfect action to remedy bullying issues to avoid claims related to gross negligence/R.C. 2744.03(A)(6)(b), but that they take some precautions or steps to recognize and address the issue."). *See also Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 376 (1998) (finding no wanton misconduct where officials in a soccer club "knew about . . . safety problems but failed to act").

"Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, 983 N.E.2d at 273. Plaintiffs do not plead any facts showing that Jackson or McKenzie consciously disregarded or showed indifference to any harm Taye faced. While, again, Plaintiffs may believe that Jackson and McKenzie could or should have handled the situation better, that does not amount to disregard or indifference to Taye. *See Vidovic*, 29 N.E.3d at 348 (holding that a school administrator is not reckless if she "did exercise some care, did not consciously participate in wrongdoing, and did not entirely disregard the fact that there was some risk to [a student]").

Plaintiffs do not plead any facts from which a jury could find that Jackson or McKenzie acted with malicious purpose, bad faith, wantonness, or recklessness. Jackson and McKenzie are therefore immune from suit as to Plaintiffs' state law tort claims.

**B.        Plaintiffs fail to state a claim for wrongful death. (Count Six.)**

To prevail on a wrongful death claim, Plaintiffs must prove (1) the existence of a duty owed to the plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation linking the breach of the duty to the decedent's death. *CBC Engineers & Assocs. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 888 (S.D. Ohio 2012). Plaintiffs fail to plead facts to support any of the elements. Additionally, Ohio law provides that suicide is an intervening act that breaks any causal link between any alleged wrongful act of the defendants and Taye's death. *Estate of Smith v. W. Brown Local Sch. Dist.*, 26 N.E.3d 890, 899 (12th Dist. App. 2015), *appeal not allowed sub nom. Estate of Smith v. Burrows*, 36 N.E.3d 189 (Ohio 2015).

This case is far different from any bullying-induced suicide case that counsel has uncovered. The typical case involves ongoing, pervasive harassment targeted at a particular student. The bullies are typically a defined group of repeat players. And school administrators are found liable only after they are aware of the ongoing bullying and choose to ignore it completely or actively encourage it. *See, e.g.*, *Galloway*, 2012 WL 5268946, at *5-7; *Vidovic*, 29 N.E.3d at 341-46; *Estate of Smith*, 26 N.E.3d at 892-95; *Mohat v. Horvath*, 2013-Ohio-4290 at *1-3. This case, however, shares none of those facts. Plaintiffs allege a handful of incidents of conflict with other students; nothing that was ongoing, pervasive, or targeted at Taye. Plaintiffs do not allege that any student picked on Taye more than once. And the Complaint shows that administrators at Carson did not ignore those incidents of conflict when they occurred. Indeed, McKenzie intervened on Taye's behalf and suspended students who punched Taye.

Plaintiffs instead fill their Complaint with allegations about other students at Carson who were involved in other conflicts and, in a few cases, bullied. But Plaintiffs do not draw any connection—much less a causal one—between the incidents involving other students and anything that happened to Taye. There is simply no connection between the allegation that

26

"Student #7 made jokes about a student" or "Student #6 repeatedly threatened a student verbally and physically," Compl. ¶¶ 37, 41, and Taye, much less the January 24 bathroom incident or Taye's death at home.

### 1. Jackson and McKenzie did not breach any duty to Taye.

Under Ohio law, school officials owe students the common law duty to "exercise that care necessary to avoid reasonably foreseeable injuries to their students." *Estate of Smith*, 26 N.E.3d at 899. Taye's death was reasonably foreseeable only if "a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that" Taye's injuries (i.e., his suicide) would be the "probable result of the performance or nonperformance of an act." *Id.* (quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989)).

Plaintiffs' Complaint is full of loose accusations that Defendants managed Carson poorly. But nowhere do Plaintiffs identify any "performance or nonperformance of an act" that any of the Defendants should have anticipated would result in Taye's death. For example, Plaintiffs identify a number of alleged bullying incidents at Carson. Compl. ¶¶ 27-60. But none of the incidents involved Taye, and so it would not be "reasonably foreseeable" that he would commit suicide at home because of them. And Plaintiffs allege that McKenzie "did not get on the floor to check Gabe, check for breathing, to talk to him, or to assess him" after the January 24 bathroom incident, and that Nurse McLaughlin did not tell Ms. Reynolds that Taye lost consciousness. *Id.* ¶¶ 78, 81. But Plaintiffs nowhere plead that suicide was a "probable result" of either McKenzie or McLaughlin's actions.

