| | | |
|---|---|---|
| **KAREN MEYERS AS** | : | **Case No. 1:17-cv-521** |
| **ADMINISTRATRIX OF THE ESTATE** | : | |
| **OF GABRIEL TAYE, et al.,** | : | **Judge: Timothy S. Black** |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **CINCINNATI BOARD OF** | : | |
| **EDUCATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**ORAL ARGUMENT REQUESTED**

---

# Table of Contents

I.     INTRODUCTION ......................................................................................... 1

II.    FACTS ........................................................................................................... 2

III.   ARGUMENT ................................................................................................. 3

   A.  Iqbal Standard for Reviewing Motions to Dismiss ........................................ 3

   B.  Plaintiffs' Complaint Sufficiently Alleges a Violation of the Due Process Clause of the Constitution for Defendants' Failure to Protect Gabe. ................................... 5

      1.    Plaintiffs' Complaint sufficiently pleads a state-created danger claim against Defendants. ....................................................................................... 5

      a.   Plaintiffs' complaint alleges that defendants took affirmative actions that created and increased the risk that Gabe would be exposed to violence at Carson. .................... 6

      b.   The Complaint sufficiently pleads facts that show Gabriel Taye was in special danger at Carson. .................................................................................. 12

      c.   The Complaint alleges defendants actions were deliberately indifferent to the danger they created ................................................................................ 13

      2.   The Complaint states sufficient facts to establish that Defendants had a special relationship with Plaintiffs and thus Defendants had a constitutional duty to protect Gabriel Taye. ................................................................................... 15

      a.   The Defendants' actions prevented Gabriel Taye's parents from protecting him……........................................................................................... 15

      b.   The Defendants' actions encouraged the aggressive behavior by private parties toward Gabriel Taye. ........................................................................... 19

      3.   Defendants' actions violate the Due Process Clause because their actions shock the conscience. ...................................................................................... 21

   C.  Plaintiffs have Properly Alleged a Violation of the Equal Protection Clause of the Constitution. ...................................................................................... 25

   D.  Plaintiffs have Properly Alleged Municipal Liability for Defendants Cincinnati Board of Education and Ronan. ...................................................................... 26

      1.   Defendants Cincinnati Board of Education and Ronan are liable for the district's unconstitutional policy and practice permitting and encouraging bullying and aggression............................................................................................. 26

2. The Complaint States a Claim against Defendants Cincinnati Board of Education and Ronan for their Failure to Adequately Train and Supervise Defendants and school officials on how to respond to the aggressive behavior that flourished at Carson. ................................................................................................................... 29

3. The Complaint States a Claim against Defendants Cincinnati Board of Education and Ronan for their Ratification of the Unconstitutional Acts of Defendants Jackson and McKenzie. ................................................................................................. 32

E. Plaintiffs have Properly Alleged State Tort Claims Against Defendants Jackson and McKenzie. ............................................................................................................................ 33

1. Plaintiffs' Complaint raises sufficient allegations to establish that Defendants Jackson and McKenzie were reckless and therefore they are not immune from liability on the state tort claims. ................................................................................................... 33

2. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Wrongful Death. ...................................................................................................... 35

a. Defendants Jackson and McKenzie breached their duty to protect Gabriel Taye……………………………………………………………………………..…..36

b. Suicide is not an intervening cause to prevent Defendants from being liable for Gabriel Taye's death .......................................................................................... 37

c. Plaintiff's Complaint states sufficient facts to support causation ....................... 38

3. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Intentional Infliction of Emotional Distress. ................................................................ 39

4. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Negligent Infliction of Emotional Distress. ................................................................... 42

5. The Parents' loss of consortium claim is properly stated in the Complaint. ....... 44

F. Plaintiffs have Properly Alleged a Violation of O.R.C. §2151.421(A). ....................... 45

G. Plaintiffs have Properly Alleged a Claim of Spoliation of Evidence. ........................... 46

IV. CONCLUSION .................................................................................................................. 48

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................................... 48

CERTIFICATE OF SERVICE .............................................................................................. 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Lawrence Cnty. Bd. of Dev. Disabilities*,
No. 1:10cv697, 2012 WL 831769 (S.D. Ohio Mar. 12, 2012) ...............................................35

*Anderson v. Massillon*,
134 Ohio St.3d 380 (2012) ....................................................................................................34

*Arendale v. City of Memphis*,
519 F.3d 587 (6th Cir. 2008) ................................................................................................27

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ........................................................................................................3, 4

*Bae v. Dragoo & Assoc., Inc.*,
156 Ohio App. 3d. 103, 2004-Ohio-544, 804 N.E.2d 1007 (10th Dist. 2004) ......................47

*Barhouma v. Athenian Assisted Living. Ltd.*,
No. 1:14-cv-2214, 2015 WL 5437786 (N.D. Ohio Sept. 15, 2015) ......................................42

*State ex rel. Beacon Journal Publishing Co. v. Akron*,
104 Ohio St.3d 399 (2004) ....................................................................................................45

*Bear v. Delaware Cty., Ohio*,
S.D. Ohio No. 2:14-CV-0043, 2016 WL 234848 (January 20, 2016)....................................10

*Bell v. Ohio State Univ.*,
351 F.3d 240, (6th Cir. 2003) ................................................................................................22

*Bell-Atlantic v. Twombly*,
550 U.S. 544, (2007)..........................................................................................................3, 39

*Bowen v. Kil-Kare, Inc.*,
63 Ohio St.3d 84, 585 N.E.2d 384 (1992) .............................................................................44

*Bowers v. City of Flint*,
325 F.3d 758, (6th Cir. 2003) ................................................................................................22

*Bowers v. DeVito*,
686 F.2d 616, (7th Cir. 1982) ..................................................................................................7

*Buchanan v. City of Bolivar*,
   99 F.3d 1352 (6th Cir. 1996) ...................................................................26

*Bukowski v. City of Akron*,
   326 F.3d 702 (6th Cir 2003) ..............................................................14, 20

*Cartwright v. City of Marine City*,
   336 F.3d 487 (6th Cir. 2003) ...................................................................10

*Cartwright v. City of Marine City*,
   336 F.3d 487 (6th Cir. 2003) ...........................................................5, 6, 10

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985)..................................................................................25

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)..................................................................................32

*Cline v. Stein*,
   9th Dist. Wayne No. 13CA0052, 2015-Ohio-2979 ...................................43

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998)..................................................................................22

*Conley v. Gibson*,
   355 U.S. 41 (1957)......................................................................................3

*Stiles ex rel. D.S. v. Grainger County, Tenn.*,
   819 F.3d 834 (6th Cir. 2016) ........................................................11, 17, 18

*Dalton v. Fort Hamilton-Hughes Mem'l Hosp.*,
   12th Dist. Butler No. CA97-09-174, 1998 WL 191418 (April 20, 1998) .......................43, 44

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989)............................................................................ *passim*

*Doe v. Big Walnut Local School Dist. Bd. of Educ.*,
   837 F.Supp.2d 742 (S.D. Ohio 2011) .......................................................17

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*,
   103 F.3d 495 (6th Cir. 1996) ..............................................................17, 19

*Doe v. New York City Department of Social Services*,
   649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864 (1983)...............19

*Doe v. Roman*,
   5th Dist. Tuscarawas No. 2001-AP-05-0044, 2002-Ohio-6671, 2002 WL
   31732468...................................................................................................40

*Doe v. Trumbull County Children Services Board*,
  2013 WL 6903777 (N.D. Ohio December 31, 2013) ............................................19

*Dwares v. City of New York*,
  985 F.2d 94 (2d Cir. 1993)......................................................................11, 20

*Enright v. Springfield School District*,
  ED PA 04-cv-1653, 2007 WL 4570970 (E.D. PA December 27, 2007)...................7

*Erickson v. Pardus*,
  551 U.S. 89 (2007)..............................................................................................3, 4

*Ewolski v. City of Brunswick*,
  287 F.3d 492 (6th Cir. 2002) ..............................................................................5

*Fabrey v. McDonald Police Dep't.*,
  70 Ohio St.3d 351, 639 N.E.2d 31, 35 (Ohio 1994) ................................................34

*Farmer v. Brennan*,
  511 U.S. 825 (1994).............................................................................................14

*Fischer v. Morales*,
  38 Ohio App.3d 110, 526 N.E.2d 1096 (10th Dist. 1987)....................................37

*Fowler v. Williams Cty. Commrs.*,
  113 Ohio App.3d 760, 682 N.E.2d 20 (6th Dist. 1996)........................................34

*Gallimore v. Children's Hosp. Med. Ctr.*,
  67 Ohio St.3d 244, 617 N.E.2d 1052 (1993) ......................................................44

*Galloway v. Chesapeake Union Exempted Village Schools Bd. of Educ.*,
  2012 WL 5268946 (S.D. Ohio October 23, 2012)........................................5, 34, 35

*Galloway v. Chesapeake Union Exempted Village Schools Bd. of Educ.*,
  No. 1:11-cv-850, 2012 WL 526894 6 (S.D. Ohio October 23, 2012) ....................34

*Howard v. City of Girard, Ohio*,
  346 F.App'x 49 (6th Cir. 2009) ............................................................................3

*Hunt v. Sycamore Community School Dist. Bd. of Educ.*,
  542 F.3d 529, 536 (6th Cir. 2008) .................................................................23, 24

*Irving v. Austin*,
  138 Ohio App.3d 552, 556, 741 N.E.2d 931 (6th Dist. 2000)................................34

*Jones v. Reynolds*,
  438 F.3d 685 (6th Cir. 2006) ........................................................................19, 20

*Kallstrom v. City of Columbus*,
136 F.3d 1055, 1066 (6th Cir. 1998) ...............................................................6, 7

*Koulta v. Merciea*,
447 F.3d 442 (6th Cir. 2007) ..............................................................................20

*Koulta v. Merciez*,
477 F.3d 442 (6th Cir. 2007) ..............................................................................10

*Leach v. Shelby County Sheriff*,
891 F.2d 1241 (6th Cir. 1989) .......................................................................30, 33

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
507 U.S. ...............................................................................................................4

*Littleton v. Good Samaritan Hosp. & Heath Ctr.*,
39 Ohio St.3d 86, 529 N.E.2d 449 (1988) ..........................................................35

*Marchese v. Lucas*,
758 F.2d 181 (6th Cir. 1985) ..............................................................................33

*McCullum v. Tepe*,
No. 1:08-CV-387, 2011 WL 13186318 (S.D. Ohio March 28, 2011) ..................34

*Meador v. Cabinet for Human Resources*,
902 F.2d 474 (6th Cir.), *cert. denied*, 498 U.S. 867 (1990)................................18

*Menifee v. Ohio Welding Prods., Inc.*,
15 Ohio St.3d 75, 472 N.E.2d 707 (1984) ..........................................................35

*Mohat v. Horvath*,
11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, 2013 WL 5450296 ..............36

*Monell v. Dept. of Social Services of City of New York*,
436 U.S. 658 (1978)............................................................................................26

*Moore v. Detroit Sch. Reform Bd.*,
293 F.3d 352, 368 (6th Cir. 2002) ......................................................................25

*Nicini v. Morra*,
212 F.3d 798 (3rd Cir. 2000) ..............................................................................18

*Otero v. Wood*,
316 F.Supp.2d 612 (S.D. Ohio 2004) ..................................................................33

