# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| KAREN MEYERS, *et al.*, | : | Case No. 1:17-cv-521 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| CINCINNATI BOARD OF | : | |
| EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This civil action is before the Court upon the Plaintiffs' motion to amend the complaint (Doc. 21) and the parties' responsive memoranda (Docs. 24 and 25), and Cincinnati Public School Defendants'[1] motion to dismiss Plaintiffs' complaint (Doc. 13) and the parties' responsive memoranda (Docs. 19 and 20).

## I.    FACTS <u>AS ALLEGED</u> BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiffs; and (2) take all well-pleaded factual allegations as true.  *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

---

[1] Cincinnati Public School Defendants ("CPS Defendants") refers collectively to Defendants Cincinnati Board of Education; Mary Ronan, Superintendent of CPS at the relevant time; Ruthenia Jackson, principal of Carson Elementary School ("Carson") at the relevant time; Jeffrey McKenzie, assistant principal of Carson at the relevant time; and Margaret McLaughlin, who was added as a defendant in the amended complaint and was the Carson school nurse at the relevant time.

Gabriel Taye was an eight-year-old, third-grade student at Carson during the 2016–2017 school year. After coming home from school on January 26, 2017, Taye committed suicide in his bedroom. (Doc. 21-1[2] at ¶¶ 90–94). Two days before his suicide, Tyus was knocked unconscious by a violent bully in a Carson bathroom.[3] Taye lay on the bathroom floor, unconscious, for over seven minutes while other students taunted and kicked him. (*Id.* at ¶¶ 76–78). Eventually Defendant McKenzie responded to the incident in the bathroom. Taye was still lying on the floor unconscious and motionless when Defendant McKenzie arrived and simply stood over Taye. Other Carson staff including Defendant Jackson arrived later. Shortly after Defendant McLaughlin arrived, Taye regained consciousness. (*Id.* at ¶¶ 79–80). Nurse McLaughlin evaluated Taye, but did not call 911, even though the school's head injury nursing protocol required an emergency medical response whenever a student was unconscious/unresponsive for over one minute. (*Id.* at ¶ 102). An hour after the incident McLaughlin called Taye's mother, Cornelia Reynolds, and misrepresented to her that Taye had fainted. Reynolds asked McLaughlin if Taye needed to go to the hospital, but she was told that he needed no further medical treatment. Reynolds was not told that Taye had been knocked unconscious for over seven minutes. (*Id.* at ¶¶ 81–82). Reynolds asked Taye what happened at school, but all Taye could remember was that he fell and that his stomach hurt. Taye suffered from stomach pain, nausea, and vomiting that night

---

[2] As the Court discusses *infra*, the amended complaint (Doc. 21-1) is the operative complaint.

[3] The incident in the bathroom was captured by a security camera and the footage has been filed with the Court. (Doc. 4, Ex. A).

and Reynolds took him to the hospital. The hospital diagnosed him with likely gastrointestinal issues, but did not evaluate Taye for head trauma because the Carson Defendants[4] had told Reynolds that he had fainted, not that he had been knocked unconscious. (*Id.* at ¶¶ 84–85).

Taye went back to school on January 26, 2017, the day of his death. On that day, Taye suffered another incident of bullying in the school bathroom when two students stole his water bottle and flushed it down the toilet. Taye reported the incident to a teacher, but that teacher was unaware of the seriousness of the incident because the Carson Defendants had covered up the previous attack on Taye. (*Id.* at ¶¶ 88–90). Taye killed himself after returning home from school that night.

Plaintiffs allege that Taye had been a victim of bullying and aggressive behavior throughout his years at Carson. Moreover, a number of incidents in which Taye was physically assaulted were concealed from his parents by the Carson Defendants. (*Id.* at ¶¶ 62–75).

Plaintiffs allege that CPS Defendants fostered and covered up bullying and other aggressive behavior at Carson and created an unsafe environment for Carson students. (Doc. 21-1 at ¶¶ 20–61). Pursuant to O.R.C. § 3313.666, Defendant CPS was required to report any incidents of bullying. In the period of time that represented Taye's first half of third grade, Carson reported zero (0) bullying incidents. In the period of time that would have represented the second half of Taye's third-grade school year, Carson reported four

---

[4] "Carson Defendants" refers collectively to Defendants Jackson, McKenzie, and McLaughlin.

(4) bullying incidents, but none involving Taye, including the bathroom attack. (*Id.* at ¶ 29). Plaintiffs allege that there were significantly more bullying incidents at Carson, but those incidents were covered-up by the CPS Defendants.

