**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KAREN MEYERS, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | **Case No. 1:17-cv-00521** |
| | ) | |
| | ) | **Judge Timothy S. Black** |
| **vs.** | ) | |
| | ) | **DEFENDANTS CINCINNATI BOARD** |
| **CINCINNATI BOARD OF EDUCATION,** | ) | **OF EDUCATION, MARY RONAN,** |
| **et al.,** | ) | **RUTHENIA JACKSON, AND JEFFREY** |
| | ) | **MCKENZIE'S ANSWER TO FIRST** |
| **Defendants.** | ) | **AMENDED COMPLAINT** |

For their answer to Plaintiffs' First Amended Complaint, Defendants Cincinnati Board of Education, Mary Ronan, Ruthenia Jackson, and Jeffrey McKenzie ("Defendants"), state as follows:

**GENERAL RESERVATION:** Defendants moved to dismiss Plaintiffs' Amended Complaint because, among other things, they are immune from suit. That Court's denial of that motion is the subject of a pending appeal. Defendants tender this answer subject to, and without waiving, the issues raised in that appeal, including their immunity defenses.

Defendants restate each paragraph of Plaintiffs' Amended Complaint before each answer for the convenience of the Court and the parties. They do not constitute admissions, and any portion of an allegation that may be construed as a factual allegation is specifically denied.

1. On January 26, 2017, eight-year-old Gabriel Taye ("Gabe") tied his necktie to his bunk bed and hung himself. He was a third-grade student at Carson Elementary School ("Carson") where he had been suffering from the aggressive, violent, and bullying behavior that was widespread and permitted by Cincinnati Public Schools and Defendants. Two days earlier, a

fellow student attacked Gabe in a bathroom at Carson. Gabe collapsed on the bathroom floor and lost consciousness almost immediately, spending more than seven minutes unconscious on the floor while students repeatedly taunted and kicked him.[1]

**ANSWER:** Defendants admit that Gabe was an eight-year-old, third-grade student at Carson. Defendants deny the remaining allegations in paragraph 1.

2. When Gabe entered the bathroom, he had an expectation of safety because there was a surveillance camera watching and recording everything. Gabe and the students who attacked him knew they were on camera, yet they persisted in their vicious kicks and taunts.

**ANSWER:** Defendants deny the allegations in paragraph 2.

3. It was obvious that Gabe had suffered a trauma and likely an assault. He was at obvious risk of injury. Despite the obvious trauma Gabe experienced, Defendants recklessly and deliberately withheld vital information from his mother, including that he had been assaulted, lost consciousness for a considerable period of time, and was at risk of a serious head injury. Defendants informed his mother only that Gabe had fainted in the boy's restroom and had recovered completely. Defendants' concealment of the violence and harm to Gabe prevented his mother from seeking appropriate treatment for trauma and potential medical injuries. Had she known of the extreme violence at Carson, she would never have continued to send him to school there.

**ANSWER:** Defendants deny the allegations in paragraph 3.

4. Aggressive behavior, aggression, violence, bullying, intimidation, and harassment (collectively referred herein as "aggressive behavior") was common at Carson. Defendant school officials not only knew that student-on-student aggression was rampant, especially in the unsupervised bathrooms, but chose to cover it up rather than alert parents and the school

---

[1] See Exhibit A to Complaint filed as Doc. 4 (Video of Carson Elementary School boy's bathroom January 24, 2017 (redacted)).

community so the violence could be investigated and resolved. Despite the official statistic that Carson reported to the public that it had zero bullying incidents during the first half of the 2016-2017 school year, Defendants were aware of, permitted, did not abate, and in fact harbored the bullying, physical aggression, harassment, intimidation, and exceptionally destructive unsafe climate that persisted at Carson. Defendants hid this information from parents, including Gabe's parents, who, unaware of the dangers their children faced, were deprived of the ability to protect their children from the multitude of dangers present at Carson. Had Gabe's parents known the dangers Gabe faced at Carson, they would not have continued to send him to school there. Defendants, with utter reckless wanton disregard for Gabe, permitted a treacherous school environment to become even more so by withholding these critical facts and covering up the risk to Gabe's safety.

**ANSWER:** Defendants deny the allegations in paragraph 4.

5. Plaintiff now brings this case seeking fair compensation for Gabe's untimely death and to ensure that in the future, the students at Carson are kept safe and the school administration institutes appropriate mandatory training and policies to ensure that no further cover-up of bullying and aggressive behavior can ever happen again.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 5.

6. Jurisdiction over the federal civil rights claim is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a). Venue is proper in this Division.

**ANSWER:** Defendants admit the allegations in paragraph 6.

7. Plaintiff Karen Meyers is the administratrix of the estate of Gabriel Taye, who is deceased. Meyers brings this action for the benefit of the next of kin of Gabriel Taye, including his two parents, Cornelia Reynolds and Benyam Taye.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 7.

8. Plaintiff Cornelia Reynolds is the mother of Gabriel Taye. She is a resident of Hamilton County, Ohio.

**ANSWER:** Defendants admit that Cornelia Reynolds is the mother of Gabriel Taye. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 8.

9. Plaintiff Benyam Taye is the father of Gabriel Taye. He is a resident of DeKalb County, Georgia.

**ANSWER:** Defendants admit that Benyam Taye is the father of Gabriel Taye. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 9.

10. Defendant Cincinnati Board of Education is a political subdivision capable of suing and being sued under the law of Ohio. Cincinnati Board of Education operates Cincinnati Public Schools ("CPS"). The term "CPS Defendants" refers collectively to Defendants Ronan, Jackson, McKenzie, and Cincinnati Board of Education. The terms "CPS" and "Cincinnati Public Schools" refer to Defendant Cincinnati Board of Education.

**ANSWER:** Defendants admit the allegations in paragraph 10.

11. Defendant Mary Ronan was at all times relevant to this action the Superintendent of Cincinnati Public Schools. Defendant Ronan is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. Ronan is sued in her official capacity as an employee of Cincinnati Public Schools.

**ANSWER:** Defendants admit the allegations in paragraph 11.

12. Defendant Ruthenia Jackson was at all times relevant to this action the principal of Carson Elementary School, a school in the Cincinnati Public Schools system. Defendant Jackson is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. Jackson is sued individually and in her official capacity as an employee of Cincinnati Public Schools.

**ANSWER:** Defendants admit the allegations in paragraph 12.

13. Defendant Jeffrey McKenzie was at all times relevant to this action the assistant principal of Carson Elementary School, a school in the Cincinnati Public Schools system. Defendant McKenzie is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. McKenzie is sued individually and in his official capacity as an employee of Cincinnati Public Schools.

**ANSWER:** Defendants admit the allegations in paragraph 13.

14. Defendant Margaret McLaughlin was at all times relevant to this action a school nurse employed by the Board of Health of the City of Cincinnati and assigned to Carson Elementary. Defendant McLaughlin is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. McLaughlin is sued individually.

**ANSWER:** Defendants admit the allegations in paragraph 14.

15. Gabriel Taye, born and raised in Cincinnati, Ohio, was an adorable, vibrant, and loving eight-year-old boy. He loved to sing and dance, play basketball and football, fish with his mother and play games with his father.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 15.

16. According to a teacher, Gabe was not known to his peers as a "cool kid" in third grade because he was a good kid who wanted to be friends with people; he was smart, wanted to

learn, earned good grades, avoided fights and arguments, and loved to dress up for school, including wearing neck ties. Gabe loved to learn and teach others what he was learning. His parents instilled the importance of a good education in him. His mother earned her license practical nursing degree and his father earned a two-year degree in mechanical engineering. His parents worked hard to provide Gabe with a good childhood and instilled in him the importance of getting a good education.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 16.

17. Gabe started attending Carson Elementary School in first grade at the beginning of the 2014-2015 school year.

**ANSWER:** Defendants admit the allegations in paragraph 17.

18. Gabe excelled academically in first and second grade, but his grades began to fall during third grade. Neither his teachers nor school officials told his mother why his grades were declining.

**ANSWER:** Defendants admit that Gabe's grades in third grade were lower than his grades in first and second grade. Defendants deny the remaining allegations in paragraph 18.

19. Neither of Gabe's parents had any reason to believe that Gabe was suicidal.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 19.

20. It is the goal of the State Board of Education to enhance/create positive learning and teaching environments. The State Board of Education defines a positive climate as "one that emphasizes and recognizes positive behaviors, evokes nonviolence, cooperation, teamwork, understanding and acceptance toward all students and staff in, and in transit to and from, the

school environment."[2] The Ohio Department of Education provides CPS with "model policies and strategies that eliminate negative behaviors and recognize positive behaviors that promote safe and secure learning environments for all students and staff. This model policy has informed local schools as they establish policies that assist school personnel to identify and address issues of bullying, intimidation and harassment that occurs between students[.]"[3] Defendants have chosen not to adopt or follow these policies at Carson.

**ANSWER:** Defendants admit that a goal of the State Board of Education is to create positive learning and teaching environments. Defendants admit that the Ohio Department of Education ("ODE") has a model anti-bullying policy, and that CPS's policy differs in some respects from the ODE's policy. Defendants deny the remaining allegations in paragraph 20.

21. Ohio Revised Code 3313.666 requires CPS to establish policies that assist school personnel to identify and address issues of bullying, intimidation and harassment that occurs between students.

**ANSWER:** Paragraph 21 does not contain any factual allegations that require a response. The Ohio Revised Code speaks for itself, and Defendants deny the allegations in paragraph 21 to the extent that they are inconsistent with the Revised Code.

22. O.R.C. 3313.666(B)(5) further requires that the custodial parent or guardian be notified of any incidents involving their child.

**ANSWER:** Paragraph 22 does not contain any factual allegations that require a response. The Ohio Revised Code speaks for itself, and Defendants deny the allegations in paragraph 22 to the extent that they are inconsistent with the Revised Code.