This wrongful death claim asks the question, "What did McKenzie or Jackson do, or fail to do, that they should have known would end in Taye's death?" Plaintiffs' Complaint does not (and cannot) answer that question; therefore, the claim should be dismissed.

**2. Taye's suicide is an intervening act that breaks any causal connection between any alleged wrongful act of the Jackson or McKenzie and his death, and his death was not reasonably foreseeable.**

Taye's suicide is an intervening act that breaks the causal chain between wrongful act and death. Jackson and McKenzie can be held liable only if his suicide was reasonably foreseeable. *Fischer v. Morales*, 526 N.E.2d 1098, 1101 (Ohio App. 10th Dist. 1987). Plaintiffs plead that bullying or a loss of consciousness *can* lead to suicide, but not that suicide is *likely* to result from either (because they cannot). School officials would have no reason to think it *likely* that Taye would kill himself because he'd been pulled to the floor or had his water bottle taken. *See* Compl. ¶¶ 75-76, 88. Plaintiffs do not anywhere allege that Taye ever expressed any suicidal ideation to anyone or gave any indication that he would kill himself after he went home from school on January 26. *See Estate of Smith*, 26 N.E.3d at 900.

**3. Plaintiffs cannot demonstrate causation.**

Plaintiffs speculate about various theories of causation. In some places, Plaintiffs suggest that Taye was effectively bullied into suicide. Compl. ¶¶ 94-103, 122. The implication is that school officials should have intervened to stop the bullying, or that they should have informed Taye's mother so that she could put him in a different school. In other places, Plaintiffs suggest that Taye committed suicide due to post-concussion symptoms. *Id.* ¶¶ 85, 132, 152-159. The implication is that school officials should have told Taye's mother that he lost consciousness during the January 24, 2017, incident. But Plaintiffs do not point to any acts or omissions by Jackson or McKenzie that caused Taye's death.

**C.     Plaintiffs fail to state a claim for an intentional infliction of emotional distress ("IIED"). (Count Seven.)**

Plaintiffs allege that Jackson and McKenzie intentionally inflicted emotional distress on all of the Plaintiffs. To prevail on that claim, Plaintiffs must prove that Jackson and McKenzie

(1) intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress to Plaintiffs; (2) their conduct was "so extreme and outrageous as to go beyond all possible bounds of decency  and was such that it can be considered as utterly intolerable in a civilized community"; (3) their actions were the proximate cause of Plaintiffs' psychic injuries; and (4) the mental anguish suffered by Plaintiffs is "serious and of a nature that no reasonable man could be expected to endure it." *Ondo v. City of Cleveland*, 795 F.3d 597, 611-12 (6th Cir. 2015). Plaintiffs' claim fails on several elements.

### 1. Neither Jackson nor McKenzie intended to cause or knew that their conduct would cause severe emotional distress to Plaintiffs.

Plaintiffs plead no facts showing that Jackson or McKenzie *intended* to cause emotional distress of any kind to Taye or his parents. Nor do Plaintiffs plead any facts demonstrating that Jackson or McKenzie knew or should have known that their actions would cause severe emotional distress to Taye or his parents. Plaintiffs' Complaint reveals that school administrators took steps to take care of Taye. Jackson and McKenzie intervened in prior altercations involving Taye and other students, called Ms. Reynolds when they were aware that Taye was injured or involved in an altercation, and made efforts to check on his health. Plaintiffs effectively assert that Jeff McKenzie walked into a bathroom, checked on Taye and summoned the nurse *so that* Taye and his mother would suffer intolerable emotional distress. While Plaintiffs are entitled to have the Court draw all reasonable inferences in their favor, that simply is not one. The Complaint may plead that Jackson and McKenzie's efforts were imperfect, but it does not support a claim that they acted maliciously.

### 2. Jackson and McKenzie's conduct was not "extreme and outrageous."

Plaintiffs do not identify any of Jackson or McKenzie's conduct that was "extreme," "outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community."