*Paugh v. Hanks*,
6 Ohio St.3d 72, 451 N.E.2d 759 (1983) ............................................................43

*Pearson v. City of Grand Blanc,*
    961 F.2d 1211 (6th Cir. 1992) ............................................................22

*Pena v. DePrisco,*
    432 F.3d 98 (2d Cir. 2005)................................................................20

*Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,*
    455 F.3d 690 (6th Cir. 2006) .............................................................30

*Ponder v. Bank of America, N.A.,*
    No. 1:10-CV-00081, 2011 WL 8307207 ............................................39

*Probst v. Consolidated Care, Inc.*
    No. 06-594, 2008 WL 320148 (S.D. Ohio February 4, 2008)................37

*Range v. Douglas,*
    763 F.3d 573 (6th Cir. 2014) ........................................................22, 23

*Richardson v. Huber Heights City Schools Board of Education,*
    651 F.App'x 362 (6th Cir. 2016) ................................................7, 12, 14

*Rochin v. California,*
    342 U.S. 165 (1952)........................................................................22

*Russo v. Cincinnati,*
    953 F.2d 1036 (6th Cir. 1992) ...........................................................30

*S.S. v. E. Ky. Univ.,*
    532 F.3d 445 (6th Cir.2008) .............................................................26

*Smith v. Howard Johnson Co., Inc.,*
    67 Ohio St.3d 28, 615 N.E.2d 1037 (1993) .......................................46

*Estate of Smith v. Western Brown Local School Dist.,*
    2015-Ohio-154, 26 N.E.2d 890 (12th Dist.) ......................................35

*Strehlke v. Grosse Public School System,*
    654 F.App'x 713 (6th Cir. 2016) .......................................................25

*Tackett v. M & G Polymers,*
    561 F.3d. 478 (6th Cir. 2009) .............................................................4

*Taylor v. Ledbetter,*
    818 F.2d 791 (11th Cir. 1987) (en banc), *cert. denied*, 489 U.S. 1065 (1989)........................18

*Thomas v. Parma,*
    88 Ohio App.3d 523, 624 N.E.2d 337 (8th Dist. 1993)........................37

*Thompson v. Ohio Fuel Gas Co.*,
   9 Ohio St.2d 116, 224 N.E.2d 131 (1967) ...........................................................37

*Tompson v. McNeill*,
   53 Ohio St.3d 102, 559 N.E.2d 705 (1990 ..........................................................34

*Wright v. City of Canton*,
   138 F. Supp. 2d 955 (N.D. Ohio 2001)..................................................................33

*Yeager v. Local Union 20*,
   6 Ohio St.3d 369, 453 N.E.2d 666 (1983) (abrogated on other grounds by
   *Welling v. Weinfeld,* 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007)) .....................39

**Statutes**

O.R.C. 2151.421(A) ................................................................................................44

O.R.C. 2151.421(A)(1)(a) .......................................................................................45

O.R.C. 2151.421(A)(1)(b) .......................................................................................45

O.R.C. 2151.421(B)-(C) ..........................................................................................45

O.R.C. 2151.421(E)(1) ............................................................................................45

O.R.C. 2151.421(G)(1) ............................................................................................45

O.R.C. 2744 .....................................................................................................34, 35

O.R.C. 2744.03(A)(6) .............................................................................................33

# I.    INTRODUCTION

This is a rare case where two Defendant school officials, Principal Jackson and Assistant Principal McKenzie, knew of the escalating bullying and injuries Gabriel Taye faced at Carson Elementary School ("Carson") and actively concealed it from his parents.  They knew Gabe suffered a head injury, was punched in the mouth, kicked in the hand, and knocked unconscious during third grade.  They knew the violence was escalating at Carson in general and toward Gabe in particular.  They knew that the boy's bathroom was unsupervised, unsafe, secluded, and the boys were at high risk of injury there.  They knew that Gabe entered the boy's bathroom on January 24, 2017 and tried to de-escalate a bully with a handshake.  They knew that Gabe was met with a violent attack, which left him unconscious on the bathroom floor for over seven minutes.  They knew that Gabe was vulnerable because he was only eight years old.  They knew that Gabe, as a repeated victim of bullying during third grade, was at risk of suicide.  They knew that CPS's bullying policy linked bullying to suicide.  They knew that they should have called 911 for Gabe when he lost consciousness.  They knew that they should have told his parents what happened and investigated the incident.  They knew they did none of these things.  Because they concealed all of this danger from his parents they likewise knew his parents were not aware of the danger Gabe was in at Carson. Indeed, because these Defendant school officials concealed the danger they knew Gabe was in, including the risk of suicide, they are responsible for his suffering and death.

The Defendants Board of Education ("Board") and Superintendent are equally responsible for the suffering Gabe experienced at Carson.  The Board and Superintendent created the very policies and practices that permitted and encouraged the bullying and aggression at Carson.  They also failed to train and supervise Principal Jackson and Assistant Principal

McKenzie on how to respond to the relentlessly aggressive behavior that they allowed to flourish at Carson.

Tragically, if his parents had only known the danger their eight-year-old son was in, they would have protected him themselves, by removing him from the snake pit of danger Defendants created at Carson. Had they done so, Gabe would not have returned to Carson. Thus, he would not have been bullied when he went to the bathroom that final day of his life. He would not have come home from school and hung himself. And his parents would not be agonized over the loss of their son.

Because Plaintiffs have stated claims against all defendants, Defendants' Motion to Dismiss should be denied in full.

## II.    FACTS

Eight-year-old Gabriel Taye was a third-grade student at Carson Elementary School during the 2016-2017 school year. He did not complete third grade because of the bullying and aggressive behavior he encountered at Carson. Gabe came home from school on January 26, 2017 and used one of the ties he liked to wear to school to hang himself from his bunk bed. His mother found him a few minutes later. She had no idea why he would kill himself. It would take several months of investigating before she and Gabe's father learned what Gabe's Principal, Vice Principal, Superintendent and School Board already knew: Carson Elementary School was infested with widespread aggressive, violent, and bullying behavior; Gabe was the target of escalating violence during third-grade including being punched in the mouth and kicked; Gabe tried to de-escalate a violent bully in a dangerous unsupervised bathroom with a handshake but was instead knocked unconscious for over seven minutes; Gabe laid motionless on the bathroom floor as a dozen students taunted him, mocked him, and kicked him long before an adult came to

his rescue; two days later Gabe was accosted again in the bathroom when his water bottle was stolen and flushed down the toilet in front of him.

If his parents had only known the danger Gabe faced at Carson, they would have removed him immediately from the school. They are forever heartbroken that they were not able to protect their son. They are left with only precious memories of Gabe. They bring this case to ensure that in the future, the students at Carson are kept safe and no other parent must endure the lifelong suffering that they now face.

### III.     ARGUMENT

#### A. *Iqbal* Standard for Reviewing Motions to Dismiss

The Supreme Court, in *Ashcroft v. Iqbal*, altered the pleading standard imposed upon all civil plaintiffs. The Court overruled the "no set of facts" standard, set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), and established a "plausibility" standard of pleading. To survive a motion to dismiss under the plausibility pleading standard, a plaintiff must state a claim that is "plausible on its face," which requires that the complaint lay out more than "mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Providing bare assertions of illegal activity, without some "further factual enhancement," does not state a plausible claim. *Id.* However, Rule 8 of the Federal Rules of Civil Procedure remains in place. That rule does not require "detailed factual allegations," but simply requires that the plaintiff produce more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Howard v. City of Girard, Ohio*, 346 F.App'x 49, 50 (6th Cir. 2009) *citing Bell-Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

This pleading standard does not necessarily require proof of specific facts, and the goal of pleading is still to "give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Additionally, in ruling on a motion

to dismiss, the reviewing court must still accept as true all factual allegations from the plaintiff's complaint." *Id.* In effect, a plaintiff must provide sufficient factual matter to permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The standard is not one of "probability," but requires more than a showing of a "mere possibility" that the defendant acted unlawfully. *Id.* The determination of whether a plaintiff has provided sufficient factual matter to meet this plausibility requirement is context-specific and must be made in light of the reviewing courts "judicial experience and common sense." *Id.* at 1950. In so doing the court must view the Complaint in the light most favorable to Plaintiffs and accept all well-pleaded factual allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Federal Rule of Civil Procedure 8(a) establishes a "liberal system of notice pleading" which requires only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Plaintiffs' Complaint more than satisfies the requirements of notice pleading. The Complaint alleges not only that eight-year-old Gabriel Taye hung himself as a result of the unrelenting bullying and aggression that he experienced at Carson, but that the Defendants are liable as a result of their direct actions, covering up the aggression, violence, bullying, intimidation, and harassment that were common at Carson, and denying Gabe's parents the ability to protect him and respond to his injuries. For the reasons set forth below, the Motion to Dismiss should be denied.

**B. Plaintiffs' Complaint Sufficiently Alleges a Violation of the Due Process Clause of the Constitution for Defendants' Failure to Protect Gabe.**

The key to any substantive due process claim is a deprivation by the state. Without a deprivation, a state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, there are two exceptions to this general rule. The first exception is the "state-created danger" exception: "state officials may be found to have violated the substantive due process rights of people not within their custody 'when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way.'" *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002)). The second exception is the "custody" or "special relationship" exception: "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*. at 199-200. Because Plaintiffs have properly alleged due process violations under both of these exceptions, the motion to dismiss should be denied.[1]

**1. Plaintiffs' Complaint sufficiently pleads a state-created danger claim against Defendants.**

Plaintiffs have alleged that Defendants violated Gabriel Taye's Due Process rights under the state-created danger exception, which says "officials may be found to have violated the substantive due process rights of people not within their custody 'when their affirmative actions

---

[1]      Defendants cite to *Galloway v. Chesapeake Union Exempted Village Schools Bd. of Educ.*, 2012 WL 5268946 (S.D. Ohio October 23, 2012) for the blanket assertion that the Due Process Clause does not impose a duty on a school to protect students from private harm. Motion, RE 13, PageID# 12. In *Galloway*, this Court did not address the exceptions to *DeShaney*, and thus the decision is of limited value applied to the Complaint in this case where both exceptions were pled in the Complaint.

directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way.'" *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002)). To prove a claim under the state-created danger theory, a plaintiff must show the following:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright*, 336 F.3d at 493, citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

### a. Plaintiffs' Complaint alleges that Defendants took affirmative actions that created and increased the risk that Gabe would be exposed to violence at Carson.

Plaintiff's Complaint meets the first element of the state created danger theory because it establishes facts that Defendants took multiple affirmative acts, all of which endangered Gabriel Taye. Despite these allegations, Defendants attack the Complaint for failing to plead that "Defendants committed any affirmative acts that increased the risk of danger to Taye." Motion to Dismiss, RE 13, PageID# 88. The well pled affirmative acts include covering up the danger at the school in general, as well as the special danger that Gabe experienced, which increased his risk of being injured. These affirmative acts include misleading Gabe's parents about the ongoing danger Gabe faced in third grade in general, and during the horrific bathroom attack that left him unconscious on the bathroom floor for over seven minutes, preventing Gabe's parents from protecting him. These affirmative acts include concealing the injuries Gabe suffered from the aggressive behavior at school that prevented his parents from treating him and protecting him from future harm. Finally, these affirmative acts include encouraging aggressive behavior

toward the students in general and Gabe in particular which resulted in the horrific bathroom attack on January 24, 2017, and an assault in the bathroom two days later. Compl. ¶¶ 19-60.