Plaintiffs allege that Carson behavior logs of ten students contain information of multiple occurrences of bullying and aggressive behavior, none of which were reported as bullying. The behavior logs specifically refer to several incidents as "bullying." (*Id.* at ¶¶ 32, 33). Other incidents that were documented, but not reported as bullying, include the punching and choking of students; verbal and physical threats, including threatening to sexually assault a student at gunpoint; and racist tormenting. (*Id.* at ¶¶ 34–54). Plaintiffs also highlight the bullying at Carson through statements of other parents with children at Carson who attest that officials at Carson were unresponsive to bullying at the school. (*Id.* at ¶¶ 55–59). One Carson parent states that CPS Defendants were aware that her child had expressed suicidal thoughts twice in school journal and she was not notified until the third time he expressed suicidal ideations. (*Id.* at ¶ 59).

## II.     STANDARD OF REVIEW

### A.     Motion to Amend

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). In deciding a party's motion for leave to

amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments . . . ." *Coe*, 161 F.3d at 341. In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

## B. Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a

legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Motion to Amend the Complaint (Doc. 21)

In response to CPS Defendants' motion to dismiss, Plaintiffs filed a response in opposition (Doc. 19) and later a motion to amend with the proposed amended complaint. (Doc. 21; Doc. 21-1). Plaintiffs propose to amend the complaint in the following ways: (1) add Carson nurse, Margaret McLaughlin, as a defendant and add a claim against her for negligence by a nurse (Count VII) and (2) add a new basis for a finding of municipal

liability against the Defendants Cincinnati Board of Education and Superintendent Ronan (collectively "Board Defendants").

CPS Defendants argue that Plaintiffs' motion to amend the complaint should be denied because Plaintiffs' proposed amendments are futile and would not survive CPS Defendants' pending motion to dismiss.[5] *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)) ("[L]eave to amend may be denied where the amendment would be futile."); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.")). Accordingly, this Court's analysis of Plaintiffs' motion amend the complaint is dependent upon the application of the arguments in Defendants' motion to dismiss to Plaintiffs' proposed amended complaint.

For the reasons set forth below, some claims in Plaintiffs' proposed amended complaint are not futile and survive the motion to dismiss. Furthermore, there is no apparent undue delay, bad faith, or dilatory motivation on the part of Plaintiffs, nor does there appear to be any prejudice to CPS Defendants in allowing amendment. Accordingly, Plaintiffs' motion to amend the complaint (Doc. 21) is granted and Exhibit 1 to Plaintiffs' motion to amend the complaint (Doc. 21-1) is the operative complaint. <u>Plaintiffs shall file the amended complaint forthwith as a separate docket entry.</u>

---

[5] CPS Defendants do not directly address whether Count VII against Nurse McLaughlin should be dismissed; instead they argue that the proposed amended complaint adds "no new claims or substantive allegations about the Defendants who have already moved to dismiss Plaintiff's Complaint." (Doc. 24 at 1).

**B.     Motion to Dismiss**

In lieu of an answer, CPS Defendants have filed a motion to dismiss all of Plaintiffs' claims against CPS Defendants, although, as noted, CPS Defendants do not address Count VII of the amended complaint against Defendant McLaughlin. The Court will apply the arguments in Defendants' motion to dismiss (Doc. 13) and Defendant's opposition to Plaintiff's motion to amend (Doc. 24) to the Court's analysis of the amended complaint.  (Doc. 21-1).

### 1.  Substantive Due Process (Counts I–III)

To allege adequately a § 1983 claim, Plaintiffs must plead facts that show the deprivation of a constitutional right caused by someone acting under color of state law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006). Generally, "a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  However, Courts recognize exceptions this rule including the "state-created danger" exception, the "special relationship" exception, or the "shocks the conscience" exception.  Here, Plaintiffs allege that CPS Defendants violated Taye's substantive due process rights by creating a special danger to Taye (a "state-created danger" claim), by failing to protect Taye after depriving his parents' ability to do so (a "special relationship" claim), and by engaging in acts or omissions that shock the conscience (a "shocks the conscience" claim).  The Court will analyze each of these claims in turn.

### a. State-Created Danger (Count I)

In order to succeed on a claim under the "state-created danger" exception, Plaintiffs must show:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).

### i. Affirmative Act

On the first element, CPS Defendants argue that Plaintiffs have not alleged any affirmative acts on the part of CPS Defendants, but instead have only alleged omissions or failures to act. Omissions and failures to act are not affirmative acts. The Sixth Circuit has clarified that failing to act in the school bullying context does not satisfy the element of an affirmative act. *Stiles ex rel. D.S. v. Grainger Cty.*, Tenn., 819 F.3d 834, 854-55 (6th Cir. 2016) ("[f]ailing to punish students, failing to enforce the law, failing to enforce school policy, and failing to refer assaults to [the school resource officer] are plainly omissions rather than affirmative acts.")