23. O.R.C. 3313.666(B)(11) requires the district administration to semiannually provide the president of the district board a written summary of all reported incidents of harassment, intimidation or bullying and post the summary on the district's website.

---

[2] Ohio Department of Education, Anti-Harassment, Anti-Intimidation or Anti-Bullying Model Policy, page 3, https://education.ohio.gov/getattachment/Topics/Other-Resources/School-Safety/School-Safety-Resources/Anti-Harassment-Intimidation-and-Bullying-Model-Po/Anti-HIB-Model-Policy-FINAL-update-incl-HB116-100912.pdf.aspx.

[3] *Id.*

**ANSWER:** Paragraph 23 does not contain any factual allegations that require a response. The Ohio Revised Code speaks for itself, and Defendants deny the allegations in paragraph 23 to the extent that they are inconsistent with the Revised Code.

24. The Ohio Department of Health provides emergency guidelines ("guidelines") to schools to serve as a basic "what-to-do-in-an-emergency" information for school staff without nursing or medical training when the school nurse is not available.[4] The guidelines refer to "unconsciousness" as one of the most severe symptoms and advise to immediately call 911.[5]

**ANSWER:** Defendants admit that the Ohio Department of Health provides emergency guidelines to schools without nursing or medical training. The guidelines speak for themselves, and Defendants deny the allegations in paragraph 24 to the extent that they are inconsistent with the guidelines. Defendants deny that the guidelines are relevant to this action.

25. Carson is a failing CPS school. In 2015-2016 it failed in every category measured: Achievement, Gap Closing, Progress, and K-3 Literacy. It has received failing grades for Achievement since 2013. Before 2013 it was on "academic emergency" for a number of years.

**ANSWER:** Defendants deny that Carson is a "failing CPS school." Defendants admit the remaining allegations in paragraph 25.

26. Since 2014, Carson's third grade student passage rate for state tests in English and Math have rapidly declined. Carson's 2015-2016 State report card shows that only 25% of the students passed the third grade English proficiency test. Carson third graders had the worst English test results in the district, where the district rate was 46.6% passing rate. Statewide, the passage rate was 54.9%. Even more shocking, the 2015 Carson passage rate represented a decline from the 2014 73% passage rate. The math proficiency scores were equally as dismal: Carson had a 28% passage rage in 2016, down from a 55% passage rate in 2014.

**ANSWER:** Defendants admit that paragraph 26 accurately recites the statewide and Carson Elementary test scores and proficiency test scores. Defendants deny the remaining allegations in paragraph 26.

---

[4] ODH 3610.13 (Rev. 2/07).

[5] *Id.*

27. In addition to poor testing scores, Carson students had a 35% absenteeism rate.

**ANSWER:** Defendants admit that Carson students had a 35% absenteeism rate, and deny the remaining allegations in paragraph 27.

28. Carson is one of 40 elementary schools and one of 56 total schools in the Cincinnati Public Schools system. During the 2015-2016 school year, Carson served approximately 860 students, from preschool through sixth grade.

**ANSWER:** Defendants admit that there are approximately 60 schools in the CPS system, and Carson is one of them. As of March 2016, Carson had an enrollment of 742.

29. According to the Semiannual Report on Harassment, Intimidation and Bullying, CPS reported "0" bullying incidents at Carson for the period of August 17, 2016 through December 16, 2016. This period of time represents the first half of Gabe's third grade school year. During the second half of the year, CPS reported "4" bullying incidents at Carson, but none involving Gabe or the other students attacked in the bathroom incident on January 24, 2017.

**ANSWER:** Defendants admit the allegations in paragraph 29.

30. Contrary to the claim made publicly by Defendant CPS, as required by O.R.C. § 3313.666(B)(11), there were incidents of bullying at Carson during the 2016-2017 school year. As a result, Defendants not only fostered aggressive behavior, but they harbored it, thus secreting the need to and ability of parents to protect their children.

**ANSWER:** Defendants deny the allegations in paragraph 30.

31. According to the Carson behavior logs of just ten students, aggressive behavior was a routine occurrence at Carson. The CPS Defendants were fully aware of the aggressive behavior from the behavior logs they maintained for each student.

**ANSWER:** Defendants deny the allegations in paragraph 31.

32. On December 7, 2016, school documents state that Student #7 "was very disruptive and bullying another student this afternoon." Despite this incident occurring during the period

covered by CPS's report on bullying, it was intentionally excluded from the semiannual report for the first half of the 2016-2017 school year.

**ANSWER:** Defendants admit that the student behavior logs contain the statements alleged, and that the incident was not included in the semiannual report for the first half of the 2016-2017 school year. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report. Defendants deny the remaining allegations in paragraph 32.

33. On December 12, 2016, school documents state that Student #6 "was bullying another student today – the same student he has been investigated previously for bullying." Despite this incident occurring during the period covered by CPS's first half-year report on bullying, it was intentionally excluded from the semiannual report.

**ANSWER:** Defendants admit that the student behavior logs contain the statements alleged, and that the incident was not included in the semiannual report for the first half of the 2016-2017 school year. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report. Defendants deny the remaining allegations in paragraph 33.

34. In addition to the incidents Carson explicitly labeled as bullying, there are many other incidents of what is described as bullying and aggressive behavior by students against other students during this first half of the 2016-2017 school year that were required to be included by O.R.C. § 3313.666(B)(11), but CPS Defendants intentionally excluded from the semiannual report. The following examples are taken from the CPS logs of student behavior.

**ANSWER:** Defendants deny the allegations in paragraph 34.

35. On August 25, 2016, Student #1 punched a student and threw a chair. Also on this date, Student #3 punched another student repeatedly.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 35 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

36. On August 28, 2016, Student #9 choked two students and threatened them.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 36 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

37. On September 1, 2016, Student #2 threw a chair, taunted a student, and used profane language.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 37 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

38. On September 12, 2016, Student #7 made jokes about a student.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 38 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

39. On September 29, 2016, Student #8 hit a student because she was reading too loudly.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 39 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

40. On October 3, 2016, Student #8 stole a student’s pencils, repeatedly kicked her desk, assaulted a teacher three times, pushed the desk five to six times, and pushed the desk hard into a classmate.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 40 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

41. On October 4, 2016, Student #6 repeatedly threatened a student verbally and physically.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 41 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

42. On October 6, 2016, Student #7 tormented an African American student by saying he looked like a monkey and walked around threatening other students and calling them stupid.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 42 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

43. On October 11, 2016, Student #7 roamed the room threatening to beat up students and harassing them.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 43 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

44. On October 12, 2016, Student #8 called other students ugly and babies, flipped a desk three times, and pushed a classmate.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 44 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

45. On October 13, 2016, Student #3 threatened a student with nail clippers. Also on that day, Student #9 threw three chairs and tried to fight a student.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 45 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

46. On October 14, 2016, Student #2 put a student in a chokehold and wrestled him to the ground.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 46 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

47. Also on that day, Student #5, a third grader, threw a chair and yelled at a female classmate that "I wish I had a gun so I could rape her."

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 47 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

48. Student #5 also threatened to shoot a teacher.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 48 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

49. On October 20, 2016, Student #10, a first grader, walked up behind a student and tried to choke him.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 49 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

50. On November 1, 2016, it was reported that Student #8, a first grader, was hitting others daily. On that day, he pushed a student against the fence and punched him.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 50 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

51. On November 17, 2016, Student #8 held a student down so that others could punch him.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 51 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

52. On December 7, 2016, Student #8 yelled at a classmate, threatened to punch her, teased another classmate, and called him a baby. The student threatened to punch multiple students in the face.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 52 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

53. On December 14, 2016, Student #2 stomped on another student while she was on the floor, and continued as she tried to escape.

**ANSWER:** Defendants admit that the student behavior logs (selected by Plaintiffs) reflect the incident described. Defendants deny the allegations in paragraph 53 to the extent that they are inconsistent with the student behavior logs. Defendants deny that the incident was improperly or intentionally excluded from the semiannual report.

54. These examples of aggressive behavior are compiled from the behavior logs of only ten students at Carson. Upon information and belief, more examples exist of this violent behavior from the 2016-2017 school year at Carson.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 54.

55. The following examples come from the families of other students at Carson who have been victims of aggressive behavior like Gabe.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 55

56. Parent #1 had a child, Child #1, enrolled at Carson, but had to pull her out of school because the bullying she experienced made her want to harm herself.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 56.

57. Parent #2's daughter, Child #2, attended Carson and had to be taken out of school because of the bullying she experienced. She was beaten up by a group of girls, but the girls were

never disciplined, and no report was made. Attempts to address the situation with the school were unsuccessful. When she asked about the bullying policy, Defendant Jackson told her "we don't have problems with that here."

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 57.

58. Parent #3's daughter, Child #3, a fourth grader at Carson, has been bullied since kindergarten. It has included name-calling and physical aggression, including kicking, having pencils thrown at her face, being chased, being threatened that she would be pushed down the stairs, and being assaulted on the bus by five to six older students. When Child #3 was assaulted on the bus in April 2017, students held her down while another hit her in the face. She suffered cuts, scratches, bruises, and a sore neck. She has refused to get back on the bus since the incident. After the assault on the bus, she was told to "go hang herself," by two or three different students. Parent #3 filed a police report about the assault on the bus, but nothing came of it because the school would not give her any information. She specifically tried to get video from the bus, but her request was refused.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 58.