**McKenzie's alleged conduct:** Plaintiffs allege that he talked to Ms. Reynolds about an incident in January 2017 where two boys (identified in the Complaint as "C.J." and "P.B.") punched Taye. He promised Ms. Reynolds that he would review surveillance tapes of the incident and meet with the students who punched Taye. McKenzie followed through on that promise the very next day, meeting with the two students and removing them from school. Two days later, McKenzie met with Taye, Ms. Reynolds, C.J., P.B., and P.B.'s father. At that meeting, McKenzie warned C.J. and P.B. that they would face additional discipline for any additional misbehavior.

McKenzie is next mentioned in connection with the January 24 bathroom incident. Compl. ¶¶ 75, 78-79. Plaintiffs allege that McKenzie did not provide adult supervision in the bathrooms. That decision was hardly extreme or intolerable. It is impossible for the principal or assistant principal at a school as large as Carson to be in every location of the school at all times.

Plaintiffs next allege that after Taye was attacked in the bathroom, McKenzie responded. Plaintiffs fault McKenzie for not "get[ting] on the floor to check Gabe, check for breathing, to talk to him, or to assess him." But that decision is hardly one that is "utterly intolerable in a civilized community"; McKenzie could check Taye's breathing and talk to him while standing up just as easily as he could from the floor.

Finally, Plaintiffs fault McKenzie for failing to report the bathroom incident—children hitting another child—as child abuse, as Plaintiffs believe was required by O.R.C. § 2151.031. As explained below, McKenzie was not required to report the bathroom incident as child abuse.

But even if he were, the failure to do so would not be extreme or outrageous. The statue requires reporting to law enforcement or child protective services; Plaintiffs therefore contend that it is "utterly intolerable in a civilized community" to forgo calling the police on third-graders. The law does not support this new standard of conduct.

**Jackson's alleged conduct:** Jackson's conduct, as alleged in the Complaint, consists of the following: Jackson told a student's parents, at an unidentified time, that Carson did not have a bullying problem. Compl. ¶ 56. On another occasion, Jackson informed a parent that her child wrote in his journal at school that he wanted to die. *Id.* ¶ 58. Plaintiffs fault her for not doing so sooner, despite the fact that school staff had first spoken to the student to ascertain whether he was a risk of danger to himself. *Id.* But these episodes are not connected in any way whatsoever to Plaintiffs' emotional distress.

Plaintiffs allege that Jackson failed to supervise the bathroom. Compl. ¶ 75. Plaintiffs would put Jackson in the impossible position of putting security cameras in bathrooms (which Plaintiffs claim would increase the risk of bullying) or undertake the expense of stationing adults in every corner of the school, including bathrooms. Deciding not to use school resources in those ways is hardly "beyond all possible bounds of decency."

Plaintiffs allege that Jackson arrived in the bathroom after McKenzie, to check on Taye after the January 24 bathroom incident. Compl. ¶ 78. Plaintiffs also allege that, like McKenzie, Jackson failed to report child abuse. Her conduct there was not outrageous for the same reasons McKenzie's was not.

Plaintiffs next allege that Jackson "cover[ed]-up" the bathroom incident, which is merely Plaintiffs' gloss on Jackson not telling Ms. Reynolds that other students may have been involved with the bathroom incident. Compl. ¶¶ 137-38. Plaintiffs further allege that Jackson did not

document the bathroom attack (in the two days between the incident and his death), did not report it to Taye's parents or the public, and did not protect Taye from further bullying. *Id.* ¶¶ 144-46. But courts across the country have consistently held that passive conduct like that alleged by Plaintiffs here will not support a claim for intentional infliction of emotional distress. *Morgan v. Town of Lexington*, 138 F. Supp. 3d 82, 94 (D. Mass. 2015), *aff'd on other grounds sub nom. Morgan v. Town of Lexington, MA*, 823 F.3d 737 (1st Cir. 2016) (failure to act in preventing or remedying bullying is insufficient to state an IIED claim); *Braden v. Mountain Home Sch. Dist.*, 903 F. Supp. 2d 729, 739 (W.D. Ark. 2012) (failure to respond to reports that a disabled student was being sexually abused and assaulted by another student is insufficient to state an IIED claim); *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 957 (S.D. Ind. 2007) (failure to prevent bullying is not extreme or outrageous conduct).