"[W]hile the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). In *Kallstrom,* the Sixth Circuit adopted the state-created danger cause of action. *Kallstrom* held that releasing an undercover police officer's private information increased the risk to his personal safety. The Court explained that "'[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.'" *Kallstrom*, 136 F.3d at 1066, quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982). In *Richardson v. Huber Heights City Schools Board of Education*, 651 F.App'x 362, 366 (6th Cir. 2016), the Sixth Circuit held that a coach who tolerated a culture of student on student hazing had taken an affirmative act that would increase the danger to students of private acts of violence. See also, *Enright v. Springfield School District*, ED PA 04-cv-1653, 2007 WL 4570970 (E.D. PA December 27, 2007) (using same state created danger test as the Sixth Circuit). In *Enright*, the district court upheld the jury's verdict for $400,000 in a case where the school district endangered a disabled seven-year-old girl when it placed her on a school bus with teenage boys who sexually harassed her. The school district took affirmative action when it knowingly placed a vulnerable student with a social age of five on the bus with high school boys, one of whom was known to have oppositional defiant disorder. The school district was also liable because it had no policies to protect younger students from older students. *Id*. at *9.

There is no question Plaintiff's complaint unequivocally alleges more than sufficient facts that the Cincinnati Board of Education and the CPS Defendants threw Gabriel Taye into a snake pit of aggressive behavior at Carson and concealed the danger he was in from his parents. This was summarized in the Complaint at ¶ 4:

> Aggressive behavior, aggression, violence, bullying, intimidation, and harassment (collectively referred herein as "aggressive behavior") was common at Carson. Defendant school officials not only knew that student-on-student aggression was rampant, especially in the unsupervised bathrooms, but chose to cover it up rather than alert parents and the school community so the violence could be investigated and resolved. Despite the official statistic that Carson reported to the public that it had zero bullying incidents during the first half of the 2016-2017 school year, Defendants were aware of, permitted, did not abate, and in fact harbored the bullying, physical aggression, harassment, intimidation, and exceptionally destructive unsafe climate that persisted at Carson. Defendants hid this information from parents, including Gabe's parents, who, unaware of the dangers their children faced, were deprived of the ability to protect their children from the multitude of dangers present at Carson. Had Gabe's parents known the dangers Gabe faced at Carson, they would not have continued to send him to school there. Defendants, with utter reckless wanton disregard for Gabe, permitted a treacherous school environment to become even more so by withholding these critical facts and covering up the risk to Gabe's safety.

In addition, the Complaint specifically alleges that Defendants:

- Fostered, covered up, harbored bullying and aggressive behavior at Carson thus secreting the ability of parents to protect their children. Compl. ¶¶ 19-60.

- Chose to not adopt or follow Ohio Department of Education model policies to prevent bullying. *Id.* at ¶ 19.

- Excluded known incidents of bullying from the published reports, thereby recklessly withholding the dangers to Gabe, that the District had created, from Gabe's parents. *Id.* at ¶¶ 28-60.

- Withheld from Gabe's mother incidents of aggression against Gabe that were part of a pattern of escalating violence against him, including his being punched and injured on October 7, 2016; the cause of a head injury on October 31, 2016; the fact that he

was attacked and punched in the mouth on January 9, 2017, and instead falsely minimizing the attack by calling it "horseplay;" and withholding from his mother that Gabe was kicked by a student in the lunchroom on January 18, 2017. *Id*. at ¶¶ 65-74.

- Created a policy that defined bullying, harassment and intimidation so narrowly that Defendants encouraged violence and aggression to become rampant at Carson to the point where it was accepted as normal. Compl. ¶ 107. This policy has allowed aggressors to intimidate and bully students without consequences; it made victims helpless to prevent or even report the aggression and violence they suffered and observed daily; it purposefully misled parents about the violence their children faced; it made teachers powerless to stop the aggression; and it purposefully deceived the community about how violent Carson is and why its students are failing to learn. *Id*. CPS has established a pattern and practice of covering up the violence and aggression the students suffer at Carson. *Id*.

- Used surveillance cameras in a way that lured victims like Gabe into a sense of false security when they entered a place without adult supervision and at the same time encouraged aggressive behavior because the perpetrators knew their actions were either going unnoticed or would be disregarded, and hence, unpunished. Compl. ¶¶ 2, 113.

- Covered up the attack on Gabe in the bathroom and withheld from Gabe's mother that Gabe was attacked, other boys were attacked, the bathroom was unsupervised, and Gabe lay unconscious on the bathroom floor for over seven minutes. *Id*. at ¶¶ 137-38.

- Encouraged nursing staff to minimize student injures caused by aggressive behavior to hide the violence from parents, including Plaintiffs. *Id*. at ¶¶ 152-59.

Defendants incorrectly interpret the verbs used in the complaint, such as "withheld" or "failure to communicate" as passive and not affirmative actions. Motion, RE 13, PageID# 89. In the context of this case, the Defendants' concealing, covering-up, harboring, misleading and withholding information from Plaintiffs about the aggressive behavior Gabe suffered and was exposed to, as well as the violent bathroom attack and the serious injury he suffered, are all affirmative acts. Compl. ¶¶ 4-5, 28-60, 66, 87, 107-08, 110, 126, 132, 137-40, 152-59, 175, 177, 179. The Complaint establishes facts to support the claim that Defendants engaged in affirmative acts of covering up and harboring the extent of the environment of aggressive behavior that Carson students experienced daily; of the pattern of aggressive behavior toward Gabe generally; of the bathroom attack and injury to Gabe and others. Compl. ¶ 140. These acts "all placed Gabe specifically at risk of further bullying, of emotional distress, of suicidal ideation, and of severe side effects of an untreated serious head injury." *Id*. Thus, the Complaint states a claim for failure to protect.

In some state-created danger cases it is difficult to distinguish action from inaction; in this case, however, it is clear that Defendants acts were affirmative. When it is unclear, the Sixth Circuit has provided a test to clarify whether an act was affirmative. "Rather than focusing on the often metaphysical question of whether officer behavior amounts to affirmative conduct or not, we have focused on 'whether [the victim] was safer before the state action than he was after it.'" *Koulta v. Merciez*, 477 F.3d 442, 445-46 (6th Cir. 2007), citing *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). Whether one situation is more dangerous than another is a question of fact for the jury. *See Cartwright*, 336 F.3d at 493; *Bear v. Delaware Cty., Ohio*, S.D. Ohio No. 2:14-CV-0043, 2016 WL 234848, *10 (January 20, 2016). However, in the

case at bar, there is no need to compare whether Gabe was safer before the state action because it is clear Defendants' actions were affirmative and placed him in greater danger.

Even if a comparison of Gabe's endangerment before and after Defendants' actions is made, a jury would have ample evidence to find that the Defendants' actions placed Gabe at greater risk of danger after they covered-up the danger and encouraged the violence. The Complaint alleges that Defendants' actions made Gabe more vulnerable to even greater violence at Carson while at the same time emboldened the perpetrators to act with impunity. For example, the security cameras gave Gabe a false sense of security and encouraged the perpetrators to misbehave knowing they would go unpunished. Compl. ¶¶ 2, 113-114, 174. Defendants' actions are more akin to the police officers who made demonstrators more vulnerable to attack when the officers told "skinheads" they would not intervene if the skinheads wanted to beat up flag burning demonstrators in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993). See also discussion *infra* at section 2 (b).

Defendants cite to *Stiles ex rel. D.S. v. Grainger County, Tenn*., 819 F.3d 834, 854 (6th Cir. 2016) to support their position. Motion Page ID #88. However, *Stiles* is distinguishable because there were no allegations of affirmative actions. In *Stiles*, the Sixth Circuit found the school's behavior to be omissions rather than affirmative actions when it failed to punish bullying students or refer them to the police, or failed to enforce school policy. *Id.* at 854-855. The Court did acknowledge that misleading the parents into believing the school would help was an affirmative act, but Plaintiffs failed to show how that increased the student's exposure to violence. *Id*. In contrast to the facts in *Stiles*, in the case at bar, Defendants' actions were affirmative acts that directly increased the danger to Gabe.

Since the Complaint specifically alleges Defendants took affirmative actions that placed Gabriel Taye in danger and increased the danger to him, this Due Process Claim for failing to protect Gabriel Taye should not be dismissed.

### b. The Complaint sufficiently pleads facts that show Gabriel Taye was in special danger at Carson.

Pursuant to the second requirement of showing a state created danger claim, Plaintiffs must show Gabe was in a "special danger" at Carson. Showing a "special danger" requires showing that the defendant's act created or increased "the risk [for the plaintiff], distinguished from that faced by the students [at the school] generally." *Richardson*, 651 F.App'x at 366 (finding that a coach telling students to "take care of it," which meant hazing a problem student, was sufficient to find that student was placed in special danger). The Defendants argue this element is not met because the Complaint clearly establishes "that Carson is plagued by a culture of bullying – a risk shared by all students." Motion, RE 13, Page ID# 91; Compl. ¶¶ 24-26, 60. While the Complaint does allege that all the children at Carson were at risk of aggressive behavior and bullying because CPS Defendants concealed the violence from parents, the complaint also alleges the special danger Gabe faced with numerous examples:

- Gabe was the target of aggressive behavior at Carson, resulting in injuries that were not reported to his parents. Compl. ¶¶ 61-64.

- During his third-grade year, Gabe was the target of aggressive behavior at Carson, resulting in injuries that were not reported to his parents. *Id.* at ¶ 66-74.

- In January 9, 2017, two students, C.J. and P.B., attacked Gabe and punched him in his mouth. *Id.* at ¶ 71.

- On January 24, 2017, Gabe was the target of a student's aggressive behavior and was knocked unconscious in the bathroom, a perpetrator whose identity was known only to

12

CPS Defendants, which CPS Defendants concealed from Gabe's parents. *Id.* at ¶¶ 75-81.

- Gabe was suffering from a concealed head injury, known only to CPS and concealed from the parents. Compl. ¶¶ 81, 84-85.

- Gabe was in need of immediate medical attention after being knocked unconscious for over 7 minutes, a danger known only to CPS and concealed from his parents. *Id.* at ¶¶ 77-81.

- The day Gabe returned to school after the bathroom attack, he was subjected to violence again in the bathroom when boys accosted him and tried to flush his water bottle down the toilet. *Id.* at ¶ 88.

- Surveillance cameras were installed to monitor student aggression in the bathroom, but the Defendants did not monitor the cameras which encouraged aggressive behavior in the bathroom. *Id.* at ¶¶ 77, 113.

- Defendant ignored Gabe lying on the floor for an unreasonable time thus increasing his special danger the source of which was aggressive behavior towards him. *Id.* at ¶¶ 135, 145.

Because the Complaint pleads sufficient facts that Gabriel Taye was in special danger, the state-created danger claim should not be dismissed.