Yet, here, Plaintiffs do not merely allege that CPS Defendants failed to communicate with Taye's parents about the attack in the bathroom or bullying in Carson. Instead, Plaintiffs allege both that (1) CPS Defendants <u>affirmatively misrepresented</u> to

Taye's mother that he had fainted at school even though the CPS Defendants were aware that Taye had been a victim of bullying and had been knocked unconscious (Doc. 21-1 at ¶ 82) and (2) concealed information regarding bullying at Carson from Plaintiffs and others. (*Id.* at ¶ 3). While the Sixth Circuit has not specifically ruled on whether affirmative misrepresentations and concealment are affirmative acts, other courts have found that they are affirmative acts in a state-created danger analysis. *See, e.g.*, *Kuyper v. Bd. of Cty. Comm'rs of Weld Cty.*, No. 09-cv-342, 2010 WL 1287534, at *6 (D. Colo Mar. 30, 2010) (finding that affirmative misrepresentations were affirmative acts in a state-created danger analysis); *Briscoe v. Potter*, 355 F. Supp. 2d 30, 44 (D.D.C. 2004) (same); *D.N. ex rel. Nelson v. Snyder*, 608 F. Supp. 2d 615, 627 (M.D. Pa. 2009) (finding that concealment was an affirmative act in a state-created danger analysis); *see also Doe v. Allentown School District*, 2007 WL 2814587, at *6 (E.D. Pa. Sept. 21, 2007) (noting that concealment could constitute an affirmative act for purposes of the state-created danger theory). Moreover, the Sixth Circuit has held that mere words by a school official can constitute an affirmative act. *Richardson v. Huber Heights City Sch. Bd. of Educ.*, 651 F. App'x 362, 363 (6th Cir. 2016) (finding that a coach telling a high school athlete "take care of it," regarding a fight between teammates, constituted an affirmative act). Accordingly, the Court finds that, in the light most favorable to the Plaintiffs, CPS Defendants' affirmative misrepresentation to Taye's mother about the bathroom attack and concealment of bullying at Carson constitute affirmative acts.

Having determined that CPS Defendants committed an affirmative act, the Court must consider " whether the individual was safer before the state action than after it." *Stiles*, 819 F.3d at 854 (6th Cir. 2016). Here, Plaintiffs allege that CPS Defendants' acts increased danger to Taye because they prevented Taye's parents from getting an accurate medical diagnosis as Taye was not checked for head trauma. Moreover, the CPS Defendants' acts caused Taye's mother to send Taye back to school two days after the bathroom attack, whereupon he was bullied in the bathroom again. A reasonable juror could find that Defendants' acts placed Taye in more danger. Therefore, Plaintiffs have adequately alleged the first element of the state-created danger analysis.

### ii. Special Danger

CPS Defendants argue that any affirmative act did not specifically place Taye in danger, as opposed to the public at large. *McQueen*, 433 F.3d at 468 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). This argument is without merit. CPS Defendants' affirmative misrepresentations to Taye's mother clearly put Taye in special danger that was not shared with the public at large. Therefore, Plaintiffs have adequately alleged the second element of the state-created danger analysis.

### iii. Mental State

CPS Defendants contend that the state-created danger claims should be dismissed because CPS Defendants did not act with deliberate indifference. *McQueen*, 433 F.3d at 469. Deliberate indifference requires that the CPS Defendants "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and . . . also draw that inference."  The Sixth Circuit has equated deliberate indifference with "subjective recklessness," allowing it to be "'proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it.'" *Richardson*, 651 F. App'x at 365 (citing *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir 2003)).

Here, Plaintiffs have alleged facts that show recklessness and deliberate indifference by CPS Defendants.  A reasonable juror could find that CPS Defendants should have known that making affirmative misrepresentations to Taye's mother that Taye had just fainted, not been knocked unconscious, would result in a substantial risk of serious harm.  Additionally, the amended complaint alleges that CPS Defendants knew that one of the risks of bullying is suicide.  (Doc. 21-1 at ¶¶ 94–98, 100–102).  As the Court discusses in greater detail *infra* (Section III(B)(4)(a)), the Sixth Circuit has found that suicide is a foreseeable consequence of bullying.  *Tumminello v. Father Ryan High School, Inc.*, 678 Fed. App'x 281, 288 (6th Cir. 2017) ("If a school is aware of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide.")  Therefore, Plaintiffs have adequately plead that CPS Defendants acted with deliberate indifference.

Accordingly, Plaintiffs have plead each element of a state-created danger claim and CPS Defendants' motion to dismiss Count I is denied.

### b. Substantive Due Process – Special Relationship (Count II)

Plaintiffs allege that CPS Defendants committed a due process violation because a "special relationship" existed between Taye and the CPS Defendants. Under this theory, "certain 'special relationships' created or assumed by the State with respect to particular individuals may give rise to such an affirmative duty and are enforceable through the Due Process clause to provide adequate protection." *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999) (citing *DeShaney*, 489 U.S. 189). Generally, the special relationship doctrine has been limited to "incarceration, institutionalization, or other similar restraint of personal liberty" and foster care. *DeShaney*, 489 U.S. at 200, 201 n.9.