59. Parent #4's son, Child #4, has been bullied for years at Carson, both verbally and physically. Despite a pattern of repeated bullying by the same student, the school would not contact her when the bullying happened; she would only know if her son told her about it. The only time she heard from the school was the one time her son defended himself and got in trouble. When she tried to discuss her son's bullying with Defendant Jackson, Jackson refused to see her until Parent #4 forced her way into Defendant Jackson's office. The bully was separated from her son for only one day and then the bullying resumed. In October 2016, on three separate occasions, Child #4 wrote in his journal at school that he was tired of school, sick and tired of

being bullied, tired of being picked on and nobody doing anything about it, so he wanted to just die. Despite CPS and Defendant Jackson knowing about the first two entries, they chose not to inform Parent #4 until the third entry. When Parent #4 asked why she was not informed sooner that the school knew that her son was suicidal, she was told that the "office staff" talked to Child #4 and determined that he was not a threat to himself and, thus she did not need to be informed. Parent #4 took Child #4 for at Cincinnati Children's Hospital Medical Center ("CCHMC"), where he was treated. Since Gabe died, students at Carson have been telling Child #4 "go hang yourself like Gabe" and "go kill yourself or I'll do it for you."

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 59.

60. During the bathroom incident on January 24, 2017, several boys were attacked. One, student, D. A., was punched twice and was in obvious pain. Two parents came forward to CPS after the video of the bathroom incident aired and asked to see the unredacted video because both mothers thought D. A. was their son. CPS would not tell either parent if the victim was their son. Both mothers, afraid for their son's safety, removed her child from Carson for the remainder of the school year.

**ANSWER:** Defendants deny the allegations in paragraph 60.

61. Defendants recklessly withheld from Gabe's parents the dangers to him at Carson. The destructive and dangerous climate at Carson violated policy and created an unsafe environment for Carson students, including Gabe.

**ANSWER:** Defendants deny the allegations in paragraph 61.

62. Gabe was injured in first and second grade; however, by third grade, it became clear to his mother that his injuries were caused by aggressive student behavior.

**ANSWER:** Defendants admit that Gabe was injured in first and second grade. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 62.

63. In first grade, on September 23, 2014, Gabe was injured on the playground at Carson. CPS officials reported to his mother that his injuries were not severe and that he had an accident on the playground. His mother was worried about his front teeth that appeared to be knocked in. She took him to a dentist who had to pull his two front teeth. Now looking back on it, his parents wonder if he was the victim of aggressive behavior that the CPS Defendants did not want to report.

**ANSWER:** Defendants admit that Gabe was injured on the playground on September 23, 2014, and that they reported the incident to his mother. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 63.

64. In second grade, Gabe was hit by a student on October 7, 2015. He was hit again by a student on February 22, 2016; this time needing to be treated by the nurse. Neither incident was reported to his parents; they learned of the incidents after he died.

**ANSWER:** Defendants admit that Gabe was injured on October 7, 2015. Defendants deny withholding information from Gabe's mother. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 64.

65. At the end of second grade, on May 4, 2016, there was an "incident" on the playground. School records indicate that "proper action" was taken regarding the "other student," suggesting that this other student did something to Gabe, but no further details were recorded by the school. CPS Defendants did not alert Gabe's parents about the "incident." If Carson employees had attempted to contact his mother but were unable to reach her, they should have contacted his father, who was an emergency contact. CPS never contacted his father about this "incident."

**ANSWER:** Defendants admit that Gabe was occasionally injured in second grade. Defendants deny withholding information from Gabe's mother. Defendants are without

sufficient information to form a belief as to the truth of the remaining allegations in paragraph 65.

66. During third grade, Gabe suffered injuries at school with no signs the injuries were caused by aggressive behavior. Following each of these incidents, his mother was notified of his scrapped knee, bumped elbow, bumped wrist, and twisted ankle.

**ANSWER:** Defendants admit the allegations in paragraph 66.

67. During third grade, Gabe was the victim of at least six incidents of aggressive student behavior. CPS Defendants did not notify his parents of three of these aggressive incidents. While CPS Defendants did notify his mother of three of these incidents, they withheld critical information that was needed in order for his mother to protect him from further harm.

**ANSWER:** Defendants admit that Gabe was occasionally injured by other students during third grade. Defendants deny the remaining allegations in paragraph 67.

68. On September 7, 2016, according to only school records, Gabe shoved and punched another student and was reprimanded. A CPS employee logged that she left a voicemail with his mother but Ms. Reynolds did not receive a message. CPS employees did not tell his mother about the incident; she only learned of it after his death. She now wonders if Gabe was defending himself from bullying by a student. CPS Defendants did not follow-up with Ms. Reynolds, who would have inquired and addressed the matter appropriately. Nor did CPS Defendants contact Mr. Taye, who should have been contacted if his mother was not reachable.

**ANSWER:** Defendants admit that Gabe was involved in an incident with another student as described in paragraph 68, and that Defendants attempted to contact Ms. Reynolds. Defendants deny the remaining allegations in paragraph 68.

69. On October 3, 2016, Gabe was in an altercation with a boy. A CPS employee recorded in a log that she left a voicemail with Gabe's mother. However, Ms. Reynolds did not receive a message. There was no effort to contact Mr. Taye when Ms. Reynolds was not reached. CPS did not follow-up with either parent to let them know what happened to Gabe.

**ANSWER:** Defendants admit that Gabe was involved in an incident with another student, and that Defendants attempted to contact Ms. Reynolds. Defendants deny the remaining allegations in paragraph 69.

70. On October 7, 2016, Gabe was punched by a student and defended himself by punching back. Security had to be called, but the aggressive student merely got off with a warning. CPS officials told Gabe that if he punched a student in self-defense, he would also be disciplined. CPS Defendants did not contact either of Gabe's parents to notify them that Gabe had been punched, injured, or warned he could not defend himself.

**ANSWER:** Defendants admit that Gabe was involved in an incident with another student, and that Defendants attempted to contact Ms. Reynolds. Defendants deny the remaining allegations in paragraph 70.

71. On October 31, 2016, Gabe suffered a head injury on the playground, but his mother was not told how it happened and was only told he could return to class. CPS Defendants did not show Gabe's mother a video or explain how Gabe was injured.

**ANSWER:** Defendants admit the allegations in paragraph 71.

72. On January 9, 2017, two students, C.J. and P.B., attacked Gabe and punched him in his mouth. Upon information and belief, C.J. is Student # 5 from the behavior logs. The incident was over a can of pop Gabe dropped and the boys took away from Gabe. Gabe suffered a bloody lip and was treated by the school nurse. The nurse called Gabe's mother and told her Gabe was punched in the face by two students and had a bloody nose and mouth. Ms. Reynolds then spoke to Defendant McKenzie who told her he did not know the whole story yet but would review the surveillance recordings and meet with C.J. and P. B.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegation that C.J. is "Student #5" from the behavior logs. Defendants admit that the students involved described the incident alleged in paragraph 72.

73. On January 10, 2017, Defendant McKenzie met with C.J. and P.B. and one of them told Defendant McKenzie that Gabe was punched in the mouth by a third, unidentified student.

Defendant McKenzie did not believe a third student hit Gabe and gave C.J. and P.B. removal letters and removed them from school that day. Defendant McKenzie did not inform Gabe's mother of his finding or disciplinary decision.

**ANSWER:** Defendants admit the allegations in paragraph 73.

74. On January 12, 2017, Defendant McKenzie met with Ms. Reynolds, Gabe, C.J., P.B. and P.B.'s father. He never told Ms. Reynolds that the boys admitted Gabe was punched in the mouth; or that the boys allegedly pretended that the punch was by a third student; or that McKenzie had removed the boys from school. Instead, McKenzie said the video he reviewed did not show the incident, which took place in the hallway near the art room. When Ms. Reynolds asked to see a copy of the video, McKenzie refused. McKenzie determined the incident was "horseplay" and did not discipline C.J. or P.B. The incident was ruled "an accident." He only issued a warning to C.J. and P.B., telling them if this occurred again they would face further discipline. Despite this warning, later that day, after C.J. and P.B. injured another child, McKenzie did not discipline either boy. Because CPS Defendants withheld from his mother the totality of the dangerous climate Gabe faced at Carson, Ms. Reynolds did not realize how much danger her son was in by remaining at Carson.

**ANSWER:** Defendants admit that McKenzie met with Ms. Reynolds, Gabe, C.J., P.B., and P.B.'s father and warned C.J. and P.B. against future misconduct. Defendants admit that the incident was ruled an accident. Defendants deny the remaining allegations in paragraph 74.

75. On January 18, 2017, Student J[6] walked over to Gabe, who was seated at the lunch table eating his lunch. Student J kicked at Gabe, landing the blow to Gabe's thumb and to his lunch tray, which fell to the floor. Ms. Reynolds was not informed who kicked Gabe and was not shown the video.

**ANSWER:** Defendants admit the allegations in paragraph 75.

[6] Plaintiffs do not know the last name of Student J.

76. On January 24, 2017, starting at 12:11 p.m., a boy ("P.A.")[7] was attacking at least three boys as they entered the bathroom.[8] CPS Defendants, including Principal Jackson and Assistant Principal McKenzie, routinely did not provide any adult supervision in the bathrooms. P.A. punched one boy, (D. A.), so hard he fell to the ground on all fours and curled up around the site of impact. P.A. leaped into the air to attack another boy. And then Gabe walked into the bathroom.

**ANSWER:** Defendants deny that they do not provide appropriate supervision of school bathrooms. Defendants are without knowledge to form a belief as to the truth of the remaining allegations in paragraph 76.

77. Gabe could not enter the bathroom without passing P.A. Gabe extended his hand to P.A. as if to shake his hand. P.A. grabbed Gabe's hand and aggressively yanked him toward the wall behind P.A. Gabe's head struck something out of view and he collapsed on the floor. On the video, P.A. appears to celebrate his takedown of Gabe.

**ANSWER:** Defendants are without knowledge to form a belief as to the truth of the allegations in paragraph 77.

78. Gabe remained unconscious, lying motionless on the bathroom floor for more than seven minutes, while over a dozen students came in and out of the bathroom, pointing at him, mocking him, and kicking him. The callous indifference of the student witnesses not involved in the assault, who had knowledge of the video camera pointing directly at them, speaks to the environment of tolerance of bullying and aggression at Carson. Other students ignored his circumstance, indicating a tolerated environment in which there was an utter disregard for others.