### 3. Jackson and McKenzie's conduct was not the proximate cause of Plaintiffs' injuries.

Plaintiffs do not plead any facts that demonstrate that Jackson or McKenzie caused Taye's emotional distress. Plaintiffs contend that Taye was bullied, and imply that bullying caused his suicide. Thus, Plaintiffs plead, at most, that Jackson and McKenzie failed to prevent Taye's distress, not that they caused it.

Reviewing the conduct described above confirms that neither Jackson nor McKenzie caused Taye's emotional distress or suicide. McKenzie suspended the students who bullied Taye in early January, and attended to Taye after he was injured in the bathroom on January 24. Jackson also attended to Taye after the January 24 incident. Plaintiffs plead no facts, and offer no explanation, demonstrating that McKenzie and Jackson's efforts to care for their student drove him to suicide.

Ms. Reynolds' and Mr. Taye's IIED claims are derivative of Taye's; their distress was caused by Taye's suicide. Because Defendants are not responsible for Taye's distress and suicide, they cannot be responsible for his parents' distress either.

**D.    Plaintiffs fail to state a claim for a negligent infliction of emotional distress. (Count Eight.)**

Plaintiffs allege that Jackson and McKenzie "negligently and recklessly inflicted emotional distress on Cornelia Reynolds, a bystander to her son's suicide." Compl. ¶ 193. Plaintiffs also allege that Jackson and McKenzie negligently and recklessly inflicted emotional distress on Ms. Reynolds and Mr. Taye, "each bystanders to watching the recording" of the January 24 bathroom incident. *Id.* ¶ 194.

To prevail on a negligent infliction of emotional distress ("NIED") claim, Plaintiffs must prove (1) that they were bystanders, (2) that they "reasonably appreciated the terror that took place, whether or not the victim suffered actual physical harm," and (3) that they "suffered serious emotional distress as a result of this cognizance or fear of peril." *Walker v. Firelands Cmty. Hosp.*, 170 Ohio App. 3d 785, 798 (6th Dist. App. 2007).

### 1. Defendants are not liable for Taye's death, and therefore cannot be liable for NIED in connection with his death.

Ms. Reynolds' NIED claim based on Taye's suicide is derivative of her wrongful death claim. Defendants are not liable for NIED because they are not responsible for the underlying wrongful death tort. *Miranda v. Meijer Stores Ltd. Partnership*, 2009-Ohio-6695, ¶ 14 (2d Dist. App.); *Odom v. Davis*, 2003-Ohio-3316, ¶ 30 (4th Dist. App. 2003); *Farago v. Panini's Int'l, Inc.*, 1998 WL 723174, at *6 (Ohio Ct. App. Oct. 15, 1998); *Carlton v. Davisson*, 104 Ohio App. 3d 636, 653 (6th Dist. App. 1995).

**2. Plaintiffs were not bystanders to the January 24, 2017, bathroom incident, and therefore cannot hold Jackson or McKenzie liable for NIED in connection with viewing the video.**[12]

Ohio courts limit recovery for NIED to, as relevant here, "such instances as where one was a bystander to an accident." *Dalton v. Fort Hamilton-Hughes Mem'l Hosp.*, 1998 WL 191418 at *2 (Ohio 12th Dist. App. 1998). Ohio therefore does not recognize a claim for NIED "where the distress is caused by the plaintiff's fear of a non-existent physical threat." *Id.* (citing *Heiner v. Moretuzzo*, 73 Ohio St.3d 80 (1995) (syllabus).

*Dalton* is particularly instructive. There, the plaintiff's husband underwent exploratory surgery. As a result of the surgery, he was diagnosed with malignant cancer, from which he died less than a month later. The surgeon directed a nurse to record the surgery. Another nurse then erroneously gave the recording to the plaintiff (the plaintiff did not ask for the tape). The tape showed the gruesome details of the surgery, and the plaintiff believed that her husband was going to die. The plaintiff sued the hospital for NIED for giving her the recording, alleging that she suffered severe and debilitating distress and "exacerbation of her grief and depressing concerning her husband's illness and subsequent death." *Id.* at *1. The court reasoned that while the plaintiff's emotional injuries were real and debilitating, they did not result from being a bystander to an accident or fear of injury to herself, and therefore could not support a NIED claim.