        **c.    The Complaint alleges Defendants actions were deliberately indifferent to the danger they created.**

The third and final prong a state created danger claim require a showing that Defendants' actions were deliberately indifferent to the special danger they created. Showing deliberate indifference requires showing that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." However, the subjective standard does not mean that "officials will be free to ignore obvious dangers." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Requiring subjective knowledge of the danger is not meant to allow officials "to take refuge in the zone between 'ignorance of obvious risks' and 'actual knowledge of risks.'" *Id*. If a risk is "longstanding, pervasive, well-documented, or expressly noted by… officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id*. at 842-843. The Sixth Circuit has equated deliberate indifference with "subjective recklessness," allowing it to be "'proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it.'" *Richardson*, 651 F.App'x at 365 (citing *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir 2003). In *Richardson*, the court held that the school officials could be found deliberately indifferent when they "turned a blind eye" to the danger the coach placed students in by permitting hazing and being aware of a "culture of student leadership via bullying, and the risk it posed." 651 F.App'x at 366.

Defendants claim the Complaint fails to show facts that Defendants acted with deliberate indifference. Motion, RE 13, PageID# 91. However, the Complaint carefully makes these allegations with specific factual basis. Compl. ¶¶ 3, 99-120, 133-58, 175, 177, 179, 183, 187. The Complaint alleges that the Defendants knew of the risk to the students in general and to Gabe in particular from the aggressive behavior that was prevalent at Carson. *Id*. at ¶¶ 4, 30-59, 61-74, 100-02. Defendants knew the risk of fostering an aggressive climate at Carson would endanger students, including Gabe even further. *Id*. at ¶¶ 28-29, 75-77, 103-07. Defendants knew that one of the risks of bullying is suicide. Compl. ¶¶ 94-98, 100-02. Defendants knew

from the surveillance at Carson that the students faced an obvious risk from the bullying on a daily basis. Compl. ¶ 136. Defendants knew that one of the risks of bullying is suicide. Compl. ¶ 98, 100. Defendants knew of the obviousness of the risk of bullying and suicide. Compl. ¶ 136.

Yet, despite their knowledge of the risks of harm to Gabe, Defendants did nothing to stop the aggressive behavior. Even worse, they fostered and encouraged the aggressive behavior at Carson. *Id*. at ¶¶ 4, 103-07, 113-14. Furthermore, Defendants actually covered-up the extent of the aggressive behavior toward Gabe, the bathroom attack, and the extent of Gabe's injuries from his being knocked unconscious. *Id*. at ¶¶ 66-87. These facts all establish that the Defendants were deliberately indifferent to the dangers they created for Gabe. Thus, the Complaint should not be dismissed.

**2. The Complaint states sufficient facts to establish that Defendants had a special relationship with Plaintiffs and thus Defendants had a constitutional duty to protect Gabriel Taye.**

Defendants move to dismiss the due process claim by arguing that there is no special relationship between a school and a student. Motion, RE 13 PageID# 92. The Complaint states that a special relationship was created when a) Defendants covered up the danger and injures to Gabriel Taye, thus preventing his parents from protecting him, and b) when Defendants encouraged the aggressors' behavior toward Gabe. Compl. ¶¶ 66-87, 133-46.

**a. The Defendants' actions prevented Gabriel Taye's parents from protecting him.**

When the state takes a person into custody and holds him against his will, the Constitution imposes a corresponding duty on the state to "assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 200.

The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. ***The affirmative duty to protect arises*** not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but ***from the limitation which it has imposed on his freedom to act on his own behalf***. See *Estelle v. Gamble* ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's **affirmative act of restraining the individual's freedom to act on his own behalf**—through incarceration, institutionalization, or other similar **restraint of personal liberty**—**which is the "deprivation of liberty"** triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200 (citations omitted). By covering up the danger Gabe was in at school and the extent of his injuries, Defendants' acted affirmatively to restrain his parents' freedom to act on Gabe's behalf. This deprived both Gabe, because of his young age, and his parents, because of the hidden risks, to protect Gabe themselves. By covering up the escalating aggression and injuries Gabe suffered at Carson, Defendants' actions amounted to deprivation of Gabe's liberty. Gabe could not escape the overpowering aggression that Defendant's cover-up caused. The Complaint sufficiently alleges that the school officials covered up Gabe's risk of danger at Carson throughout his third-grade year. Compl. ¶¶ 65-74. The coverup escalated when Defendants kept from his parents the attack in the bathroom and the extent of Gabe's injuries. *Id*. at ¶¶ 81-84. Had the school officials told his parents of the risk facing Gabe, his parents would have removed him from Carson, would have sought medical help for their son, and would not have sent him back to Carson where he was vulnerable to the ever escalating special danger on this last day of school. *Id*. at 3-4, 84, 87.

Defendants argue in their motion that neither *in loco parentis* laws or compulsory education laws create a special relationship between student and school. Motion, RE 13,

PageID# 93. In *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 510 (6th Cir. 1996), the court held that a "state's **compulsory attendance** laws do not sufficiently "restrain" students to raise a school's common law obligation to the rank of a *constitutional* duty." *See also*, *Doe v. Big Walnut Local School Dist. Bd. of Educ.*, 837 F.Supp.2d 742, 752 (S.D. Ohio 2011) ("[S]tate compulsory attendance laws do not sufficiently restrain students to raise a school's common law obligation to create and maintain a safe environment for its students to the rank of a constitutional duty."). However, Plaintiffs do not argue that Ohio's compulsory attendance or *in loco parentis* laws created the special relationship here. Rather, Plaintiffs argue that the special relationship is created by the limits imposed on Gabe to protect himself and for his parents to protect him from the known harm created by Defendants.

In *Stiles ex rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 854 (6th Cir. 2016), the court held that a special relationship does not arise from the school's expressions of intention to help a student, "'**but from the limitation which it has imposed on his freedom to act on his own behalf.**'" (citing *DeShaney*, 489 U.S. at 200). There, the plaintiff pointed out that the school had knowledge of the student's situation and made unfulfilled promises to remedy it. The court held that neither situation was enough to create a special relationship and, thus, held that the school "did not, as required by *DeShaney*, **restrain [the student's] or his parents' freedom to act on his behalf**."

Here, unlike in *Stiles*, Defendants knew of Gabe's predicament and covered it up from his parents, thus preventing his parents from acting on Gabe's behalf. Compl. ¶¶ 3-4, 63-64, 66-74, 87. Had his parents known about the danger Gabe was in, they would have withdrawn him from Carson. *Id.* at ¶¶ 3, 168. Defendants' affirmative actions, in covering up the danger and

harboring the risk of harm from the aggressive school environment, prevented his parents from protecting Gabe themselves, especially given his young age. Thus, a special relationship was created where Defendants were constitutionally obligated to protect Gabe. The Sixth Circuit left open the opportunity to show a special relationship between a school and the student when there is a "material distinction" in the cases that base the relationship on compulsory education laws or knowledge of the student's predicament and broken promise to protect. *Stiles*, 819 F.3d at 854.

CPS Defendants created the special relationship with eight-year-old Gabe Taye and his parents when they knew of the danger Gabe experienced over the years, the level of aggressive behavior that he was exposed to while at Carson, and the specific attack and injury he suffered two days before he died and then covered it up from his mother and father, thus preventing his parents from protecting Gabe. Compl. ¶¶ 66-74, 146, 158, 168. As a comparison, Defendants' behavior is similar to that seen in traditional custody special relationships in jails and prisons – where the state holds the person against their will – and thus imposes on the state some responsibility for the person's safety. *See DeShaney*, 489 U.S. at 200. Gabe's parents did not know the risks he continually faced at Carson that would have led them to remove him from school. Thus, Gabe was "prisoner like," trapped in an environment of unrelenting aggressive behavior.

This case is also analogous to the duty owed to a child in foster care, where the state renders the foster child dependent on the state to meet his needs. *See Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.), *cert. denied*, 498 U.S. 867, (1990) (children in foster homes have right to be free from harm); *Nicini v. Morra*, 212 F.3d 798, 808 (3rd Cir. 2000) (when a state places a child in foster care, a special relationship is created; and the state has an affirmative duty to protect). *See also Taylor v. Ledbetter*, 818 F.2d 791, 795 (11th Cir.

1987) (en banc), *cert. denied*, 489 U.S. 1065 (1989) (children in foster care have duty to be protected); *Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), *cert. denied*, 464 U.S. 864 (1983) (same). Like a child in foster care, Gabe's parents were unable to protect him from harm. Defendants, through their efforts to conceal the risk Gabe faced at Carson both before and after the bathroom attack, accepted the duty to protect him, in lieu of his parents.

### b. The Defendants' actions encouraged the aggressive behavior by private parties toward Gabriel Taye.

When the state takes affirmative steps to put a child in harm's way, it is liable for the consequences. The complaint in *Doe v. Trumbull County Children Services Board*, 2013 WL 6903777, (N.D. Ohio December 31, 2013), portrayed defendants as "affirmative doers of harm" by deliberately leaving an infant unsupervised with his knowingly dangerous parents. The court held the complaint stated a due process claim and denied a motion to dismiss. *Doe* at * 6. When the state creates the perilous situation that renders citizens more vulnerable to danger at the hands of private actors, a plaintiff may bring a substantive due process claim. *Id.*

The Sixth Circuit agrees. In *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006), the Sixth Circuit did not find a state-created danger when the police allowed a drag race to occur where a driver lost control and struck a spectator who was killed. The court reasoned that the spectator was in the same danger before the officers arrived and after they arrived and did nothing to stop the race. The court explained, however, that if the police had encouraged the private actor's violence toward the victim, that would be actionable.

> In some circumstances, ***we agree, an officer's encouragement of private illegal acts may state a constitutional claim***, but that is because in some circumstances such encouragement will increase the risk of harm to the victim and because in some circumstances private misconduct will become public misconduct when it occurs at the prompting of public officials. . . . [I]f an officer (inexplicably) had encouraged the

assailant in *Bukowski* to rape the victim or if an officer (inexplicably) had encouraged the father in *DeShaney* to beat his son, both officers plainly would have increased the risk of danger to the victims.

*Jones*, 438 F.3d at 695-696 (emphasis added).

In distinguishing cases from other circuits, the Sixth Circuit has agreed that when the state actor encourages private actors to endanger the victim, the state actor is liable. *Jones*, 438 F.3d at 695 and *Koulta* v. *Merciea*, 447 F.3d 442, 446 (6th Cir. 2007). For example, when a state actor exacerbates a risk of harm, he is liable, as in *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005) where an off-duty officer's colleagues condoned the off-duty officer's drinking and driving. The Second Circuit held that when "state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct . . . ." *Id.* Likewise, in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), the police were liable for telling skinheads the police would not interfere and sanctioned the skinhead's private violence on demonstrators.

Here, the Complaint states a claim of state-created danger based on Defendant school officials encouraging the aggressive students' behavior. Compl. ¶¶ 4, 29, 107, 113.

However, Defendants argue that Plaintiffs advance a theory that "delivering anything less than complete information constitutes a restraint on liberty giving rise to a special relationship" and that Plaintiffs "invite this Court to create a Due Process claim out of virtually every parent-teacher interaction." Motion, RE 13, PageID# 94. This is inaccurate; Plaintiffs seek merely to hold Defendant Board of Education, Superintendent, Principal, and Assistant Principal accountable for actively covering up the aggressive behavior toward Gabe that prevented his

parents from protecting their son. This is the foundation of a Due Process violation depicted in *DeShaney.*

Because the Complaint establishes that Defendants created a special relationship with Gabe and that Gabe's and his parents' due process rights were violated by failing to protect him after creating a special relationship, this claim should not be dismissed.