CPS Defendants contend that Count II should be dismissed because the school-student relationship is not a "special relationship." Indeed, compulsory school attendance laws do not create a "special relationship" giving rise to a constitutional duty. *Soper*, 195 F.3d at 853. Moreover, since *DeShaney*, every circuit court to address the issue has found that no special relationship exists between students and school administrators. *See*, *e.g.*, *Id.* at 852; *Stiles*, 819 F.3d at 854; *K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012) (en banc); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 973 (9th Cir. 2011). The Court therefore agrees with Defendants. Plaintiffs present no facts that warrant breaking from the established precedent that no constitutional duty arises from the school-student relationship.

Therefore, Plaintiffs have failed to allege facts establishing a "special relationship" and CPS Defendants' motion to dismiss Count II is granted.

### c. Substantive Due Process – Shocks the Conscience (Count III)

CPS Defendants seek to dismiss Plaintiff's third grounds for alleging a substantive due process violation, which third ground is that CPS Defendants' actions "shock the conscience." Substantive due process protects individuals from "government actions that "shock the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)). "It also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.* (citing *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216–17 (6th Cir. 1992). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Id.* (citing *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846–47 (1998)). Actions that shock the conscience are generally so brutal and offensive that they do not comport with traditional ideas of fair-play and decency. *Id.* at 589–90.

Here, Plaintiffs' complaint is replete with allegations of shocking actions by CPS Defendants. Plaintiffs' opposition to the motion to dismiss cites numerous alleged actions that are conscience shocking, including (1) concealing and covering-up the level of violence Taye faced at Carson, (2) affirmatively mispresenting the bathroom attack and the extent and cause of Taye's injuries; (3) destroying surveillance recordings for the purpose of covering up the danger at Carson; (4) encouraging violence at Carson; and

(5) encouraging injuries from violence to be minimized. (Doc. 19 at 21). Frankly, the allegations that the CPS Defendants were aware that Taye had been knocked unconscious for several minutes by an incident of bullying and then – instead of calling the ambulance (as CPS's policy on head trauma required) so Taye could receive medical care and notifying Taye's mother of what happened to her eight-year old son – they lied to his mother telling her that Taye had just fainted, shocks the conscience of the Court.

Additionally, the Sixth Circuit has provided three factors to consider in determining whether deliberately indifferent actions shock the conscience: "1) the voluntariness of the plaintiff's relationship with the government, 2) whether there was time for the government actor to deliberate, and 3) whether the government actor was pursuing a legitimate governmental purpose." *Range*, 763 F.3d at 590. First, Taye's relationship with the CPS Defendants, while not a "special relationship," was not voluntary as attendance at school was mandatory. Second, CPS Defendants had a considerable amount of time to deliberate their decision to affirmatively misrepresent the bathroom attack to Taye's mother, and they had a considerable amount of time to deliberate their continued covering up of bullying at Carson. Third, the Court can think of no legitimate government purpose for why the CPS Defendants would affirmatively misrepresent the bathroom attack to Taye's mother, would not follow school policy to contact emergency care when Taye suffered a head injury, and would cover up bullying at Carson. Therefore, the *Range* factors support the finding that the CPS Defendants' actions shock the conscience.

Viewing the facts in the light most favorable to Plaintiffs, a jury could find that the alleged actions of the CPS Defendants shock the conscience. Accordingly, the CPS Defendants' motion to dismiss Count III is denied.

### 2. Equal Protection (Count IV)

Next, Plaintiffs allege that CPS Defendants violated Taye's equal protection rights. "The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students . . . and (2) deliberate indifference to discriminatory peer harassment." *Stiles*, 819 F.3d at 851-52.

Here, the Plaintiffs allege that the CPS Defendants violated Taye's equal protection rights by treating students injured by bullying and aggression differently than students injured in accidents. Plaintiffs allege that "[w]hile students who experience accidents at school are given appropriate and adequate medical treatment, and their parents are informed of the incident, students who are victims of bullying and student-on-student aggressive behavior are not protected, their medical needs are not taken seriously, and their parents are not informed of the incident or the injury, thus depriving them of the ability to protect their son." (Doc. 21-1 at 36–37).

CPS Defendants argue that Plaintiffs do not identify any discrimination as between two different classes of students and only that Defendants treated Taye differently in two different situations. (Doc. 13 at 18). However, Plaintiffs complaint is

rife with examples of bullying victims not receiving appropriate medical treatment and their parents not being informed of bullying incidents. (Doc. 21-1 at ¶¶ 56–60). While the amended complaint only contains one allegation of a student receiving disparate treatment from a non-bullying related injury (*Id.* at ¶¶ 117-18), that is sufficient at the motion to dismiss stage. Moreover, CPS Defendants have not provided any rational basis for why the school would provide differential treatment to injured students based on the cause of the injury.