**ANSWER:** Defendants deny that there was an "environment of tolerance of bullying and aggression at Caron" or that there was a "tolerated environment in which there was an utter

[7] Plaintiff Reynolds believes P.A. (which stands for Primary Aggressor, a moniker the Cincinnati Police Detective gave this boy in the video) is C.J. or P. B. but to this day CPS has never told her who attacked her son. The Detective asked Defendant McKenzie if P.A. was either C.J. or P.B. but he did not receive a response.

[8] The events in the bathroom were recorded by CPS and are depicted in Exhibit A. P.A. enters the bathroom at timecode 11:33. Gabe enters the bathroom at 13:12. Defendant McKenzie enters at 17:59.

disregard for others." Defendants are without knowledge to form a belief as to the truth of the remaining allegations in paragraph 78.

79. Eventually, Defendant McKenzie responded to the bathroom, followed later by Defendant Jackson and other Carson staff. Defendant McKenzie stood over Gabe, moved a trash can out of the way but did not get on the floor to check Gabe, to check for breathing, to talk to him, or to assess him.

**ANSWER:** Defendants admit that McKenzie, Jackson, and other Carson staff responded to the bathroom. Defendants deny the remaining allegations in paragraph 79.

80. Gabe regained consciousness shortly after the school nurse, Defendant Margaret McLaughlin, arrived, which was around two minutes after Defendant McKenzie first found Gabe unconscious.

**ANSWER:** Defendants admit that McLaughlin arrived at the bathroom. Defendants are without knowledge to form a belief as to the truth of the remaining allegations in paragraph 80.

81. After Gabe regained consciousness, he was evaluated by Defendant McLaughlin.

**ANSWER:** Defendants admit that McLaughlin evaluated Gabe. Defendants are without knowledge to form a belief as to the truth of the remaining allegations in paragraph 81.

82. Defendant McLaughlin did not call 911; instead, she called Gabe's mother about an hour later and told her that Gabe had "fainted," was "alert," and his "vitals [were] fine." Ms. Reynolds asked if he needed to go to the hospital but was told he needed no further medical treatment. No Defendant ever told Ms. Reynolds that her son had been attacked in the bathroom, that the bathroom was unsupervised, that other boys were attacked in the bathroom by the same student, or that her son had laid unconscious on the bathroom floor for over seven minutes while being taunted and abused by other students. The information CPS provided to Ms. Reynolds was intentionally minimized so that she would not inquire further about the details of what had transpired in the bathroom. Ms. Reynolds had no reason to suspect that the information she was

provided was incomplete, inaccurate, erroneous, or misrepresented. Defendants also did not inform the parents of the other boys attacked in the bathroom.

**ANSWER:** Defendants admit that McLaughlin (1) did not call 911, (2) did call Gabe's mother, and (3) did report that Gabe fainted, was alert, and that his vitals were fine. Defendants admit that they did not tell Ms. Reynolds details regarding the bathroom incident (details of which they were not aware) or of the school's bathroom supervision practices, but deny that they were aware of the "bathroom incident" or had an obligation or responsibility to do those things. Defendants deny the remaining allegations in paragraph 82.

83. The violent acts in the bathroom constituted child abuse under O.R.C. § 2151.031, yet none of the mandated reporters, including Defendants Jackson, McKenzie, and McLaughlin, reported it to authorities.

**ANSWER:** Defendants deny the allegations in paragraph 83.

84. Ms. Reynolds asked Gabe what happened at school that day but all he could remember was that he fell and hurt his stomach.[9] That night, Gabe complained of stomach pain and nausea. He vomited twice. His mother took him to CCHMC.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 84.

85. Based on an evaluation of Gabe's known gastrointestinal symptoms and the trusted statement by Defendant McLaughlin that he had "passed out" at school, CCHMC diagnosed him with "likely viral gastro with LLQ pain." They discharged him. Had his mother known about the attack and extended unconsciousness she would have taken Gabe immediately to the hospital and told his doctors what happened. Had his doctors known about the attack and unconsciousness he would have been evaluated for head trauma.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 85.

---

[9] Ms. Reynolds talked to Gabe by phone while he was at school and asked what happened. Gabe said he hit his stomach outside. In hindsight, Ms. Reynolds believes that Gabe did not feel free to talk to her.

86. The Center for Disease Control publishes guidance on concussions and brain injury on their website.[10] It describes symptoms and signs of concussion in this guidance, as well as precautions that should be taken. Symptoms may appear immediately, or may take days or even months to appear. Among other symptoms, sadness, irritability, and confusion are commonly experienced after a concussion or head trauma.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 86.

87. On January 25, 2017, Gabe's mother kept him home from school since he was worn out from being in the hospital until 6 o'clock in the morning.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 87.

88. On January 26, 2017, Gabe's mother sent him back to school, a decision she would never had made if she had only known about the attack in the unsupervised boy's room, his extended unconsciousness, his risk of experiencing head trauma, and the dangerous environment at Carson that the Defendants were covering up.

**ANSWER:** Defendants admit that Gabe attended school on January 26, 2017. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 88

89. While at school that day, there was another incident in a boy's bathroom. Two boys accosted Gabe and stole his water bottle. Upon information and belief, one of these boys was Student #2. They then tried to flush it down the toilet in front of him. Gabe reported the incident to a teacher but no one else. Because Defendants Jackson, McKenzie, and McLaughlin did not report the violent incident earlier that week internally or externally or otherwise notify the staff,

---

[10] U.S. Department of Health and Human Services Centers for Disease Control and Prevention, Facts About Concussion and Brain Injury, https://www.cdc.gov/headsup/pdfs/providers/facts_about_concussion_tbi-a.pdf.

the teacher did not know about the assault two day's prior and thus he did not recognize the seriousness of this incident.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 89.

90. After Gabe came home from school around 5:30 p.m., he took one of the neckties he wore to school and used it to hang himself from the top bunk of his bunk bed. His mother had only left him alone for about fifteen minutes.

**ANSWER:** Defendants admit that Gabe died at home on January 26, 2017. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 90.

91. Gabe's mother found him hanging from the bunk bed and unresponsive.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 91.

92. Horrified and screaming, his mother cut her eight-year-old son down herself. As a nurse, she started CPR. A neighbor responded to her cries for help and took over the CPR as Ms. Reynolds called 911. Ms. Reynolds was so distraught that she had a difficult time explaining to the 911 dispatcher that she had found her son hanging.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 92.

93. The police and firefighters arrived. The paramedics took over the CPR and attempted to revive Gabe, but were unable to do so. He had no pulse. As they took him away, his mother was screaming through her tears, "Why Gabe? Why Baby? Why did you do it?" She had no idea what caused him to try to kill himself.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 93.

94. Gabe was pronounced dead at CCHMC at 6:35 p.m.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 94.

95. Many studies have established a connection between bullying and suicide in young people. The phenomenon is sometimes colloquially referred to as "bullycide."

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 95.

96. These studies have found that bullying is a significant contributor to suicidal ideation.[11]

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 96.

97. Frequent physical assault is also associated with increased odds of suicidal ideation.[12]

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 97.

98. A review of cross-sectional and longitudinal findings showed that "there is an increased risk of suicidal ideation and (or) suicide attempts associated with bullying behavior."[13]

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 98.

99. As educators, Defendants are well aware of the link between bullying and suicide in school children.

**ANSWER:** The allegations in paragraph 99 are too vague for Defendants to form a belief as to their truth.

100. Defendants Jackson, McKenzie, and McLaughlin were notified of a student hurt in the bathroom and "passed out" there. Defendant McKenzie called Defendant McLaughlin "immediately." Defendant McKenzie responded to the bathroom first and found Gabe

[11] Suicidal ideation among suburban adolescents: The influence of school bullying and other mediating risk factors. J. Child Adolesc. Ment. Health, 2016 Oct; 28(3): 213-231.
[12] Associations of childhood bullying victimization with lifetime suicidal behaviors among new U.S. Army soldiers. Depress Anxiety, 2017 Apr 3.
[13] The Association of Suicide and Bullying in Childhood to Young Adulthood: A Review of Cross-Sectional and Longitudinal Research Findings.

unconscious on the floor. Then Defendant McLaughlin arrived, followed by Defendant Jackson. Defendants McKenzie, Jackson and McLaughlin knew that Gabe was unconscious for nearly three minutes, and for over seven minutes had they viewed the video. They also know the history of bullying, violence, and aggression Gabe faced at Carson since the first grade and that the violence against him was increasing to such an extent it was impacting his ability to learn.

**ANSWER:** Defendants admit that they were notified of and immediately responded to a student injured in the bathroom, and admit the order in which they arrived in the bathroom. Defendants deny the remaining allegations in paragraph 100.

101. Defendants Jackson and McKenzie knew that Gabe was in their custody and was dependent on them to protect him.

**ANSWER:** Defendants admit that Jackson and McKenzie were principal and vice-principal of Carson, that Gabe was a Carson student, and that Jackson and McKenzie owed Gabe the duties that a principal and vice-principal owe a student. Defendants deny the remaining allegations in paragraph 101.

102. Defendants Jackson, McKenzie, and McLaughlin knew that the school's head injury nursing protocol required an emergency medical response whenever a student was "[u]nconscious/unresponsive over 1 minute," including calling 911, providing emergency care "as needed," and assessing for secondary injuries. The head injury protocol warns that head injuries from falls may be serious.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 102.

103. Defendants Jackson, McKenzie, and McLaughlin knew that when unsupervised, the bathrooms were unsafe, secluded locations at Carson where students were at risk of being injured. They also had access to the video of the bathroom attack. They knew or should have known that Gabe was assaulted and bullied in the bathroom and that he was unconscious for more than seven minutes.