Ms. Reynolds' and Mr. Taye's distress did not stem from being bystanders to an accident. Rather, like the *Dalton* plaintiff, their video-related distress resulted from viewing the tape after

---

[12] Plaintiffs' claim here is particularly strange, given that Plaintiffs elsewhere fault Defendants for *not* showing them recordings of other incidents involving Taye. Compl. ¶¶ 70, 73, 74.

the underlying injuries had already occurred. They therefore do not have an actionable claim for NIED as a result of viewing the tape.

**E.     Plaintiffs' loss of consortium claim fails, as it is derivative of Plaintiffs' other tort claims. (Count Nine.)**

A parent's claim for loss of consortium of a minor child is a derivative of the defendant causing a legally cognizable injury to the child. *Bock v. Hamilton Cty. Bd. of Park Comm'rs.*, 726 N.E.2d 509, 510 (Ohio App. 1st Dist. 1999). As explained above, Plaintiffs have no cognizable claims against Jackson or McKenzie with respect to Taye, and therefore cannot prevail on a loss of consortium claim.

**F.     Plaintiffs fail to state a claim for failure to report child abuse. Ohio's child abuse reporting statute has never been applied to peer-to-peer harassment, and should not be in this case. (Count Ten.)**

Further demonstrating the weakness of their claims, Plaintiffs make the novel allegation that when Taye was injured by another child, Jackson and McKenzie had an obligation to report child abuse, pursuant to O.R.C. § 2151.421. Plaintiffs' claim would convert peer-to-peer bullying (or Plaintiffs' expanded category "aggressive behavior") into child abuse. Counsel has found no case that supports the idea that an altercation between elementary school students is child abuse. It would be a vast expansion of the child abuse statute.

As relevant here, Ohio law requires school teachers and administrators to report suspected child abuse. Specifically, any teacher or administrator who "knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect" that a child "has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child" must immediately report that knowledge or suspicion to either the public children's services agency or a law enforcement officer (who would then forward the report to the relevant

children's services agency). O.R.C. § 2151.421(A). Finding Taye on the bathroom floor at school would not trigger reason to believe that he was suffering child abuse or neglect.

Plaintiffs' approach would obligate Jackson and McKenzie (indeed, all school personnel in Ohio) to call the police or child services on third-graders whenever one is injured. That is surely not what the Ohio legislature intended, not least because child services must investigate every report. O.R.C. § 2151.421(G)(1). Plaintiffs give no indication of what child services could or would have done if they had been dispatched to the Carson Elementary bathroom. Plaintiffs likewise do not identify any damages that resulted from calling Taye's mother rather than the police or child services. Plaintiffs' claim for failure to report child abuse should be dismissed.

**G.      Plaintiffs fail to state a claim for spoliation. (Count Eleven.)**

Plaintiffs allege that Defendants spoiled evidence, namely surveillance tapes from the cameras at Carson that may have shown incidents of bullying, and evidence of the cause of Taye's death (in the form of withholding from Plaintiffs the fact that Taye was unconscious after the January 24 bathroom incident). To prevail on a claim for spoliation, Plaintiffs must show "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Plaintiffs' spoliation claim is derivative of their other tort claims. *See Bae v. Dragoo & Assoc., Inc.*, 156 Ohio App. 3d 103, 113 (10th Dist. App. 2004). Defendants did not commit any torts against Plaintiffs. Plaintiffs therefore cannot show any damages resulting from the alleged spoliation.

Even if the tapes showed other incidents of bullying, or a different examination of Taye would have revealed that the loss of consciousness caused his suicide—purely speculative allegations—that would not change the results of this case, namely that Plaintiffs fail to state any claims against Defendants. *Heimberger v. Zeal Hotel Group, Ltd.*, 42 N.E.3d 323, 334 (Ohio App. 10th Dist.) ("[J]udgment against a spoliation claimant is appropriate where the evidence alleged to be willfully destroyed, altered, or concealed would not have changed the result of an unsuccessful underlying case, and no other damages are alleged").