### 3. Defendants' actions violate the Due Process Clause because their actions shock the conscience.

Defendants move to dismiss Plaintiffs' Due Process claim that Defendants' actions shock the conscience. Plaintiffs allege that Defendants' conscience shocking behavior includes the Defendants' a) misleading, harboring, and covering-up from Gabe's parents the level of violence Gabe faced at Carson, the bathroom attack and the extent of Gabe's injuries, b) destroying surveillance recordings for the purpose of covering up the danger at Carson, c) encouraging violence at Carson, and d) encouraging injuries from violence to be minimized. Compl. ¶¶ 4-5, 19-60, 87, 107, 108, 110, 113, 126, 137, 138, 140, 152-159, 175, 177, 179. All of this conduct was done with no legitimate government purpose. Compl. ¶¶ 148, 158.

Defendants argue the Complaint attributes no motive to Defendants' actions. Motion, RE 13, PageID# 97. However, the allegations of misleading Gabe's parents and covering-up the violence and assaultive behavior at Carson, the bathroom attack and serious injuries suffered by Gabe, fostering and encouraging violence and aggression at Carson, and encouraging injuries from violence to be minimized, all show that Defendants' motives were purposeful and therefore shock the conscience. While Plaintiffs do not define cover-up, which is used to describe all of Defendants' conscience shocking actions, it is common knowledge that cover-up means "to hide a thing that is unlawful or to evade and impede investigations." Black's Law Dictionary Free 2nd Ed., http://thelawdictionary.org/cover-up/.

Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014), citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). This, among other things, protects "the interest in freedom from government actions that 'shock the conscience.'" *Range*, at 588, citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). "It also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Range*, at 588, citing *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003); *Pearson*, 961 F.2d at 1216-17.

"[S]ubstantive due process is not a rigid conception, nor does it offer recourse for every wrongful action taken by the government" but the standard for whether such action "shocks the conscience" is "a high bar." *Range*, at 589. Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Range*, at 589, citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). This includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Range*, at 589-90, citing *Lewis*, at 847. It also includes conduct that "violates the decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-173 (1952).

On one hand, merely tortious conduct is insufficient to rise to the level of conscience-shocking. On the other hand, conduct which is "intended to injure" without "any justifiable government interest, most clearly rises to the 'conscience-shocking' level." *Range*, at 590, citing *Lewis*, at 848-49. Recklessness, gross recklessness, and deliberate indifference are "closer calls." *Range* at 590, citing *Lewis* at 849. It can also depend on the context. "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our

concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Range*, at 590, citing *Lewis* at 850.

The Sixth Circuit has identified factors to consider in determining whether deliberately indifferent actions amount to conscience-shocking behavior: "1) the voluntariness of the plaintiff's relationship with the government, 2) whether there was time for the government actor to deliberate, and 3) whether the government actor was pursuing a legitimate governmental purpose." *Range*, at 590, citing *Hunt v. Sycamore Community School Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008).

Defendants' actions amount to conscience-shocking behavior, as each factor weighs in favor of Plaintiffs' claim. First, Gabe's relationship with Defendants was not voluntary and is more akin to being in custody since there was a special relationship between the Defendants and Gabe, as explained in section B (2), *supra*. Gabe's relationship is nowhere near the completely voluntary school-teacher employment relationship in *Hunt*. Situations where someone is in governmental custody "present a demanding standard of behavior." *Hunt*, at 536. On the other hand, in a more voluntary relationship, the standard for governmental behavior will be lower. Since Defendants' relationship with Gabe is close to a custodial relationship, it requires the more demanding standard of behavior from the Defendants. Additionally, Gabe was an eight-year-old schoolboy. He was not an adult employed by the government, as the teacher in *Hunt*, and able to protect himself and represent his own interests. Also, as alleged throughout the Complaint, Defendants actively covered up what was occurring at Carson, limiting the ability of Gabe's parents to take action to protect him. In so doing, Defendants took on a higher duty to protect Gabe.

Second, Defendants are also subject to a higher standard of behavior because they had time to deliberate. *Id*. at 539-40. This was not a prison riot, nor a high-speed chase. *Id*. No one had to make split second decisions. The aggression and bullying Gabe experienced took place throughout his third-grade year. On the day he was assaulted in the bathroom, Defendants arrived while he was unconscious and had plenty of time to decide how, or even if, they would reveal to his parents the extent of his injuries and violence. Defendants purposefully chose to falsely tell Gabe's mother that he fainted and to conceal his injuries and need for immediate emergency care for a seven minute loss of consciousness. Even the next day, after learning that Gabe went to the hospital, Defendants had time to come clean about his seven-minute loss of consciousness, but they chose not to. Defendants had more than a school day to deliberate whether to tell his mother the danger Gabe was in when he returned to Carson. Compl. ¶ 158.

Third, the Complaint alleges that Defendants' actions served no legitimate governmental purpose. Compl. ¶¶ 148, 158. Where a claim arises "out of a governmental actor's attempt to discharge duties which it is required by law or public necessity to undertake, courts are particularly unlikely to find the action arbitrary, even if the actor was imprudent in choosing one legitimate goal over another." *Id*. at 540. The Complaint sufficiently sets forth facts that show the purpose of Defendants' actions were not to discharge their duties, but to cover-up, conceal, mislead, minimize, and harbor the truth from Gabe's parents. Additionally, Defendants actions in encouraging violence served no legitimate goal.

Since the Complaint adequately describes how Defendants' actions meet all three factors of finding governmental behavior to be shocking to the conscience, Plaintiffs' Due Process claim should not be dismissed.

**C. Plaintiffs have Properly Alleged a Violation of the Equal Protection Clause of the Constitution.**

The Equal Protection clause of the Fourteenth Amendment provides that "[n]o state shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV §1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *Strehlke v. Grosse Public School System*, 654 F.App'x 713, 719 (6th Cir. 2016), citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Depending on the context, different standards are used to determine an equal protection violation. Classifications that "infringe upon fundamental rights" or "involve suspect classifications are subject to strict scrutiny." *Strehlke*, at 719, citing *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 368 (6th Cir. 2002). Quasi-suspect classifications are subject to intermediate scrutiny. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985). But a classification "that neither involves fundamental rights nor proceeds along suspect lines is accorded a strong presumption of validity and is constitutional so long as it bears a rational relation to some legitimate end." *Strehlke*, at 719 (internal quotations omitted). "To successfully challenge such a classification, a plaintiff must prove that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (internal quotations omitted).

Plaintiffs have alleged that Defendants violated Gabe's equal protection rights by treating students injured by bullying and aggression differently than students injured in accidents. Compl. ¶¶ 65-69, 115-19, 180-83. Plaintiffs alleged examples of how Defendants ignored, minimized, and covered up incidents of bullying and aggression, against Gabe and against other Carson students, and that this was different from how the school responded to injuries caused by accidents. *Id.* at ¶¶ 65-69, 81, 117-18, 152-55, 180-83. Using Gabe's own situations as a

comparison, when he accidently fell on the playground, he was back-boarded and sent to the hospital. *Id.* at ¶ 117. His injuries were taken seriously, he was treated for his injury, and his parents were informed.  But when Gabe was injured as a result of bullying and aggression, he was not treated, was not sent to the hospital, and his parents were not informed. Compl. ¶ 118.

These allegations of differential treatment of an injured student, based on the cause of his injury, fails even the rational basis test, because there is no legitimate reason to treat injuries differently based on the cause of the injury.  "In essence, a [s]tate must treat similarly situated individuals in a similar manner." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir.2008), quoting *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996).  The Complaint sufficiently alleges that there is no legitimate reason for Defendants to treat students differently based on the cause of their injury.  Compl. ¶ 119.

Because Plaintiffs have properly alleged that Defendants violated Gabe's equal protection rights, the claim should not be dismissed.

   **D.  Plaintiffs have Properly Alleged Municipal Liability for Defendants Cincinnati Board of Education and Ronan.**

      **1.  Defendants Cincinnati Board of Education and Ronan are liable for the district's unconstitutional policy and practice permitting and encouraging bullying and aggression.**

"Congress included customs and usages [in §1983] because of the persistent and widespread discriminatory practices of state officials… Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute 'custom or usage' with the force of law."  *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  When a municipality has a custom of inaction, it is shown by "(1) the existence of a clear and persistent pattern of [violations under §1983] by municipal employees, (2) notice or constructive notice on the part of the City; (3) the City's tacit approval of the

unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in the constitutional deprivation." *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008).

As explained *supra*, the Complaint states claims that Defendants have engaged in unconstitutional conduct in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs have extensively documented the pattern of bullying and aggressive behavior occurring at Carson that has become a custom of permitting and fostering bullying and aggressive behavior; not investigating or reporting bullying and aggressive behavior to parents; encouraging bullying and aggressive behavior; and covering-up such behavior to the detriment of the students, including Gabriel Taye. Compl. ¶¶ 28-53, 60, 105-107. The alleged pattern of covering up incidents of bullying and aggression and the injuries from this violent behavior constitutes ample allegations that Defendants McKenzie and Jackson knew of a problem at Carson, as documented in their student behavior logs. *Id*. at ¶¶ 28-53. Because this pattern was documented, Defendants Ronan and Cincinnati Board of Education had notice of the unconstitutional policy and practice.

In addition, the Complaint alleges that Superintendent Ronan was the final policy maker of all Board policies and decisions to cover-up and harbor the evidence of aggressive behavior. *Id*. at ¶¶ 108, 184. Furthermore, there are allegations that the Board and the Superintendent did not ensure CPS's own policies were followed, did not investigate or that incidents of bullying, aggression and intimidation, did not treat the victims, did not notify parents and did not report the complaints. Compl. ¶¶ 105, 109, 186. As of the date that the Complaint was filed, the Board and the Superintendent had not investigated the bullying, aggression and violence Gabe suffered

at Carson, including the bathroom attack, all in violation of CPS policy. *Id*. at ¶ 141. Nor had they informed Gabe's parents of the bathroom attack at the time it happened, or even after his death. *Id*. at ¶¶ 127, 143. These allegations are sufficient to state a claim of municipal liability against the Board and the Superintendent.

Plaintiffs have also alleged that Defendants' failure to act in the face of their unconstitutional policies and practices of fostering a violent school was deliberately indifferent and that their deliberate indifference was the moving force behind Gabe's death. Compl. ¶¶ 145, 188. Thus, the Complaint states a claim for municipal liability against the Board of Education and Superintendent Ronan.

Defendants argue that that Plaintiffs do not explain what aggressive behavior is or how it is constitutionally significant. Motion, Re 13, PageID# 102. The term "aggressive behavior" is defined in the Complaint as aggression, violence, bullying, intimidation, and harassment (collectively referred herein as "aggressive behavior"). Compl. ¶ 4. As the Complaint explains, the Board of Education very narrowly defines bullying and does not have a policy that more broadly prohibits aggressive behavior. *Id*. at ¶¶ 103, 106. Because of this, CPS does not have policies to prohibit, prevent, investigate, notify and report other forms of aggressive behavior. *Id*. Therefore, it permitted acts of bullying, violence and aggression that did not fit its narrow definition. *Id.* at ¶¶ 106-07. This policy is the moving force behind Defendants' constitutional violations alleged in this case. *Id*. at ¶¶ 107, 188.