Accordingly, Plaintiffs have adequately plead an equal protection claim and CPS Defendants' motion to dismiss Count IV is denied.

### 3. Cincinnati Public Schools Municipal Liability (Count V)

Plaintiffs also bring a municipal liability claim under § 1983 against the Board Defendants. Having already shown a § 1983 violation by CPS Defendants, in order to plead municipal liability against Board Defendants, Plaintiffs must demonstrate that the violation of their rights was caused by a policy, custom, or practice of the municipality. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690–92 (1978). The Sixth Circuit has identified four avenues a plaintiff may take to allege municipal liablity: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiffs assert each of these grounds for municipal liability: (1) that CPS's anti-bullying policy is unconstitutional (Doc. 19 at 28); (2) that the Board Defendants had a custom of inaction related to bullying and aggression (*id.* at 26–28); (3) that the Board Defendants failed to adequately train and supervise the Carson Defendants and other school officials (*id.* at 29–31); and (4) that the Board Defendants ratified the unconstitutional acts of the Carson Defendants. (*Id.* at 32–33).

### a. CPS Anti-Bullying Policy

First, the Court agrees with Defendants that the Ohio anti-bullying policy, O.R.C. § 3313.666(A)(2), and the CPS "Bullying and Other Forms of Aggressive Behavior" policy (Doc. 13 at Ex. A) are not facially unconstitutional.[6] Plaintiffs provides no legal support for why not including their definition of "aggressive behavior" in the CPS anti-bullying policy makes the policy unconstitutional. Therefore, Defendants' motion to dismiss Plaintiffs' theory of municipal liability based on the constitutionality of the anti-bullying policy is granted.

### b. Board Defendants' Custom of Inaction

While the Court finds that the CPS anti-bullying policy is not unconstitutional, Plaintiffs have also alleged that the CPS Defendants developed a custom of covering up

---

[6] The Court is wary of the definition of "bullying, harassment, or intimidation" in both policies. These policies only define bullying as acts in which a student or group of students commit verbal or physicals acts more than once towards a particular student. Under these policies, one student committing violent acts against 100 other students one time each would not qualify as bullying. Inversely, 100 different students committing 100 acts of violence against one particular student would not qualify as bullying. The Court is skeptical that these policies in fact prevent the type of aggressive behavior that occurred at Carson and ultimately led to Taye's suicide.

bullying and failing to act to prevent bullying at Carson. To state a municipal liability claim under an "inaction" theory, Plaintiffs must establish: (1) the existence of a clear and persistent pattern of § 1983 violations by the school employees; (2) notice or constructive notice on the part of the Board Defendants; (2) the Board Defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) the Board of Director's custom was the "moving force" or direct causal links in the constitutional deprivation. *See Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir.1996); *Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 607 (6th Cir.2007); *Arendale v. City of Memphis*, 519 F.3d 587, 599–600 (6th Cir. 2008).

First, the Court has found that Plaintiffs have demonstrated both substantive due process and equal protection § 1983 violations and their amended complaint is replete with facts that, taken as true, amount to a pattern of constitutional violations. Second, the Plaintiffs allege that Defendants McKenzie and Jackson documented a pattern of bullying and aggression, including injuries to students, in their student behavior logs, which were available to the Board Defendants. (Doc. 21-1 at ¶¶ 20–61). Moreover, the fact that Carson officially reported zero (0) incidents of bullying in the first half of Taye's third-grade year, even though the behavior log documented several events described as bullying, may ultimately show that the Board Defendants were aware that bullying was being concealed at Carson. (*Id.* at ¶ 29). Third, Plaintiffs allege that the Board Defendants' deliberate indifference is demonstrated in their awareness of bullying at

Carson and their tacit approval of the CPS Defendants actions to conceal that bullying. Plaintiffs note that at the time of their filing of the initial complaint, the Board Defendants had not investigated the bullying, aggression, and violence that Taye suffered at Carson, including the bathroom attack. (*Id.* at ¶ 141). A reasonable juror could find this tacit approval of covering-up and failing to investigate incidents of bullying at Carson reflects recklessness and deliberate indifference on the part of Board Defendants. Fourth, Plaintiffs allege that the Board Defendants' custom of not investigating incidents of bullying and aggression, not treating victims, not notifying parents, and not reporting the bullying incidents were a moving force behind Taye's death. These allegations are sufficient to survive a motion to dismiss.