**ANSWER:** Defendants deny the allegations in paragraph 103.

104. Defendants Jackson, McKenzie, and McLaughlin knew of the obvious risk of bullying and related suicidal ideation to their students. The surveillance recordings and logs illustrate the obvious risk students at Carson faced on a daily basis.

**ANSWER:** Defendants deny the allegations in paragraph 104.

105. Despite this knowledge, Defendants Jackson, McKenzie, and McLaughlin took affirmative action to cover-up the attack on Gabe.

**ANSWER:** Defendants deny the allegations in paragraph 105.

106. Defendants Jackson, McKenzie, and McLaughlin withheld from Gabe's mother that Gabe was attacked, other boys were attacked, the bathroom was unsupervised, and Gabe lay unconscious on the bathroom floor for over seven minutes.

**ANSWER:** Defendants deny the allegations in paragraph 106.

107. In an official statement, CPS falsely stated that Defendant McLaughlin told Ms. Reynolds to take Gabe to the hospital. CPS knew its statement was not true and was contrary to Defendant McLaughlin's own medical records. The nursing notes state that Defendant McLaughlin contacted the student's mother to pick him up and explicitly state no referral or follow-up care was necessary.

**ANSWER:** Defendants deny the allegations in paragraph 107.

108. These affirmative acts of covering up and harboring the extent of the environment of aggressive behavior that Carson students experienced daily; of the pattern of aggressive behavior toward Gabe generally; of the bathroom attack and injury to Gabe and others, all placed Gabe specifically at risk of further bullying, of emotional distress, of suicidal ideation, and of side effects of an untreated serious head injury.

**ANSWER:** Defendants deny the allegations in paragraph 108.

109. To date, CPS Defendants have not investigated the bullying, aggression and violence Gabe suffered at Carson, including the bathroom attack, in violation of CPS policy.

**ANSWER:** Defendants deny the allegations in paragraph 109.

110. Defendants Jackson, McKenzie, and McLaughlin did not document the bathroom attack, in violation of CPS policy.

**ANSWER:** Defendants deny the allegations in paragraph 110.

111. Defendants Jackson, McKenzie, and McLaughlin did not report the bathroom attack to Gabe's parents or to the public, in violation of CPS policy.

**ANSWER:** Defendants deny the allegations in paragraph 111.

112. Defendants Jackson, McKenzie, and McLaughlin did not protect Gabe from further incidents of bullying, violence, and aggression, in violation of CPS policy and the Constitution.

**ANSWER:** Defendants deny the allegations in paragraph 112.

113. This complete failure to respond to the known pattern of aggressive behavior Gabe experienced at Carson, along with Defendants Jackson's, McKenzie's, and McLaughlin's failure to respond to the bathroom attack, constituted deliberate indifference to Gabe's safety at Carson and to his ability to learn.

**ANSWER:** Defendants deny the allegations in paragraph 113.

114. Defendants Jackson and McKenzie created a special relationship with Gabe by withholding information relevant to his safety and the dangerous climate at the school from his parents. By doing so, these Defendants took on a higher duty to protect Gabe.

**ANSWER:** Defendants deny the allegations in paragraph 114.

115. Defendants Jackson, McKenzie, and McLaughlin had time to deliberate before choosing a course of action. They learned of the attack on Gabe, or should have learned of the

attack, as soon as they accessed the surveillance recordings of the incident. They knew the next day that Ms. Reynolds called the school to report Gabe became ill and had to go to the hospital overnight so he would not be in school on January 25, 2017. They had additional time to reveal potentially lifesaving facts to his mother by telling the truth before he committed suicide. They chose to do nothing.

**ANSWER:** Defendants deny the allegations in paragraph 115.

116. Consistent with Carson policy and practice to cover-up and harbor the extent of the aggressive behavior that Carson students experienced daily, Defendants Jackson, McKenzie, and McLaughlin did not follow the same standard medical procedures that would have been followed had Gabe's head been injured in an accident.

**ANSWER:** Defendants deny the allegations in paragraph 116.

117. Defendants Jackson, McKenzie, and McLaughlin had no legitimate governmental purpose for covering up Gabe's assault and bullying. These actions shock the conscience.

**ANSWER:** Defendants deny the allegations in paragraph 117.

118. Defendants Jackson's, McKenzie's, and McLaughlin's actions were negligent, knowing, deliberately indifferent, reckless, extreme, and outrageous.

**ANSWER:** Defendants deny the allegations in paragraph 118.

119. In addition, Defendants Jackson, McKenzie, and McLaughlin knew that the attack in the bathroom constituted child abuse against Gabe under O.R.C. § 2151.031. However, Defendants Jackson, McKenzie, and McLaughlin did not report the child abuse, as required by O.R.C. § 2151.421.

**ANSWER:** Defendants deny the allegations in paragraph 119.

120. Defendants Board of Education and Ronan ratified the actions of Defendants Jackson, McKenzie, and McLaughlin and are thus liable for their violations of Gabe's

substantive due process right to be protected. The Board of Education and Ronan did not conduct a meaningful investigation of Defendants Jackson's, McKenzie's, and McLaughlin's actions covering up the bathroom attack, did not discipline or retrain Defendants Jackson and McKenzie, or author new policies to protect students. Defendant Board of Education allowed Defendant Jackson to seek a reassignment from Carson for the 2017-2018 school year, but did not remove her from Carson. Defendant Jackson gave Defendant McKenzie a poor evaluation in June 2017, but did not criticize his actions related to any allegation in this Compliant. Defendant Board of Education allowed Defendant McKenzie to voluntarily resign from Carson. Defendants Board of Education and Ronan's ratification of the other Defendants' actions was the moving force behind the constitutional violation.

**ANSWER:** Defendants deny the allegations in paragraph 120.

121. To the extent that Defendants Jackson and McKenzie acted in violation of CPS policies, they were acting as final decision-makers, whose actions were final and unreviewable and are not constrained by the official policies of superior officials. Defendants Jackson and McKenzie ratified Defendant McLaughlin's actions.

**ANSWER:** Defendants deny the allegations in paragraph 121.

122. CPS Defendants knew the school's nursing protocols required that in the event of a loss of consciousness for more than one minute, 911 must be called. Defendant McLaughlin treated Gabe in the bathroom and in her office. She knew he was unconscious for more than one minute before he regained consciousness. She never called 911 for Gabe.

**ANSWER:** Defendants deny the allegations in paragraph 122.

123. Defendants Jackson and McKenzie also knew that Gabe had been unconscious for more than one minute. They knew that Gabe was in their custody and was dependent on them for medical treatment and protection.

**ANSWER:** Defendants deny the allegations in paragraph 123.

124. Defendant McLaughlin knew that Gabe hit his head when he fell and that there were several surfaces that he could have hit on such as the wall, the floor, and/or the garbage can. She noted in her file that Gabe told her that he hit his head. Based on her own observations and the information Defendants Jackson and McKenzie provided to her, Defendant McLaughlin misled Ms. Reynolds of the seriousness of the incident and injuries and only told Ms. Reynolds that Gabe had fainted.

**ANSWER:** The allegations in paragraph 124 do not relate to Defendants and therefore do not require a response; to the extent that a response is required, Defendants deny the allegations in paragraph 124.

125. Defendant McLaughlin was neglectful in assessment and care of the injuries Gabe sustained and intentionally mislead Ms. Reynolds in her communication of the type and extent of injury suffered by aggressive behaviors on that date.

**ANSWER:** The allegations in paragraph 125 do not relate to Defendants and therefore do not require a response; to the extent that a response is required, Defendants deny the allegations in paragraph 125.

126. Defendant CPS's official statement, which stated that Defendant McLaughlin told Ms. Reynolds to take Gabe to the hospital, is unsupported by any record or evidence.

**ANSWER:** Defendants deny the allegations in paragraph 126.

127. Consistent with Carson policy and practice to cover-up and harbor the extent of the aggressive behavior that Carson students experienced daily, Defendants Jackson and McKenzie did not follow, nor have Defendant McLaughlin follow, the same standard medical procedures that would have been followed had Gabe's head been injured in an accident.

**ANSWER:** Defendants deny the allegations in paragraph 127.

128. Defendant McLaughlin breached her duty to provide medical care to Gabriel Taye consistent with standard medical practice and violated Ohio law. This conduct was a proximate cause of Gabriel's injury and death.

**ANSWER:** The allegations in paragraph 128 do not relate to Defendants and therefore do not require a response; to the extent that a response is required, Defendants deny the allegations in paragraph 128.

129. Defendant McLaughlin's actions were the proximate cause of Gabe's injury being incorrectly diagnosed and going untreated, and it decreased his chance of survival, ultimately leading to his death.

**ANSWER:** The allegations in paragraph 129 do not relate to Defendants and therefore do not require a response; to the extent that a response is required, Defendants deny the allegations in paragraph 129.

130. Despite incidents described in paragraphs 32 - 59 above, the Semiannual Report on Harassment, Intimidation and Bullying reported that "0" (zero) acts of bullying took place at Carson between August 17, 2016 and December 16, 2016.

**ANSWER:** Defendants admit that the Semiannual Report on Harassment, Intimidation and Bullying reported that "0" (zero) acts of bullying took place at Carson between August 17, 2016 and December 16, 2016, and deny the remaining allegations in paragraph 130.

131. Defendants Cincinnati Board of Education, Superintendent Ronan, Principal Jackson, Assistant Principal McKenzie, and Nurse McLaughlin knew of the risk bullying and aggressive behavior had on Carson students, including the risk of suicide. CPS provided Defendants Jackson and McKenzie with training linking bullying, violence and aggression at school to suicide.

**ANSWER:** Defendants deny that the allegations in the Amended Complaint meet the definition of "bullying" under state law or school policy. Defendants deny the allegations in paragraph 131.