## CONCLUSION

Gabriel Taye's death is tragic, and has undoubtedly brought his parents immeasurable grief. The question in this case is whether CPS and its administrators are responsible for Taye's death and his parents' grief. A careful examination of the law and the facts alleged in the Complaint confirms that they are not. Accordingly, this action should be dismissed.

Respectfully Submitted,

R. Gary Winters (0018680)
Ian R. Smith (0068195)
McCaslin Imbus & McCaslin
Cincinnati, Ohio 45202
Phone: (513) 421-4646
Fax: (513) 421-7929
Email: rgwinters@mimlaw.com
Email: irsmith@mimlaw.com

OF COUNSEL:

Daniel J. Hoying (0079689)
Ashley Addo (0091245)
Cincinnati Public Schools
Cincinnati, Ohio 45219
Phone: (513) 363-0114
Fax: (513) 363-0115
Email: hoyingd@cpsboe.k12.oh.us
Email: addoash@cpsboe.k12.oh.us

/s/Aaron M. Herzig
Aaron M. Herzig (0079371)
Taft Stettinius & Hollister LLP
Cincinnati, Ohio 45202
Phone: (513) 357-8768
Fax: (513) 381-0205
E-mail: aherzig@taftlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically on October 6, 2017 using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

/s/Aaron M. Herzig

# Exhibit A

# Bullying And Other Forms Of Aggressive Behavior

## SUMMARY

**The following policy shall be in accordance with applicable State and federal laws.**

Bullying, harassment, and intimidation, of any student, by any means, by any student or school personnel, on school property, at a school-sponsored event, or on school-provided transportation, is strictly prohibited. Disciplinary action, including the possibility for suspension or expulsion, will be taken against any student found responsible for harassment, intimidation or bullying.

"Bullying, harassment, or intimidation" means either: violence within a dating relationship; or any intentionally written, electronic act (an act committed through the use of cellular telephone, computer, pager, personal communication device, or other electronic communication device), verbal, graphic, or physical act that a student or group of students exhibit more than once, toward another particular student(s) and the behavior both:

   a. Causes mental or physical harm to the other student(s); and,
   b. Is sufficiently severe, persistent, or pervasive that it creates an intimidating, threatening, or abusive educational environment for the other student(s).

"Bullying, harassment, or intimidation" includes, but is not limited to, conduct that is based on a student's actual or perceived race, color, national origin, sex, disability, sexual orientation, gender identity or expression, religion or any other distinguishing characteristics that may be defined by the district or state educational agency. This also includes association with a person or group with one or more of the above mentioned characteristics, whether actual or perceived.

Students and parents/guardians should report prohibited incidents and conduct of bullying, intimidation, and harassment to any teacher, school administrator, or staff member; any incident may be reported anonymously.  Any school personnel receiving a complaint shall promptly document the prohibited incident or conduct in writing, including all information provided, and report it to the school principal or other designated administrator. All reported incidents must be investigated and verified promptly under the leadership of the school principal or other designated administrator. Steps will be taken to protect a victim or other person from new or additional harassment, intimidation, or bullying, and from retaliation following a report. The custodial parent or guardian of any student involved in a prohibited incident shall be notified and, to the extent permitted by FERPA and section 3319.321 of the Revised Code, have access to any written reports pertaining to the prohibited incident.

Students are prohibited from deliberately making false reports of harassment, intimidation, or bullying; disciplinary action will be taken for any student responsible for deliberately making a false report of that nature.

The President of the Board shall receive a written summary of all reported incidents semiannually, and this summary will be posted on the District's website to the extent permitted by FERPA.

Any District employee, student, or volunteer shall be individually immune from liability in a civil action for damages arising from reporting an incident if the report was made in good faith and in compliance with the District's procedure.

**SUICIDE PREVENTION**

**Students face a wide range of issues and concerns that can have a substantial impact on their ability to learn and on their engagement with school. Perhaps the most severe issue faced by students is that of depression accompanied by suicidal ideation. The school district takes these mental health issues seriously. To further this objective, the Superintendent shall develop and implement administrative guidelines whereby members of the professional staff understand how to use an intervention procedure.**

ORC.3313.666

Approved: 04-09-12
10-10-11

Revised:  11-18-13
10-07-13
12-10-12
3-19-12
9-26-11
3-14-11