Defendants also argue Plaintiffs do not plead facts showing how the Board's policies resulted in the violation of Gabe's constitutional rights. Motion, RE 13, PageID# 103. Yet, the Complaint explains in detail how the Board and Superintendent's policies and practice increased the danger Gabe faced from the violent climate at Carson; how Gabe was injured because the

violence and aggression was permitted, encouraged, and covered-up; how Gabe was at risk from

an unreported and untreated head injury; and how the concealment of violence and aggression

from his parents prevented them from protecting their son by removing him from the school.

Compl. ¶¶ 3, 4, 87, 168. The Complaint could not state more clearly how the Board's policies

resulted in the violations of Gabe's constitutional rights to be protected and depriving his parents

from protecting him:

> Defendants hid this information from parents, including Gabe's parents, who, unaware of the dangers their children faced, were deprived of the ability to protect their children from the multitude of dangers present at Carson. Had Gabe's parents known the dangers Gabe faced at Carson, they would not have continued to send him to school there. Defendants, with utter reckless wanton disregard for Gabe, permitted a treacherous school environment to become even more so by withholding these critical facts and covering up the risk to Gabe's safety. Compl. ¶ 4.

> On January 26, 2017, Gabe's mother sent him back to school, a decision she would never had made if she had only known about the attack in the unsupervised boy's room, his extended unconsciousness, his risk of experiencing head trauma, and the dangerous environment at Carson that the CPS Defendants were covering up. Compl. ¶ 87.

> If she had only known the extent of the abuse, bullying, aggression, and violence Gabe suffered and witnessed at Carson, she would have removed him from that school immediately. By secreting the extent of the violence at Carson and the attack on Gabe in the bathroom two days before his death, Defendants deprived Ms. Reynolds of her ability to protect her son. Compl. ¶ 168.

The Complaint states a claim of municipal liability against the Board of Education and its

Superintendent based on their unconstitutional policies that failed to protect Gabe. Therefore,

this claim against the Board and Superintendent should not be dismissed.

**2. The Complaint States a Claim against Defendants Cincinnati Board of Education and Ronan for their Failure to Adequately Train and Supervise Defendants and school officials on how to respond to the aggressive behavior that flourished at Carson.**

"To succeed on a failure to train or supervise claim, the plaintiff must prove the

following: (1) the training or supervision was inadequate for the tasks performed; (2) the

inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist*., 455 F.3d 690, 700 (6th Cir. 2006).

In *Russo v. Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992), the Sixth Circuit found that a municipality could not immunize itself by "simply… offering a course nominally covering the subject, regardless of how substandard the content and quality of that training is."  The deliberate indifference prong can be met by showing that the municipality failed "to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Ellis*, at 700-701.  In *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989), the court found that there was a failure to supervise.  The sheriff failed to supervise his employees adequately when he knew or should have known of the danger that inmates such as the plaintiff were likely to receive inadequate care.  *Id*.  He did not know, but should have known, because there were 14 similar incidents that had occurred at the jail.  *Id*.

Defendants' only argument for dismissing the failure to train claim is that Complaint does not demonstrate a pattern of unconstitutional conduct that was ignored by the municipality.  Motion, RE 13, PageID# 102-103.  On the contrary, as demonstrated *supra* in §§ B (1), B (2), B (3), and C, the Complaint sufficiently states a claim for four constitutional violations.  Each of those Due Process and Equal Protection constitutional violations supports a claim against the Board and Superintendent for failing to train and supervise Carson staff to protect the students and Gabe.

Defendants knew that that student-on-student aggression was rampant at Carson during Gabe's enrollment and that students could not protect themselves. Compl. ¶ 4, 100-01.  They also knew that by covering-up and withholding information from parents about the aggressive

behavior and the risk of harm their students faced, Defendants were prohibiting parents from protecting their children. Compl. ¶ 110. The Board and Superintendent also knew the risks that bullying and aggressive behavior had on Carson students, including the risk of suicide; they even provided training that linked bullying, violence and aggression at school to suicide. Compl. ¶ 100, 102. The Board and Superintendent chose not to follow the State of Ohio Department of Education Policy on Bullying and intentionally created a dangerous environment where untrained personnel did not supervise the snake pit Gabe was thrown into. *Id*. at ¶ 19. Thus, the Board and Superintendent were deliberately indifferent to school officials with training to identify, investigate, and report, the bullying, violence, aggression, intimidation, or harassment. *Id*. at ¶ 111. The Board and Superintendent also failed to supervise their staff to ensure they complied with their legal obligations or with Defendant CPS's policies to identify, report, or investigate bullying, violence, aggression, intimidation, or harassment. *Id*. at ¶ 112. Their failure to train and supervise allowed this aggressive and violent behavior to flourish at Carson, which Defendants knew placed the students, including Gabe, at risk of danger and even suicide. *Id*. at ¶¶ 160, 175, 177, 179, 183, 187. As such, the Cincinnati Board of Education and Superintendent Ronan's deficient training and supervision were all inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Gabriel Taye and Plaintiffs. *Id*. at ¶ 188.

For these reasons, Plaintiffs have sufficiently stated claims against the Board and Superintendent for failure to train and supervise their school officials to prevent aggressive behavior and the risks of danger to the students, including suicide.

### 3. The Complaint States a Claim against Defendants Cincinnati Board of Education and Ronan for their Ratification of the Unconstitutional Acts of Defendants Jackson and McKenzie.

Plaintiffs allege in their complaint a third basis for municipal liability against the Board and Superintendent for failing to conduct a meaningful investigation of Defendants Jackson's and McKenzie's actions, which would make the Board and Superintendent liable for Jackson's and McKenzie's substantive due process violations. Compl. ¶ 151, 186, 188. Defendants mention this claim but did not move to dismiss it. Motion, RE 13, PageID# 100.

Plaintiffs argue that the Board and Superintendent's failure to investigate the constitutional violations by Defendants Jackson and McKenzie ratified their unconstitutional actions and thereby made their actions official Board policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In *Praprotnik*, the court explained how a decision by the final policy maker reviewing a single incident of alleged misconduct can bind a municipality:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their *ratification* would be chargeable to the municipality because their decision is final.

*Id.* at 127 (emphasis added).

In other words, when the final municipal policymaker reviews the employee's discretionary actions, he measures those actions against the municipality's official policies. If he approves the employee's actions and does not discipline or reprimand the employee, his approval is final and demonstrates that the employee followed official policy. In a ratification case, therefore, the municipality's liability is not based on the policymaker's *ex post facto* approval of the employee's actions. Rather, it is based on the municipality's own policy, which the

32

employee followed in carrying out his actions. The official's ratification merely confirms that the employee was acting according to official policy.

Ratification can also occur when the policymaker fails to meaningfully investigate the alleged unconstitutional conduct. *Wright v. City of Canton*, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001). *Wright* based its reasoning on two earlier Sixth Circuit cases. In *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989), the Court held that "the Sheriff's failure to investigate *this incident*," i.e. the incident in which the instant plaintiff was denied adequate medical care, "and punish the liable parties" in effect ratified those actions and adopted them as the county's own. In *Marchese v. Lucas*, 758 F.2d 181, 187-88 (6th Cir. 1985), the Court found that the sheriff had failed to conduct any "serious investigation" of the plaintiff's beating, and thus failed to identify any wrongdoing, much less punish any wrongdoers. The sheriff's "ratification" of his employees' actions was sufficient to make the county liable. *Id.* Thus, "[E]vidence that a municipality inadequately investigated an alleged constitutional violation can be seen as evidence of a policy that would condone the conduct at issue." *Otero v. Wood*, 316 F.Supp.2d 612, 627–28 (S.D. Ohio 2004).

The Complaint alleges that neither the Board nor Superintendent Ronan conducted any investigation into the alleged constitutional misconduct of Jackson or McKenzie. Compl. ¶ 186. Therefore, the Complaint sufficiently states a claim for municipal liability.

### E. Plaintiffs have Properly Alleged State Tort Claims Against Defendants Jackson and McKenzie.

#### 1. Plaintiffs' Complaint raises sufficient allegations to establish that Defendants Jackson and McKenzie were reckless and therefore they are not immune from liability on the state tort claims.

In order to overcome the immunity defense available to Defendants Jackson and McKenzie under O.R.C. § 2744.03(A)(6), Plaintiffs must establish that Defendants' actions were

reckless.  Recklessness can be defined as conduct that "is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 388 (2012).  The Supreme Court of Ohio further explained reckless conduct as a "substantial and unjustifiable risk of harm to others and a conscious disregard or indifference to the *risk*, but the actor does not desire harm" *Id.*, citing *Black's Law Dictionary* (emphasis in original).  This includes a failure to act in "contravention of a duty" when the actor knows, or has reason to know, facts that "would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent."  *Fowler v. Williams Cty. Commrs.*, 113 Ohio App.3d 760, 775, 682 N.E.2d 20 (6th Dist. 1996) (citing *Tompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990)). The facts that prove deliberate indifference; therefore, also prove recklessness under § 2744.  *McCullum v. Tepe*, No. 1:08-CV-387, 2011 WL 13186318, *12 (S.D. Ohio March 28, 2011).

Whether behavior constitutes reckless or wanton conduct, so as to fall within the exception to statutory immunity, is ordinarily a factual question for a jury to decide. *Galloway v. Chesapeake Union Exempted Village Schools Bd. of Educ.*, No. 1:11-cv-850, 2012 WL 526894 6, *10 (S.D. Ohio October 23, 2012) (citing *Fabrey v. McDonald Police Dep't.,* 70 Ohio St.3d 351, 639 N.E.2d 31, 35 (Ohio 1994)).  A motion to dismiss can only be granted if the pleadings are "'devoid of evidence tending to show that the political subdivision employee acted wantonly or recklessly.'" *Galloway* at *10 (quoting *Irving v. Austin,* 138 Ohio App.3d 552, 556, 741 N.E.2d 931 (6th Dist. 2000). "At this early stage of the proceedings, Plaintiffs do not need to show with great specificity how each Defendant contributed to the alleged violations; rather,

Plaintiffs must only state allegations generally so as to provide notice as to the nature of the injury." *Galloway* at * 10 (citing *Alexander v. Lawrence Cnty. Bd. of Dev. Disabilities,* No. 1:10cv697, 2012 WL 831769 at *12, (S.D. Ohio Mar. 12, 2012).

Plaintiffs' Complaint alleges that all of Defendants' actions were reckless, as well as deliberately indifferent. Compl. ¶¶ 3-4, 60, 99-120, 109, 114, 133-151, 149, 158, 187, 191, 193-195. Since the same facts that satisfy a finding of deliberate indifference support a finding of recklessness under O.R.C. § 2744, the same arguments in section B (1) (c), *supra*, support a finding that recklessness had been sufficiently stated in the Complaint to support tort claims against Defendants' Jackson's and McKenzie. Therefore, the state law claims should not be dismissed.