### c. Inadequate Training and Supervision

Plaintiffs also contend that the Board Defendants failed to adequately train and supervise the Board Defendants and other Carson officials on how to respond to the aggressive behavior at Carson. (Doc. 19 at 29–31). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

The Court already found *supra* (Section III(B)(3)(b)) that Plaintiffs have adequately plead that the Board Defendants acted with deliberate indifference and that

the Board Defendants' deliberate indifference was closely related to or actually caused Taye's injuries. As to the first prong, Plaintiffs state that the Board Directors failed to train or supervise their staff to ensure that they complied with their legal obligations and the CPS anti-bullying policy. There are a number of allegations in the amended complaint that suggest that the CPS Defendants were not adequately trained or supervised in how to respond to bullying at Carson, including how they reported bullying in behavior logs and how they reported bullying incidents pursuant to O.R.C. § 3313.666, how they communicated (or did not communicate) incidents of bullying to parents of bullied children, and how they treated the injuries of bullied students. Taken as true, Plaintiffs have successfully alleged that the Board Defendants did not adequately train and supervise school officials, including the Carson Defendants. Therefore, Plaintiffs' allegation that the Board Defendants inadequately trained/supervised Carson officials provides another basis for municipal liability.

### d. Ratification

The final basis Plaintiffs allege for municipal liability is that the Board Defendants, as final policymakers, ratified the unconstitutional acts of the Carson Defendants. It is undisputed that the Board Defendants were final policymakers. The Sixth Circuit recognizes two methods for finding ratification: (1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision on the merits or otherwise, and thereby adopting it as municipal policy, *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994), and (2) when a policymaker fails to

meaningfully investigate the acts of a subordinate. *Leach v. Shelby Cty. Sherriff*, 891 F.2d 1241, 1246–48 (6th Cir. 1989). Plaintiffs allege that Board Defendants failed to investigate the unconstitutional acts of the Carson Defendants and therefore ratified their actions.

"[E]vidence that a municipality inadequately investigated an alleged constitutional violation can be seen as evidence of a policy that would condone the conduct at issue." *Otero v. Wood,* 316 F. Supp. 2d 612, 627–28 (S.D. Ohio 2004). "A municipality fails to meaningfully investigate when it does not conduct any investigation into the alleged unconstitutional conduct." *Baker v. Union Tp., Ohio*, 2013 WL 4502736, *23 (S.D. Ohio Aug. 22, 2013) (denying summary judgment in finding municipal liability based on ratification). Here, Plaintiffs allege that at the time of filing the initial complaint, Board Defendants had conducted no investigation into the events leading to Taye's suicide, including the bathroom attack. (Doc. 21-1 at ¶ 109). Taken as true, Plaintiffs have clearly alleged that Board Defendants, as final policymakers, ratified the unconstitutional acts of the Carson Defendants.

At this point, the Court finds that the Plaintiffs' allegations go beyond mere conclusory allegations in their municipal liability claim against the Board Defendants. It remains to be seen whether Plaintiffs will ultimately prevail on their municipal liability claim, or even survive summary judgment, but Plaintiffs are entitled to discovery. *See Laning v. Doyle*, 2015 WL 710427, at *12 (S.D. Ohio Feb. 18, 2015) (denying defendants' motion to dismiss § 1983 municipal liability claims and finding that

dismissing municipal liability claims where knowledge of custom, policy, and practice is unobtainable absent some preliminary discovery can lead to unfair results). Accordingly, CPS Defendants' motion to dismiss Count V is denied.

### 4. State Claims

Plaintiffs also allege an array of state law claims against the Carson Defendants. As an initial matter, Defendants move to dismiss all these claims because they contend that they have political subdivision immunity. The Ohio Political Subdivision Immunity Act grants immunity from suit to any government employee sued in his individual capacity unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

O.R.C. § 2744.03(A)(6).

The Court already found *supra* (Section III(B)(1)(a)(iii)) that the Carson Defendants alleged acts were, at a minimum, reckless. Therefore, the Carson Defendants do not have political subdivision immunity under the exception provided by O.R.C. § 2744.03(A)(6)(b).

### a. Wrongful Death (Count VI)

Plaintiffs bring a claim for wrongful death against the Carson Defendants. To maintain a claim for wrongful death under Ohio law, a plaintiff must show "(1) the existence of a duty… (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Heath Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). School officials have a duty "to exercise that care necessary to avoid reasonably foreseeable injuries to their students." *Estate of Smith v. W. Brown Local Sch. Dist.*, 26 N.E.3d 890, 899 (12th Dist. App. 2015), *appeal not allowed sub nom. Estate of Smith v. Burrows*, 36 N.E.3d 189 (Ohio 2015). An injury is foreseeable if a reasonably prudent person should have anticipated that injury would be the "probable result of the performance or nonperformance of an act." *Id.*