132. Defendants Cincinnati Public Schools, Superintendent Ronan, Principal Jackson, Assistant Principal McKenzie, and Nurse McLaughlin knew bullying and aggressive behavior occurred at Carson during Gabe's enrollment.

**ANSWER:** Defendants deny that the allegations in the Amended Complaint meet the definition of "bullying" under state law or school policy. Defendants deny the allegations in paragraph 132.

133. In response to the known risk of suicide, Cincinnati Board of Education concluded its Board policy on "Bullying and Other Forms of Aggressive Behavior" with a statement about suicide prevention:

> **SUICIDE PREVENTION**
> **Students face a wide range of issues and concerns that can have a substantial impact on their ability to learn and on their engagement with school. Perhaps the most severe issue faced by students is that of depression accompanied by suicidal ideation. The school district takes these mental health issues seriously. To further this objective, the Superintendent shall develop and implement administrative guidelines whereby members of the professional staff understand how to use an intervention procedure.**

**ANSWER:** Defendants admit that the Board maintains a policy regarding "Bullying and Other Forms of Aggressive Behavior," containing (but not limited to) the paragraph recited in the Amended Complaint. Defendants deny the remaining allegations in paragraph 133.

134. The Cincinnati Public Schools Code of Conduct defines bullying as "any repeated written, verbal, graphic or physical act that a student or group of students exhibit toward another particular student or students... and the behavior both: A) Causes mental or physical harm... and B) Is sufficiently severe, persistent or pervasive that it creates an intimidating, threatening or abusive educational environment."

**ANSWER:** Defendants admit that CPS maintains a Code of Conduct that defines "bullying." To the extent that paragraph 134 seeks to characterize the Code of Conduct, the Code speaks for itself and Defendants deny the allegations in paragraph 134 to the extent that they are inconsistent with the Code.

135. The Code of Conduct classifies "Bullying/Harassment/Intimidation" as an infraction, and lists a variety of possible choices to address the infraction, ranging from conferencing with the student to filing criminal charges.

**ANSWER:** Defendants admit that CPS maintains a Code of Conduct that defines "bullying" and lists possible responses to an infraction. To the extent that paragraph 135 seeks to characterize the Code of Conduct, the Code speaks for itself and Defendants deny the allegations in paragraph 135 to the extent that they are inconsistent with the Code.

136. Defendant Cincinnati Public Schools' policy on bullying and other forms of aggressive behavior requires that the school investigate all reported incidents of bullying, calls for steps to be taken to protect the victim, and calls for notification of the victim's parents.

**ANSWER:** Defendants admit that CPS maintains a Code of Conduct that defines "bullying." To the extent that paragraph 136 seeks to characterize the Code of Conduct, the Code speaks for itself and Defendants deny the allegations in paragraph 136 to the extent that they are inconsistent with the Code.

137. Defendant Cincinnati Public Schools does not have a policy that prohibits bullying and other forms of aggressive behavior that do not fit its narrow definition. Nor does CPS require prevention, investigation, notification of parents, or reporting of other forms of bullying and aggressive behavior that do not fit its narrow definition. By not having policies to prohibit, prevent, investigate, notify and report other forms of aggressive behavior, CPS permits acts of bulling, violence and aggression that does not fit its narrow definition. This policy is the moving force behind Defendants' constitutional violations alleged in this case.

**ANSWER:** Defendants admit that CPS maintains a Code of Conduct that defines "bullying." To the extent that paragraph 137 seeks to characterize the Code of Conduct, the Code speaks for itself and Defendants deny the allegations in paragraph 137 to the extent that they are inconsistent with the Code. Defendants deny the remaining allegations in paragraph 137.

138. By defining "bullying, harassment and intimidation" so narrowly, CPS encouraged violence and aggression to become rampant at Carson to the point where it was accepted as normal. This policy has allowed aggressors to intimidate and bully students without

consequences; it made victims helpless to prevent or even report the aggression and violence they suffered and observed daily; it purposefully misled parents about the violence their children faced; it made teachers powerless to stop the aggression; and it purposefully deceived the community about how violent Carson is and why its students are failing to learn. CPS has established a pattern and practice of covering up the violence and aggression the students suffer at Carson.

**ANSWER:** Defendants deny the allegations in paragraph 138.

139. As Superintendent, Defendant Ronan is the final decision-maker for all Cincinnati Board of Education policies, practices, and decisions to cover-up and harbor evidence of aggressive behavior at Carson.

**ANSWER:** Defendants deny the allegations in paragraph 139.

140. Not only are these policies insufficient to protect students from bullying and student-on-student aggression, but Defendants were also not following CPS policies. To the extent that Defendants Jackson and McKenzie acted in violation of CPS policies, they were acting as final decision-makers, whose actions were final and unreviewable and are not constrained by the official policies of superior officials. Defendants Jackson and McKenzie ratified Defendant McLaughlin's actions.

**ANSWER:** Defendants deny the allegations in paragraph 140.

141. When a student complained of bullying or harassment or intimidation, Defendants CPS and Ronan did not ensure that CPS policies were followed, did not investigate the incident, did not treat the victim or address the bully with appropriate treatment, did not take action to notify parents or report the complaint. Defendants CPS and Ronan acted in a wanton, willful, and reckless manner in disregarding Gabe's safety.

**ANSWER:** Defendants deny the allegations in paragraph 141.

142. CPS Defendants knew that elementary students at Carson were in their custody; these students, including Gabe, could not protect themselves. Defendants knew by withholding from parents and custodians, including Gabe's parents, vital information about the risk of harm Gabe and other students faced at Carson and by covering up the aggressive behavior students witnessed and experienced, that they prohibited parents from protecting their children.

**ANSWER:** Defendants deny the allegations in paragraph 142.

143. CPS Defendants did not train Carson staff or students on how to identify, report, or investigate bullying, violence, aggression, intimidation, or harassment.

**ANSWER:** Defendants deny the allegations in paragraph 143.

144. CPS Defendants did not adequately supervise Carson staff to ensure that staff was complying with their legal obligations or with Defendant CPS's policies to identify, report, or investigate bullying, violence, aggression, intimidation, or harassment.

**ANSWER:** Defendants deny the allegations in paragraph 144.

145. The surveillance cameras lured students like Gabe into a sense of false security when they entered a place without adult supervision. CPS Defendants did not utilize surveillance to deter, monitor, report, and investigate bullying, violence, aggression, intimidation and harassment. Instead, CPS Defendants' use of surveillance encouraged aggressive behavior because the perpetrators knew their actions were either going unnoticed or would be disregarded, and hence, unpunished.

**ANSWER:** Defendants deny the allegations in paragraph 145.

146. The placement of surveillance cameras by CPS Defendants, most notably at the restroom where Gabe's assault occurred, also indicates their knowledge of the danger that existed to students. Despite this knowledge, CPS Defendants did not establish a monitoring policy and associated practice, review protocol, or record retention policy adequate to ensure a

safe climate for their students and thus recklessly and carelessly placing their students in known danger. The failure to utilize the surveillance cameras was also deliberately indifferent.

**ANSWER:** Defendants deny the allegations in paragraph 146.

147. Defendants treat students injured by bullying and aggressive behavior differently than it treats students injured by accidents.

**ANSWER:** Defendants deny the allegations in paragraph 147.

148. Defendants treat accidents and other medical needs seriously, securing appropriate care for students.

**ANSWER:** Defendants deny the allegations in paragraph 148.

149. For example, when Gabe accidentally fell on the playground at Carson, he was back-boarded and taken to CCHMC. Other students injured by an accident are appropriately treated and their parents are notified. However, Carson staff does not treat injuries resulting from bullying and student aggression the same.

**ANSWER:** Defendants admit that students who are injured by an accident, including Gabe, are appropriately treated and their parents are notified. Defendants deny that students injured by bullying or "student aggression" are treated inappropriately and deny the remaining allegations in paragraph 149.

150. When Gabe was assaulted in the bathroom, he hit his head and fell. He lost consciousness for over seven minutes. Despite this, he was not taken to the hospital, was not referred to a doctor, and his parents were deliberately not told what happened.

**ANSWER:** Defendants admit that they did not take Gabe to a hospital or refer him to a physician. Defendants deny the remaining allegations in paragraph 150.

151. There is no legitimate reason for Defendants to treat students differently based on the cause of their injury.

**ANSWER:** Defendants deny the allegations in paragraph 151.

152. The sufficiency of the Defendants' response to bullying and student aggression is belied by their failure to investigate, report, or inform the parents of the other boys who were assaulted in the video.

**ANSWER:** Defendants deny the allegations in paragraph 152.

153. There were additional surveillance recordings of Gabe being bullied, harassed, and assaulted. There are thirty-one cameras inside Carson. No surveillance recordings were saved for any of the incidents involving Gabe's injuries at Carson other than Exhibit A. Once Gabe died and the school was notified, CPS Defendants did not preserve all surveillance recordings involving Gabe. When the police started investigating his death, CPS Defendants did not preserve all surveillance recordings involving Gabe. CPS Defendants did not preserve any surveillance recordings of the incident involving Gabe in a bathroom the day he committed suicide. All or part of this incident would have been recorded, could have been preserved, but CPS Defendants destroyed the images.

**ANSWER:** Defendants deny the allegations in paragraph 153.

154. Litigation over Gabe's death was probable and foreseeable. A student died following aggressive behavior at school, a police detective was investigating his death, and after his death his mother publicly questioned whether bullying contributed to his death. Plaintiff's counsel sent the first request for records to CPS on February 7, 2017.

**ANSWER:** Defendants admit that Plaintiffs' counsel sent the first request for records to CPS on February 7, 2017. Defendants deny the remaining allegations in paragraph 154.

155. CPS Defendants knew surveillance recordings of Gabe at Carson existed. Despite that knowledge, and despite the fact that they knew litigation was probable and foreseeable, CPS Defendants did not save the surveillance recordings.