### 2. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Wrongful Death.

To maintain a wrongful death action, a plaintiff "must show 1) the existence of a duty… 2) a breach of that duty, and 3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Heath Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). It "is well settled Ohio law that school officials are bound only under the common law to exercise that care necessary to avoid reasonably foreseeable injuries to their students, unless a more specific obligation is assumed." *Estate of Smith v. Western Brown Local School Dist.*, 2015-Ohio-154, 26 N.E.2d 890, 899 (12th Dist.). The test for foreseeability of an injury "is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is the probable result of the performance or nonperformance of an act." *Id.* at 899-900. In determining whether the defendant should have anticipated the injury, only those circumstances which the defendant

perceived, or should have perceived, at the time of his respective actions should be considered. *Menifee v. Ohio Welding Prods., Inc*., 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

In *Mohat v. Horvath*, 11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, 2013 WL 5450296, the plaintiff's complaint successfully stated a wrongful death claim against a teacher who knew a student was being bullied and harassed for several months. Parents had sued the teacher who witnessed the bullying but failed to intervene. They alleged the failure to intervene caused their child's suicide. The court found that these allegations stated a claim for relief that were plausible on its face. Similar allegations are made against Jackson and McKenzie.

> **a. Defendants Jackson and McKenzie breached their duty to protect Gabriel Taye.**

Defendants knew that suicide is a foreseeable injury to students who are bullied. The Defendants attached to their Motion the school district's anti-bullying and harassment policy. Their reliance on this policy establishes that Principal Jackson and McKenzie knew that Carson students were at risk of suicide from bullying and aggressive behavior. Compl. ¶ 100. The defendant's policy states:

> **SUICIDE PREVENTION**
> **Students face a wide range of issues and concerns that can have a substantial impact on their ability to learn and on their engagement with school. Perhaps the most severe issue faced by students is that of depression accompanied by suicidal ideation. The school district takes these mental health issues seriously. To further this objective, the Superintendent shall develop and implement administrative guidelines whereby members of the professional staff understand how to use an intervention procedure.**

Compl. ¶ 102; Exhibit A to Defendants' Motion, RE 13, PageID# 122.

This policy was created in response to the known risk of suicide from bullying and other forms of aggressive behavior. Compl. ¶ 102. While this establishes it was foreseeable to Jackson and McKenzie that suicide was a risk from bullying and aggressive behavior, the Complaint makes further allegations including that these defendants fostered and covered up bullying and

aggressive behavior at Carson (*Id.* at ¶¶ 19-60); that they knew Gabe was a victim of escalated violence and injuries (*Id.* at ¶¶ 65-88); that Defendants were aware of the link between bullying and suicide in school children (*Id.* at ¶ 98); and they knew of the risk bullying and aggressive behavior had on Carson students, including the risk of suicide *Id.* at (¶ 100). The Complaint further alleges that defendants' actions placed Gabe specifically at risk of further bullying, of emotional distress, of suicidal ideation. Compl. (*Id.* at ¶ 140).

Thus, the Complaint states sufficient allegations to state a claim of wrongful death against Principal Jackson and Assistant Principal McKenzie. It was reasonably foreseeable that students experiencing bullying and aggression at Carson would commit suicide, and Defendants did in fact foresee this, given the Board Policy on bullying included a section on suicide prevention. As a result, Defendants McKenzie and Jackson had a duty to protect students like Gabe from bullying and aggression. Defendants breached their duty by failing to take any action to protect Gabe, and further, by actively covering up the danger Gabe was experiencing at Carson. Therefore, the wrongful death claim should not be dismissed.

### b. Suicide is not an intervening cause to prevent Defendants from being liable for Gabriel Taye's death.

Defendants Jackson and McKenzie argue that Gabe's suicide broke the causal connection between their wrongful acts and Gabe's death. Motion at Page ID # 109. However, that argument is unavailing with regard to these Defendants. When suicide is foreseeable, suicide is not an intervening superseding cause that destroys causation. *Fischer v. Morales*, 38 Ohio App.3d 110, 112, 526 N.E.2d 1096 (10th Dist. 1987). Foreseeability of harm generally depends on the defendant's knowledge. *Thompson v. Ohio Fuel Gas Co.*, 9 Ohio St.2d 116, 224 N.E.2d 131 (1967). When determining whether a defendant should have recognized the suicide risks involved, one should focus on "only those circumstance perceived by the defendant or those that

should have been perceived at the time of the defendant's actions." *Thomas v. Parma*, 88 Ohio App.3d 523, 527, 624 N.E.2d 337 (8th Dist. 1993). See *Probst v. Consolidated Care, Inc.* No. 06-594, 2008 WL 320148, *6 (S.D. Ohio February 4, 2008) (denying summary judgment to defendants on wrongful death claim involving suicide of a youth in detention since there were sufficient facts for a jury to find the youth's suicide was foreseeable).

Therefore, the question is whether Gabe's suicide was foreseeable by Defendants. The same reasons that establish that suicide is a foreseeable risk from bullying explained in section F (2) (a), *supra*, support the argument that Gabe's suicide did not break the causal connection between Defendants' breach of their duty to protect Gabe and his death.

### c. Plaintiff's Complaint states sufficient facts to support causation

Defendants' argue that the Complaint does not "point to any acts or omissions by Jackson or McKenzie that caused Taye's death." Motion at Page ID# 109. However, Defendants agree the Complaint states that Gabe was bullied into suicide. Compl. ¶¶ 94-103; 122. The Complaint explains that Jackson and McKenzie's actions in covering-up the aggression at Carson, bullying against Gabe, and his injuries from the bullying caused his death. In addition, defendants' actions that encouraged and fostered the violent environment at Carson; their actions in failing to follow District polices in reporting, preventing, and investigating bullying; and their concealing the nature and extent of Gabe's injuries during the bathroom attack, all caused the wrongful death of Gabriel Taye. Compl. ¶¶ 19-60; 65-93, 99-120, 133-151, 152-158, 159, 189. For these reasons, the Complaint sufficiently establishes Jackson and McKenzie's actions caused Gabriel Taye's death.

### 3. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Intentional Infliction of Emotional Distress.

Under Ohio law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) of intentional or reckless character; and (3) that causes severe emotional distress. *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983) (abrogated on other grounds by *Welling v. Weinfeld,* 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007)).

To survive a motion to dismiss, a plaintiff "does not need detailed factual allegations," but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). An allegation that as "direct and proximate cause of Defendants' intentional, reckless and/or negligent infliction of emotional distress Plaintiffs have suffered severe humiliation, distress, depression, and anxiety" is sufficient to state a claim. *Ponder v. Bank of America, N.A.*, No. 1:10-CV-00081, 2011 WL 8307207, *7 (S.D. Ohio March 8, 2011. A defendant's argument about the severity of a plaintiff's emotional distress "requires the Court to make determinations of fact not appropriate for resolution at the pleading stage." *Id*.

Defendants first argue that Plaintiffs "plead no facts" that Jackson or McKenzie intended to cause harm to plaintiffs or knew their actions would cause harm to Plaintiffs. Motion at PageID#110. Defendants' argument is without merit. The Complaint states throughout allegations of Defendants' unconstitutional conduct that was deliberately indifferent to the Plaintiffs (see section B (1) (c) *supra*). The Complaint also clearly states that Defendants' actions were reckless, which requires they know their actions were taken in conscious disregard of or indifference to a known or obvious risk of harm to another. It states that "Defendants

Jackson and McKenzie have, by their extreme and outrageous conduct, intentionally or recklessly inflicted severe emotional distress on Gabriel Taye, Cornelia Reynolds, and Benyam Taye." Compl. ¶ 191. The Complaint goes farther to state that these Defendants knew that suicide was a risk of bullying and aggressive behavior in school. Despite that knowledge, Defendants encouraged bullying. Defendants knew that Gabe was at risk of injury from losing consciousness and was in need of immediate medical care. Despite that knowledge, Defendants did not call 911 for help. Defendants knew that the bathroom was unsafe and secluded. Despite that knowledge Defendants did not supervise the bathroom or monitor the cameras. Defendants knew that covering-up the danger Gabe was in increased the danger to him. Despite that knowledge Defendants concealed the bathroom attack. Compl. ¶¶ 98, 100, 152, 133-136. The Complaint summarizes Defendants' actions:

> These affirmative acts of covering up and harboring the extent of the environment of aggressive behavior that Carson students experienced daily; of the pattern of aggressive behavior toward Gabe generally; of the bathroom attack and injury to Gabe and others, all placed Gabe specifically at risk of further bullying, of emotional distress, of suicidal ideation, and of side effects of an untreated serious head injury.

Compl. ¶ 140. Therefore, the Complaint sufficiently establishes that Defendants knew their actions would cause severe emotional distress to Gabe and his parents.

Defendants' second argument is that their actions were not extreme or outrageous. The Complaint details Jackson's and McKenzie's actions in covering up the danger, encouraging bullying and aggressive behavior, and concealing the bathroom attack.

> CPS Defendants' complete failure to inform his parents of the extent and cause of his injuries was deliberately indifferent to Gabe's safety while he was in CPS's custody; created a special relationship with Gabe by deliberately withholding information relevant to his safety from his parents and by doing so, they took on a higher duty to protect Gabe. Defendants had time to deliberate before choosing a course of action; they had no legitimate governmental purpose for covering up Gabe's injuries and assault; their actions shock the conscience; and their actions were negligent, knowing, deliberately indifferent, reckless, extreme, and outrageous

Compl. ¶ 158. Defendants engaging in a cover-up alone, is extreme and outrageous. *Doe v. Roman*, 5th Dist. Tuscarawas No. 2001-AP-05-0044, 2002-Ohio-6671, 2002 WL 31732468, ¶41. Combined, all their actions deliberately created a snake pit of relentless danger that eight-year-old Gabriel Taye was forced to try to survive without protection from Defendants or his parents. Gabe's Principal's and Assistant Principal's actions are sufficiently extreme and outrageous to survive a motion to dismiss.

Finally, Defendants attempt to argue that the Complaint does not allege that Defendants' actions proximately caused Gabe's emotional distress or his parents. To the contrary, the Complaint sufficiently alleges that Defendants Jackson's and McKenzie's actions proximately caused the injuries to Gabriel Taye and his parents.

> ¶ 160.  Defendants' actions caused Gabe's severe emotional distress. … Gabe suffered physical injuries and associated severe mental and emotional distress from being a victim of and witness to bullying, violence, and student-on-student aggression at Carson, as well as from the effects he suffered from being bullied and attacked at school
>
> ¶ 161.  This severe mental and emotional distress was a substantial factor that lead to his suicide, the ultimate personal physical injury.
>
> ¶ 165.  Gabe's mother's emotional distress, resulting from her sensory and contemporaneous observance of Gabe's injuries and death, was severe.
>
> ¶ 166.  Both Gabe's mother and father have suffered severe emotional distress as a result of his tragic and very untimely death.
>
> ¶ 171.  Gabe's parents' distress, circumstances, and responses were reasonably foreseeable.

¶ 172. Plaintiffs the Estate of Gabe Taye, Ms. Reynolds, and Mr. Taye have suffered . . .

damages as a result of Defendants' wrongful conduct as described above . . . .

[including mental anguish].

¶ 191. Defendants Jackson and McKenzie have, by their extreme and outrageous

conduct, intentionally or recklessly inflicted severe emotional distress on Gabriel

Taye, Cornelia Reynolds, and Benyam Taye.