Thus, as Defendants argue, Carson Defendants can be held liable only if Taye's suicide was reasonably foreseeable. (Doc. 13 at 28 (citing *Fischer v. Morales*, 526 N.E.2d 1098, 1101 (Ohio App. 10th Dist. 1987)). Plaintiffs make numerous allegations that Taye's suicide was a reasonably foreseeable consequence of the bullying he suffered, including that the CPS anti-bullying policy included a disclaimer noting that suicide was a known risk of bullying. (Doc. 21-1 at ¶¶ 95–99, 133). Defendants argue that, while bullying or a loss of consciousness can lead to suicide, "[s]chool officials would have no reason to think it is *likely* that Taye would kill himself." (Doc. 13 at 28). Under Ohio law, there is no bright line rule dictating whether school officials are liable for the suicides of students who were victims of bullying. *See Mohat v. Horvath*, 11th Dist.

Lake No. 2013-L-009, 2013-Ohio-4290, 2013 WL 5450296 (holding school official liable for student's suicide where school official failed to take action to alleviate bullying); *Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*, 2012 WL 5268946, at *5–7 (S.D. Ohio Oct. 23, 2012) (same); *but see Estate of Smith*, 26 N.E.3d at 892-95 (dismissing wrongful death claim finding that student's suicide from bullying was not foreseeable).

Although applying Tennessee law, the Sixth Circuit's recent decision in *Tumminello* is informative in determining whether Taye's suicide was reasonably foreseeable:

> Our newspapers and television networks consistently report instances when young people harm themselves or others after being bullied by their peers. Such occurrences may not be common within an individual school, but because reports of these tragedies are consistent and well-publicized, all school districts should realize that self-harm is a reasonably foreseeable result of bullying, without requiring specific evidence of the victim's mental state. <u>If a school *is aware* of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide.</u>

*Tumminello*, 678 Fed. App'x at 288 (emphasis added). The Sixth Circuit ultimately affirmed the dismissal of wrongful death claims against the school in finding that the student's suicide was not foreseeable because the plaintiff's complaint did not include facts alleging that the school was aware of abuse and harassment that the student experienced. <u>That is not the case here</u>. Plaintiffs have alleged not only that the Carson Defendants were aware that Taye was a victim of abuse and harassment, but that they

concealed that abuse and harassment from Taye's parents.  Therefore, the Court finds that Taye's suicide was a reasonably foreseeable consequence of the bathroom attack and the Carson Defendants' cover-up of that attack.

Accordingly, Defendants motion to dismiss Count VI is denied.

### b. Intentional Infliction of Serious Emotional Distress (Count VIII)

Plaintiffs next bring a claim against the Carson Defendants for intentional infliction of emotional distress.  Under Ohio law, a claim for intentional infliction of emotional distress requires a showing of intentional or reckless, extreme and outrageous conduct that causes severe emotional distress.  *Lundy v. General Motors Corp.*, 101 Fed. App'x 68, 73–74 (6th Cir. 2004) (citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983)).  In order to survive a motion to dismiss, it is sufficient for a plaintiff to allege that as "direct and proximate cause of Defendants' intentional, reckless and/or negligent infliction of emotional distress Plaintiffs have suffered severe humiliation, distress, depression, and anxiety."  *Ponder v. Bank of America*, N.A., 2011 WL 8307207, *7 (S.D. Ohio Mar. 8, 2011).

As discussed *supra* (Section III(B)(1)(a)(iii)), Plaintiffs have adequately alleged that the Carson Defendants acted recklessly, which was a moving force behind Taye's suicide.  The amended complaint alleges that Carson Defendants' reckless actions, which led to Taye's suicide, caused Taye and his parents severe emotional distress.  (Doc. 21-1 at ¶¶ 200–01).  Understandably, the Carson Defendants do not refute that the Plaintiffs have suffered severe emotional distress.  Therefore, Plaintiffs have adequately plead a

claim for intentional infliction of emotional distress.

Accordingly, Defendants' motion to dismiss Count VIII is denied.

### c. Negligent Infliction of Emotional Distress (Count IX)

Next, Plaintiffs allege that the Carson Defendants (1) negligently inflicted emotional distress on Ms. Reynolds as a bystander to Taye's suicide and (2) negligently inflicted emotional distress on Ms. Reynolds and Mr. Taye as bystanders to watching the recording of the bathroom attack. (Id. at ¶¶ 202–03). Under Ohio law, Plaintiffs must allege (1) that they were bystanders, (2) that they "reasonably appreciated the terror that took place, whether or not the victim suffered actual physical harm," and (3) that they "suffered serious emotional distress as a result of this cognizance or fear of peril." *Walker v. Firelands Cmty. Hosp.*, 170 Ohio App. 3d 785, 798 (6th Dist. App. 2007).