**ANSWER:** Defendants deny the allegations in paragraph 155.

156. Upon information and belief, all surveillance recordings involving Gabe has been destroyed except for Exhibit A.

**ANSWER:** Defendants admit the allegations in paragraph 156.

157. The destruction of the surveillance recordings at Carson of Gabe will disrupt Plaintiffs' cases because they lack additional evidence about the extent and nature of the bullying, harassment, and aggression Gabe suffered at Carson. Without all the evidence, it will be harder to succeed on their claims. They have also had to go to additional lengths to try to recover the lost evidence.

**ANSWER:** Defendants deny the allegations in paragraph 157.

158. CPS Defendants destroyed all surveillance recordings of Gabe and the aggressive behavior at Carson in bad faith for the purpose of further covering up the danger Gabe was in at Carson.

**ANSWER:** Defendants admit that the specific recording of the January 24 bathroom incident was preserved at Plaintiffs' request, and that other surveillance recordings were recycled in the normal course of business per CPS's regular practice. Defendants deny the remaining allegations in paragraph 158.

159. CPS Defendants intentionally concealed from Gabe's parents that he was attacked in the bathroom and left unconscious for over seven minutes two days before he died. CPS Defendants did not reveal these facts to Gabe's parents before his funeral or in the months following his death. It was not until several months later that his parents learned of the attack and loss of consciousness through their own investigation of his death.

**ANSWER:** Defendants deny the allegations in paragraph 159.

160. As a result of this concealment, Ms. Reynolds did not know to inform CCHMC of the head injuries suffered by Gabe; accordingly, no neurological examination was performed. Nor did Ms. Reynolds know to inform the coroner of his head injury. Therefore, the coroner may

not have had all of the information necessary to identify the cause, mode, and manner of death or the contributing factors to his death.

**ANSWER:** Defendants deny that there was "concealment." Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 160.

161. Gabe's parents attempted to rectify this by giving permission to the coroner to exhume his body to re-examine his brain. While the exhumation was conducted in June, five months after his burial, a re-examination was not possible because of the passage of time.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 161.

162. Without a complete autopsy based on all the facts that CPS Defendants withheld, Gabe's parents were deprived of evidence that would help prove their wrongful death claim.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 162.

163. Litigation over Gabe's suicide, mental and physical health, and his death was probable and foreseeable.

**ANSWER:** Defendants deny the allegations in paragraph 163.

164. The concealment of the attack on Gabe and his loss of consciousness will disrupt Plaintiffs' cases because they lack additional evidence about the extent and nature of the brain injury and the cause mode and manner of death and the contributing factors toward his death. Without all the evidence, it will be harder to succeed on their claims. They also had to go to additional lengths to consent to the exhumation to try to recover the lost evidence. They face additional expense, emotional disruption of their lives, among a myriad of challenges they should not have to suffer.

**ANSWER:** Defendants deny the allegations in paragraph 164.

165. Defendants' actions caused Gabe's severe emotional distress. The source/origin of this is the continuous personal physical injury to Gabe. Gabe suffered physical injuries and associated severe mental and emotional distress from being a victim of and witness to bullying, violence, and student-on-student aggression at Carson, as well as from the effects he suffered from being bullied and attacked at school.

**ANSWER:** Defendants deny the allegations in paragraph 165.

166. This severe mental and emotional distress was a substantial factor that lead to his suicide, the ultimate personal physical injury.

**ANSWER:** Defendants deny the allegations in paragraph 166.

167. Shortly after bringing Gabe home after school, his mother found Gabe hanging from his bunk bed by his necktie. She was forced to cut him down. She then started CPR on her unresponsive eight-year-old son. As a nurse, she knew she could not stop performing CPR, but it was so hard to give CPR to her own lifeless child.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 167.

168. Her agonizing screams could be heard throughout the apartment building and neighbors came to her aid to help with CPR.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 168.

169. When she called 911, the operator struggled to understand the few words she was able to get out between the screaming.[14]

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 169.

---

[14] Exhibit B is a copy of the call Ms. Reynolds made to 911 on January 26, 2017.

170. Gabe's mother's emotional distress, resulting from her sensory and contemporaneous observance of Gabe's injuries and death, was severe. The source/origin of this emotional distress is the personal physical injury to Gabe.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 170.

171. Both Gabe's mother and father have suffered severe emotional distress as a result of his tragic and very untimely death.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 171.

172. Until she gave birth to Gabe, Cornelia Reynolds had no idea how much love she had to give. Cornelia misses her only child every day. Her life is empty without her only child, her best friend. She has flashbacks of images of Gabe hanging that she is unable to ignore. It is hard for her to be around other children and hear their giggles and watch them play. In life, she felt Gabe was her angel. In death, she feels he is now her guardian angel, watching over her from heaven, in her ever-sad journey without him.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 172.

173. After Gabe was attacked by two boys in early January, Ms. Reynolds became concerned for Gabe's safety at Carson. She knew Gabe was not as happy about going to Carson lately so she researched other schools for Gabe and sent away for information from St. Francis De Sales School. The day after Gabe died, Ms. Reynolds found in her mail St. Francis De Sales School's packet of information. She burst into tears. If she had only known the extent of the abuse, bullying, aggression, and violence Gabe suffered and witnessed at Carson, she would have removed him from that school immediately. By secreting the extent of the violence at

Carson and the attack on Gabe in the bathroom two days before his death, Defendants deprived Ms. Reynolds of her ability to protect her son.

**ANSWER:** Defendants deny "secreting" any information from Ms. Reynolds. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 173.

174. Benyam Taye lost a future with his first-born son, Gabe. He will never see Gabe graduate from high school or college nor will he be able to attend his son's wedding or see the joy on Gabe's face when Gabe had his own family. Mr. Taye loved his son who dreamed of joining the military. His father fondly remembers the trip he took Gabe on to Robins Air Force Base in Georgia where he saw how happy it made Gabe to dream of a life in the military. His father will never again be able to share such precious moments with his son or see his son's dreams come true.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 174.

175. Mr. Taye spends many of his waking hours driving alone. During these drives, he has flashbacks and sees only Gabe and his smile. He misses Gabe's sense of humor and the way they spent their hours together. Mr. Taye feels he was robbed of a life filled with Gabe's joy. At times, late at night, he cannot decipher if this is a bad dream or real life. Mr. Taye is haunted by the images of 17 children stepping over, taunting, and hurting his innocent, young boy. He will forever cherish the messages from Gabe that always ended in, "I love you."

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 175.

176. Gabe's parents' distress, circumstances, and responses were reasonably foreseeable.

**ANSWER:** Defendants are without sufficient information to form a belief as to the truth of the allegations in paragraph 176.

177. Plaintiffs the Estate of Gabe Taye, Ms. Reynolds, and Mr. Taye have suffered the following damages as a result of Defendants' wrongful conduct as described above, the source/origin of which is personal physical injury: loss of services, loss of society, including loss of companionship, relationship, consortium, care, assistance, attention, advise, mental anguish, pecuniary losses, and funeral and burial expenses.

**ANSWER:** Defendants deny that they engaged in wrongful conduct or caused any of the damages described in paragraph 177. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in paragraph 177.

178. The destruction of video evidence by Cincinnati Public Schools will cause Plaintiffs the Estate of Gabe Taye, Ms. Reynolds, and Mr. Taye to suffer damages by disrupting their ability to litigate these causes of action successfully and to the fullest extent possible.

**ANSWER:** Defendants deny the allegations in paragraph 178.

179. Defendants have, under color of law, deprived Gabriel Taye and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to the right to be free from affirmative actions directly increasing Gabriel Taye's vulnerability or otherwise placing him in danger and taking away from his parents their ability to protect him.

**ANSWER:** Defendants deny the allegations in paragraph 179.

180. Defendants acted with deliberate indifference when they put Gabriel Taye's life at risk and caused him to suffer greatly before his death. Defendants acted with deliberate indifference when they concealed from his parents the danger Gabriel Taye was in at school, causing them serious emotion distress when they could not protect him.

**ANSWER:** Defendants deny the allegations in paragraph 180.

181. Defendants Cincinnati Board of Education, Ronan, Jackson, and McKenzie have, under color of law, deprived Gabriel Taye and Plaintiffs of rights, privileges, and immunities

secured to them by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to the right to be kept safe when a special relationship has been created and by taking away from his parents their ability to protect him.

**ANSWER:** Defendants deny the allegations in paragraph 181.

182. Defendants Cincinnati Board of Education, Ronan, Jackson, and McKenzie's actions put Gabriel Taye's life at risk and caused him to suffer greatly before his death, the source/origin of which was personal physical injury. Defendants acted with deliberate indifference when they concealed from his parents the danger Gabriel Taye was in at school, causing them serious emotional distress when they could not protect him.

**ANSWER:** Defendants deny the allegations in paragraph 182.

183. Defendants have, under color of law, deprived Gabriel Taye and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to his right to be free from government actions that shock the conscience.

**ANSWER:** Defendants deny the allegations in paragraph 183.

184. Defendants' actions put Gabriel Taye's life at risk and caused him to suffer greatly before his death, the source/origin of which was personal physical injury. Defendants acted with deliberate indifference when they concealed from his parents the danger Gabriel Taye was in at school, causing them serious emotional distress when they could not protect him.

**ANSWER:** Defendants deny the allegations in paragraph 184.

185. Defendants have, under color of law, deprived Gabriel Taye and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution including the right to equal protection under the Fourteenth Amendment.

**ANSWER:** Defendants deny the allegations in paragraph 185.

186. Defendants violated Gabriel Taye and Plaintiffs' equal protection rights when they treated students who were victims of bullying and student-on-student aggression differently than they treated students who were in accidents at school. While students who experience accidents at school are given appropriate and adequate medical treatment, and their parents are informed of the incident, students who are victims of bullying and student-on-student aggressive behavior are not protected, their medical needs are not taken seriously, and their parents are not informed of the incident or the injury, thus depriving them of the ability to protect their son.