Gabriel Taye's emotional distress was proximately caused by Defendants' actions and was so severe that he committed suicide. *Barhouma v. Athenian Assisted Living. Ltd.*, No. 1:14-cv-2214, 2015 WL 5437786, *8 (N.D. Ohio Sept. 15, 2015) (denying summary judgment on IIED claim because of genuine issue of material fact regarding whether Defendant's conduct was "one of the stressors" behind suicide attempt). The Complaint establishes that the unsupervised snake pit at Carson was the result of Defendants Jackson's and McKenzie's actions creating a "prison like" environment for Gabe from which he had no possibility of escape and of which his parents had no knowledge until after he was dead. The resulting severe emotional distress to Gabe and his parents was foreseeable and unquestionably caused by the Defendants' actions.

For these reasons, Plaintiff's intentional infliction of emotional distress claim should not be dismissed.

### 4. Plaintiffs' Complaint States a Claim against Defendants Jackson and McKenzie for Negligent Infliction of Emotional Distress.

Defendants argue that Ms. Reynolds negligent infliction of emotional distress ("NIED") claim for being a bystander to her son's suicide fails only if the wrongful death claim fails, since the NIED is derivative of the wrongful death claim. Motion to Dismiss, R. 13, PageID# 114. They make no other arguments against this claim. As stated above, the Complaint alleges

sufficient facts to support a claim for wrongful death. Therefore, Ms. Reynold's NIED claim should not be dismissed.

Defendants argue that the parents cannot bring a NIED claim for being bystanders to the bathroom attack on their son. Motion to Dismiss, R. 13, PageID# 114-115. To prevail on a claim for negligent infliction of emotional distress arising out of witnessing trauma to another, a plaintiff must prove: (1) the plaintiff was a bystander; (2) the plaintiff reasonably appreciated the peril that took place, whether or not the victim suffered actual physical harm; and (3) the plaintiff suffered serious emotional distress as a result of this cognizance. *Paugh v. Hanks*, 6 Ohio St.3d 72, 80, 451 N.E.2d 759 (1983).

The emotional distress suffered must also be reasonably foreseeable. In *Paugh*, the Court delineated three non-exclusive factors to consider when determining whether the injuries were reasonably foreseeable: (1) whether the plaintiff was located near the scene of the accident, as contrasted to one who was a distance away; (2) whether the shock resulted from a contemporaneous observance, as contrasted to learning of the accident from others after its occurrence; (3) whether the plaintiff and victim were closely related, as contrasted with a distant relationship. *Id.* "The high court expressly recognized, and accorded greater weight to the fact, that the bystander/plaintiff may be 'closely related' to the victim." *Cline v. Stein*, 9th Dist. Wayne No. 13CA0052, 2015-Ohio-2979, ¶ 26, citing *Paugh* at paragraph three of the syllabus.

Defendants rely heavily on *Dalton v. Fort Hamilton-Hughes Mem'l Hosp.*, 12th Dist. Butler No. CA97-09-174, 1998 WL 191418 (April 20, 1998). Contrary to Defendants' comparison of the *Dalton* case to the case at bar, Plaintiffs were not directly given a copy of the video of the bathroom incident, or even informed of the incident. Compl. ¶ 143. Nor did Defendants make Plaintiffs aware of the circumstances surrounding Gabe's wellbeing prior to his

death. Compl. ¶¶ 73-74.   In *Dalton*, the plaintiff knew that her husband had undergone surgery and knew that he was diagnosed with cancer at the time that she was given and viewed the recording. Here, Plaintiffs were not afforded such knowledge. Plaintiffs learned of the existence of the video months after Gabe's death.   Unlike in *Dalton*, the Defendants unexpectedly and without warning released the redacted security footage of the bathroom incident publicly and the media displayed it *ad nauseum*.   The *Dalton* plaintiff was given a copy of the recording and then voluntarily viewed the recording on her own terms. Here, Plaintiffs did not receive the video but were able to see it publicly after the school released it.   These grieving Plaintiffs were unwitting bystanders to the incident which was captured live via Carson's surveillance system. Compl. ¶¶ 168-71. Thus, Ms. Reynolds's and Mr. Taye's NIED claims should not be dismissed.

### 5.   The Parents' loss of consortium claim is properly stated in the Complaint.

A "parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child for loss of filial consortium."  *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251, 617 N.E.2d 1052 (1993).  This "includes services, society, companionship, comfort, love and solace." *Id*.  A loss of consortium claim is "derivative in that the claim is dependent upon the Defendant's having committed a legally cognizable tort."  *Bowen v. Kil-Kare, Inc*., 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992).  Since the parents have alleged that Defendants are liable for several torts against Gabe and themselves, they may also allege that they suffered an injury in the loss of consortium, society, affection, assistance, and parental fellowship of their dearly beloved son. This claim should not be dismissed.

## F. Plaintiffs have Properly Alleged a Violation of O.R.C. §2151.421(A).

Defendants do not dispute their legal requirements as mandated reporters of child abuse. They complain that they should not have to report the abuse they saw on the video of the attack on Gabriel Taye when he tried to enter the boy's bathroom. They offer no authority for their narrow interpretation of Ohio law. Under the Ohio statute mandating reporting of suspected child abuse or neglect, "[n]o person… who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child… has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge." O.R.C. 2151.421(A)(1)(a). This applies to any "school teacher, school employee" and "school authority." O.R.C. 2151.421(A)(1)(b).

The report required by statute is a written report, made to the public children services agency or to a municipal or county peace officer. O.R.C. 2151.421(B)-(C). It must include the names and addresses of the child and the child's parents or person with custody, the child's age and nature of the injuries, abuse, or neglect that is known or suspected, and any other information such as results of medical exams that would be helpful in establishing the cause of the injury. O.R.C. 2151.421(C). When a municipal or county peace officer receives a report, they shall refer the report to the appropriate public children services agency. O.R.C. 2151.421 (E)(1). When the public children services agency receives a report, they shall investigate the report. O.R.C. 2151.421(G)(1).

An "abused child" is not limited to children abused in the family setting. *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399 (2004). Plaintiffs have alleged that

Jackson and McKenzie knew that Gabe was attacked in the bathroom and that the attack constituted child abuse against Gabe. Compl. ¶ 82, 150, 200. Defendants did not report the abuse as required by the statute. Compl. ¶ 150, 200.

Defendants argue that finding Gabe on the bathroom floor is not sufficient to put Defendants on notice he was abused. However, they cannot ignore the Complaint allegations of what Defendants knew from the video evidence of the aggressor's behavior in the bathroom toward all the students, the extent of Gabe's injuries, and their failure to call 911 per their medical protocols.

Defendants also argue that the Plaintiffs give no indication "of what child services could or would have done if they had been dispatched to the Carson Elementary bathroom." Motion at Page ID# 117. Children services or law enforcement's response is statutory. The damage Defendants' failure to report child abuse is clear: Gabriel Taye suffered further injury, including mental anguish and severe emotional injury prior to his death. Compl. ¶ 201.

There is no dispute that as school employees, Defendants Jackson and McKenzie were mandatory reporters. Thus, their failure to report Gabe's abuse violated §2151.421(A)(1)(a) and under §2151.421(N), subjects them to civil liability. Since the Complaint states a claim for damages for the failure to report child abuse, it should not be dismissed.

### G. Plaintiffs have Properly Alleged a Claim of Spoliation of Evidence.

In Ohio, where a party to a lawsuit destroys evidence, the opposing party may bring a tort claim of spoliation. To prove interference with or destruction of evidence (spoliation of evidence), a plaintiff must prove all of the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case,

(4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc*., 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

Plaintiffs have alleged that litigation was probable and foreseeable. Not only had a student died following a violent incident at Carson, a police detective was investigating his death and Gabe's mother was publicly questioning whether bullying at school contributed to his death. In addition, Plaintiff's counsel sent the first request for records to Defendants on February 7, 2017, less than two weeks after Gabe's death. Defendants had knowledge that litigation was pending or probable.

Regarding the surveillance videos, Plaintiffs have alleged that the destruction was willful, for the purpose of covering up the danger Gabe was in while at school at Carson. Plaintiffs have also alleged how this will and has disrupted their case. They have had to go to additional lengths to try to recover evidence and will face more difficulty to prove their claims without the destroyed video evidence. That disruption and the resulting damages are proximately caused by the destruction of the evidence.

Regarding the evidence of cause of death, Plaintiffs have alleged that withholding information about Gabe was done for the purpose of covering up the danger Gabe was in while at school at Carson. Plaintiffs have also alleged that this will and has disrupted Plaintiffs' case because a complete autopsy could not be performed. Plaintiffs attempted to exhume Gabe's body for re-examination, but too much time had passed for re-examination to be successful. Without a complete autopsy based on all the facts, Plaintiffs were deprived of evidence to prove their claims. This disruption and the resulting damages are proximately caused by the withholding of this evidence.

Defendants move to dismiss this claim solely because it is derivative of the other tort claims. However, the case they cite for this proposition, *Bae v. Dragoo & Assoc., Inc*., 156 Ohio App. 3d. 103, 113, 2004-Ohio-544, 804 N.E.2d 1007 (10th Dist. 2004) found the spoliation claim was not properly pled and that there was no negligence, therefore the third element of spoliation was not met; it did not hold spoliation is derivative of other tort claims. Nonetheless, as explained *supra*, Plaintiffs' compliant has stated several tort claims, therefore the spoliation claim should not be dismissed.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Motion to Dismiss be denied in full and the case be permitted to proceed to discovery.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to SDOH Local Rule 7.1 (b), Plaintiffs respectfully request the Court schedule oral argument on the Motion to Dismiss. Oral argument is necessary for the fair resolution of the case. The Plaintiffs request oral argument, so they can answer the Court's questions and articulate the complex and rare constitutional issues that are at stake in this case. In addition, oral argument is appropriate because of the public importance of the issues regarding the danger children face at Carson Elementary School.

Respectfully submitted,

/s/ Jennifer L. Branch
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff Estate of Gabriel
Taye and Cornelia Reynolds
Alphonse A. Gerhardstein (0032053)
Janaya Trotter Bratton (0084123)
Attorneys for Plaintiff Estate of Gabriel Taye
and Cornelia Reynolds
Gerhardstein & Branch Co. LPA

441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
Tel: (513) 621-9100
Fax: (513) 345-5543
jbranch@gbfirm.com
agerhardstein@gbfirm.com
jtbratton@gbfirm.com

Carla L. Leader (0081597)
Attorney for Plaintiff Estate of Gabriel Taye and
Cornelia Reynolds
The Law Office of Carla Loon Leader, LLC
420 W. Loveland Avenue, Suite 109
Loveland, OH  45140
Telephone: (513) 909-4332
Fax: (513) 206-9994
carla@carlaleader.com

/s/ Michele L. Young
Michele L. Young (0062011)
Gregory S. Young (0033617)
Christine M. Hammond (0093647)
Attorneys for Plaintiff Estate of Gabriel Taye
and Benyam Taye
Gregory S. Young Co., LPA
600 Vine Street, Suite 402
Cincinnati, OH  45202
Telephone: (513) 721-1077
Fax: (513) 721-1919
myoung@younginjurylaw.com
chammond@younginjurylaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017 a copy of the foregoing pleading was filed

electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an

appearance by operation of the Court's electronic filing system.  Parties may access this filing

through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice

of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has

not yet entered an appearance electronically.

s/ Jennifer L. Branch
Attorney for Plaintiffs