On Plaintiffs' first grounds for negligent infliction of emotional distress, Defendants merely argue that this claim is derivative of her wrongful death claim and should be dismissed "because they are not responsible for the underlying wrongful death tort." (Doc. 13 at 33). However, the Court already found that Plaintiffs have adequately alleged a wrongful death claim against Carson Defendants. (*Supra* Section III(B)(4)(a)). Defendants make no other argument for why Ms. Reynold's first grounds for negligent infliction of emotional distress should be dismissed and the Court finds that Plaintiffs have adequately plead each element of the claim. Accordingly, as to Plaintiff Reynold's first grounds for relief under Count IX, Defendants' motion to dismiss is denied.

On Plaintiffs' second grounds for negligent infliction of emotional distress, Defendants argue that, by watching the video of the bathroom attack on Taye, Ms. Reynolds and Mr. Taye were not in fact bystanders to the incident. This argument is well-taken. Ohio courts have found that watching a video recording of a traumatic event that has already occurred does not make an individual a bystander. *Dalton v. Fort Hamilton-Hughes Mem'l Hosp.*, 1998 WL 191418 at *2 (Ohio 12th Dist. App. 1998). Accordingly, Defendants' motion to dismiss the second grounds for relief under Count IX is granted.

### d. Loss of Consortium (Count X)

Plaintiffs Reynolds and Taye, as mother and father of Gabriel Taye, bring a loss of consortium claim against the Carson Defendants. A "parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child for loss of filial consortium." *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251, 617 N.E.2d 1052 (1993). A loss of consortium claim is "derivative in that the claim is dependent upon the Defendant's having committed a legally cognizable tort." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992).

Defendants only argument against Plaintiffs' loss of consortium claim is that Plaintiffs have no cognizable claims against the Carson Defendants. However, the Plaintiffs have adequately plead several legally cognizable torts and have adequately plead all of the elements of a loss of consortium claim.

Accordingly, Defendants' motion to dismiss Count X is denied.

### e. Failure to Report Child Abuse (Count XI)

Plaintiffs additionally allege that the Carson Defendants failed to report child abuse. The Ohio statute mandating reporting of suspected child abuse or neglect provides in relevant part:

> No person… who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child… has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge.

O.R.C. § 2151.421(A)(1)(a).

Essentially, Plaintiffs argue that the bathroom attack by students at Carson was an act of child abuse and the Carson Defendants failed to report that abuse to a children's services agency or law enforcement, as required. Defendants point out that putting Plaintiff's definition of child abuse into effect would lead to law enforcement or children's services being called for every incident of peer-on-peer violence. Defendants additionally note that no court has ever defined an altercation between elementary school students as child abuse. (Doc. 13 at 35). The Court agrees with Defendants. Plaintiffs' proposed reading of the child abuse statute is over-expansive and leads to absurd results.

Accordingly, Defendants motion to dismiss Count XI is granted.

### f. Spoliation (Count XII)

Finally, Plaintiffs allege that the CPS Defendants spoiled evidence. To adequately

plead a claim for spoliation, Plaintiffs must show "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Defendants' only argument is that Plaintiffs do not have any cognizable tort claims against Defendants and therefore Plaintiffs cannot show any damages resulting from the alleged spoliation. (Doc. 13 at 36–37). Again, the Court has found that Plaintiffs have adequately alleged several cognizable torts against CPS Defendants. The Court finds that Plaintiffs have pled each element of a spoliation claim. As the majority of Plaintiffs' claims survive Defendants' motion to dismiss, the CPS Defendants' alleged destruction of surveillance tapes will likely disrupt Plaintiffs' case going forward.

Accordingly, Defendants' motion to dismiss Count XII is denied.

# IV.    CONCLUSION

For the foregoing reasons:

1) Plaintiffs' motion to amend the complaint (Doc. 21) is **GRANTED**; Plaintiffs shall file the amended complaint (Doc. 21-1) forthwith as a separate docket entry;

2) Defendants' motion to dismiss (Doc. 13) is **GRANTED IN PART and DENIED IN PART** as follows:

   a.  Defendants' motion to dismiss Counts II and XI is **GRANTED**, and those claims are **DISMISSED**.

   b.  Defendants' motion to dismiss Counts I, III, IV, VI, VIII, X, and XII are **DENIED**, and those claims shall proceed.

   c.  Defendants' motion to dismiss Plaintiffs' claim for municipal liability (Count V) is **GRANTED** as to ground one (unconstitutional policy) and **DENIED** as to grounds two, three, and four (custom, inadequate training/supervision, ratification). Count V shall so proceed.

   d.  Defendants' motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress (Count IX) is **DENIED** as to ground one (Doc. 21-1 at ¶ 202) and **GRANTED** as to ground two (*Id.* at ¶ 203). Count IX shall so proceed.

**IT IS SO ORDERED.**

Date:    _____9/24/18_____                    _Timothy S. Black_____
                                                  Timothy S. Black
                                                  United States District Judge