**ANSWER:** Defendants deny the allegations in paragraph 186.

187. There is no rational basis in treating these two groups differently.

**ANSWER:** Defendants deny the allegations in paragraph 187.

188. Defendants' actions put Gabriel Taye's life at risk and caused him to suffer greatly before his death. Defendants acted with deliberate indifference when they concealed from his parents the danger Gabriel Taye was in at school, causing them serious emotional distress when they could not protect him.

**ANSWER:** Defendants deny the allegations in paragraph 188.

189. Defendants Cincinnati Board of Education and Superintendent Ronan failed to provide an adequate policy to guide defendants, school officials, and teachers responding to bullying, violence, and student-on-student aggression such as what happened to students like Gabriel Taye.

**ANSWER:** Defendants deny the allegations in paragraph 189.

190. Defendants Cincinnati Board of Education and Superintendent Ronan failed to adequately train and supervise defendants, school officials, and teachers on how to respond to incidents like those experienced by students like Gabriel Taye.

**ANSWER:** Defendants deny the allegations in paragraph 190.

191. Defendants Cincinnati Board of Education and Superintendent Ronan failed to conduct a meaningful investigation into the actions of Defendants Principal Jackson and Assistant Principal McKenzie and thus ratified their actions as official CPS policy, causing CPS to be liable for their constitutional violations.

**ANSWER:** Defendants deny the allegations in paragraph 191.

192. The failure to provide adequate policies, training, supervision, monitoring, and investigation of Defendants Jackson's and McKenzie's actions was outrageous and deliberately indifferent to the rights of students, including Gabriel Taye.

**ANSWER:** Defendants deny the allegations in paragraph 192.

193. Defendants Cincinnati Board of Education and Superintendent Ronan's rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision, and ratification of Defendants Jackson's and McKenzie's actions, were all inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Gabriel Taye and Plaintiffs.

**ANSWER:** Defendants deny the allegations in paragraph 193.

194. As Superintendent, Defendant Ronan is the final decision-maker for all Cincinnati Board of Education policies, practices, and decisions to cover-up and harbor evidence of aggressive behavior at Carson.

**ANSWER:** Defendants deny the allegations in paragraph 194.

195. To the extent that Defendants Jackson and McKenzie acted in violation of CPS policies, they were acting as final decision-makers, whose actions were final and unreviewable and are not constrained by the official policies of superior officials.

**ANSWER:** Defendants deny the allegations in paragraph 195.

196. Defendants Jackson and McKenzie ratified Defendant McLaughlin's actions.

**ANSWER:** Defendants deny the allegations in paragraph 196.

197. Defendant Jackson's, McKenzie's, and McLaughlin's actions caused the wrongful death of Gabriel Taye resulting in damages recoverable under O.R.C. § 2125.02, including, but not limited to, complex grief and agonizing mental anguish to his parents. The wrongful death claim against these Defendants is brought against each only in their individual capacity.

**ANSWER:** Defendants deny the allegations in paragraph 197.

198. Gabriel Taye's presumptive next of kin include his mother, Cornelia Reynolds, and his father, Benyam Taye. They have suffered loss of his support, services, society, and severe mental anguish from his death. There are also statutorily defined next of kin who may have suffered loss of support, services, society, and mental anguish from his death. The Estate has incurred funeral and medical bills from his death.

**ANSWER:** Defendants deny the allegations in paragraph 198.

199. Defendant McLaughlin breached her duty to provide medical care to Gabriel Taye consistent with standard medical practice and violated Ohio law. See Affidavit of merit (attached). This conduct was a proximate cause of Gabriel's injury and death.

**ANSWER:** Defendants deny the allegations in paragraph 199.

200. Defendants Jackson, McKenzie, and McLaughlin have, by their extreme and outrageous conduct, intentionally or recklessly inflicted severe emotional distress on Gabriel Taye, Cornelia Reynolds, and Benyam Taye.

**ANSWER:** Defendants deny the allegations in paragraph 200.

201. The distress inflicted on Gabriel Taye by Defendants Jackson, McKenzie, and McLaughlin was the originating substantial factor in Mr. Taye's suicide, the ultimate personal physical injury.

**ANSWER:** Defendants deny the allegations in paragraph 201.

202. Defendants Jackson, McKenzie, and McLaughlin negligently and recklessly inflicted severe emotional distress on Cornelia Reynolds, a bystander to her son's suicide.

**ANSWER:** Defendants deny the allegations in paragraph 202.

203. Defendants Jackson, McKenzie, and McLaughlin negligently and recklessly inflicted severe emotional distress on Cornelia Reynolds and Benyam Taye, each bystanders to watching the recording of their son being assaulted and left unconscious on the bathroom floor.

**ANSWER:** Defendants deny the allegations in paragraph 203.

204. Defendants Jackson's, McKenzie's, and McLaughlin's actions were not only negligent, but were reckless.

**ANSWER:** Defendants deny the allegations in paragraph 204.

205. Plaintiff Cornelia Reynolds was the mother of Decedent Gabriel Taye. Plaintiff Benyam Taye was the father of Decedent Gabriel Taye.

**ANSWER:** Defendants admit the allegations in paragraph 205.

206. As a result of the wrongful acts of Defendants Jackson, McKenzie, and McLaughlin, Plaintiffs Cornelia Reynolds and Benyam Taye were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and parental fellowship of their dearly beloved son.

**ANSWER:** Defendants deny the allegations in paragraph 206.

207. All injuries and damages described above were proximately caused by the wrongful acts of Defendants Jackson, McKenzie, and McLaughlin, the source/origin of which is the personal physical injury to Gabe.

**ANSWER:** Defendants deny the allegations in paragraph 207.

208. Gabriel Taye was an abused child under O.R.C. § 2151.031.

**ANSWER:** This Count has been dismissed by order of the Court, and therefore does not require a response. To the extent that a response is required, Defendants deny the allegations in paragraph 208.

209. Defendants Jackson, McKenzie, and McLaughlin were aware that Gabriel Taye was an abused child under the statute.

**ANSWER:** This Count has been dismissed by order of the Court, and therefore does not require a response. To the extent that a response is required, Defendants deny the allegations in paragraph 209.

210. This child abuse was not reported by Defendants Jackson, McKenzie, or McLaughlin, as required under O. R.C. § 2151.421. As a result of these Defendants' failure to report child abuse, Gabriel Taye suffered further injury, including mental anguish and severe emotional injury prior to his death.

**ANSWER:** This Count has been dismissed by order of the Court, and therefore does not require a response. To the extent that a response is required, Defendants deny the allegations in paragraph 210.

211. Defendants Cincinnati Board of Education, Ronan, Jackson, and McKenzie knowingly, willfully, and in bad faith destroyed evidence it had an obligation to preserve. The destroyed evidence was relevant to probable litigation. This evidence was critical to Plaintiffs proving their claims.

**ANSWER:** Defendants deny the allegations in paragraph 211.

212. That destruction has disrupted Plaintiffs' ability to litigate the case and caused further damages to Gabriel Taye and Plaintiffs.

**ANSWER:** Defendants deny the allegations in paragraph 212.

WHEREFORE, Defendants pray as follows:

1. That Plaintiffs' Amended Complaint be dismissed with prejudice;

2. That Plaintiffs take nothing by virtue of the Amended Complaint; and

3. That the Court award Defendants their fees and costs, and all other just and proper relief.

## DEFENDANTS' AFFIRMATIVE DEFENSES

1. The Amended Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Defendants and further fails to state facts sufficient to entitle Plaintiffs to the relief sought, or to any other relief whatsoever, from Defendants.

2. Defendants are absolutely and qualifiedly immune from suit and from liability under the constitutions and laws of the United States and the State of Ohio.

3. Any damages allegedly suffered by Plaintiffs are the results of the acts or omissions of third persons over whom Defendants had neither control nor responsibility.

4. Plaintiffs failed to join necessary and indispensable parties.

5. Plaintiffs failed to mitigate their damages.

6. Plaintiffs' claims are barred by the doctrines of estoppel and waiver.

7. Defendants' conduct is not the legal or proximate cause of Plaintiffs' injuries or damages.

8. Plaintiffs' injuries and damages were caused, in whole or in part, by Plaintiffs' comparative fault.

9. Plaintiffs are contributorily negligent.

10. Plaintiffs' claims are barred by the applicable statutes of limitations and repose and the doctrine of laches.

11. Plaintiffs' claims are barred by assumption of the risk, release, and waiver.

12. Plaintiffs' claims are barred for the reasons stated in Defendants' Motion to Dismiss.

13. Defendants reserve the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

Respectfully submitted,

/s/Aaron M. Herzig
Aaron M. Herzig (0079371)
Philip D. Williamson (0097174)
Taft Stettinius & Hollister LLP
Cincinnati, Ohio 45202
Phone: (513) 357-8768
Fax: (513) 381-0205
aherzig@taftlaw.com
pwilliamson@taftlaw.com

Daniel J. Hoying (0079689)
Ashley Addo (0091245)
Cincinnati Public Schools
Cincinnati, Ohio 45219
Phone: (513) 363-0114
Fax: (513) 363-0115
hoyingd@cpsboe.k12.oh.us
addoash@cpsboe.k12.oh.us

R. Gary Winters (0018680)
Ian R. Smith (0068195)
McCaslin Imbus & McCaslin
Cincinnati, Ohio 45202
Phone: (513) 421-4646
Fax: (513) 421-7929
rgwinters@mimlaw.com
irsmith@mimlaw.com

*Attorneys for Defendants Cincinnati Board of Education, Mary Ronan, Ruthenia Jackson, and Jeffrey McKenzie*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically on June 12, 2019 using the Court's CM/ECF system, which will serve notice of this filing on all counsel of record.

/s/Aaron M. Herzig